**KUTAK ROCK LLP**
**KUTAK ROCK LLP**
Jeremy S. Williams (DC 994825)
1021 East Cary Street, Suite 810
Richmond, Virginia 23219
Phone: (804) 644-1700
Fax: (804) 783-6192
*Co-Counsel for Developer RE1, LLC and 423 Kennedy St Holdings, LLC*

**GREENSTEIN DELORME & LUCHS, P.C.**
James D. Sadowski (DC 446635)
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400
Fax: (202) 452-1410
*Co-Counsel for Developer RE1, LLC and 423 Kennedy St Holdings, LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re:<br><br>JPK NEWCO, LLC, | |
| DEVELOPER RE1, LLC. ET AL.,<br><br>*Appellants,*<br><br>v.<br><br>JPK NEWCO, LLC, ET AL.,<br><br>*Appellees.* | Civil Action No.: 26-03920 (AHA) |

## APPELLANTS' MOTION FOR A STAY PENDING APPEAL

Developer RE1, LLC ("Developer RE1") and 423 Kennedy St Holdings, LLC ("423 Kennedy") (together, "Appellants"), by counsel, move for a stay pending appeal under Federal Rule of Bankruptcy Procedure 8007(b), 8013(d) (the "Bankruptcy Rules") and 28 U.S.C. § 158. The appeal seeks a reversal of the Bankruptcy Court's order of October 21, 2026 (the "Dissolution Order"), which dissolved two preliminary injunctions that had been entered by the D.C. Superior Court in July of 2023.

# TABLE OF CONTENTS


I. Overview of the Cases and the Requests ........ 1

II. Factual and Procedural Background ........ 3

A. The Parties, the Loan Documents, and the D.C. Superior Court Cases ........ 3

B. JPK NewCo's Lack of Any Indicia That It Is a Legitimate Company ........ 6

C. The First Collusive Efforts to Manufacture Federal Jurisdiction – *JPK NewCo I* ........ 7

D. The Condensed Procedural History of *JPK NewCo II* ........ 8

E. The Withdrawal of the Reference Cases. ........ 9

F. The Motion to Dissolve Injunctions and the Dissolution Order ........ 9

III. Jurisdiction to Hear This Appeal ........ 10

IV. Statement Under Fed. R . Bankr. Proc. 8007(b)(2) ........ 11

V. The Legal Standard for a Motion to Stay Pending Appeal ........ 12

VI. Legal Arguments ........ 12

A. Appellants Are Likely to Succeed on Appeal, and the Appeal Presents at Least Serious Legal Questions. ........ 12

B. Removal to Federal Court is Not a "Change in Law". ........ 13

C. The Bankruptcy Court Re-Examined the Original Injunctions Instead of Confining Itself to New Circumstances; the Loss of Real Property Constitutes Irreparable Harm as a Matter of Law. ........ 14

D. The "Changed Facts" Identified by the Bankruptcy Court Were Not Significant Changes, Were Not Supported by the Record, or Were Legally Mistaken. ........ 16

E. The Bankruptcy Court Violated the Party Presentation Principle by Raising and Deciding Multiple Issues that Were Not Advanced by the Appellees. ........ 20

F. The Bankruptcy Court Did Not Consider Modification and it Dissolved the Injunctions in Favor of a Party Whose Bankruptcy Petition is Under Scrutiny for Bad Faith. ........ 21

VII. Appellants Will Suffer Irreparable Harm Absent a Stay. ........ 22

VIII. A Stay Will Not Substantially Injure Appellees. ........ 22

IX. The Public Interest Favors a Stay. ........ 23

X. No Bond Should Be Required; Alternatively, Any Security Should Be Measured by Appellees' Demonstrated Loss from Delay. ........ 23

XI. Conclusion ........ 24

## I. OVERVIEW OF THE CASES AND THE REQUESTS

For almost three years, two orders issued by two different judges of the D.C. Superior Court have prevented the Appellees from foreclosing on properties owned by the Appellants at 5501 1st Street, N.W. and 419 - 423 Kennedy Street, N.W. until the Appellants' claims of lender misconduct are tried. Those orders were entered on July 24 and July 25, 2023 (oral ruling followed by a written order) after notice, briefings, and contested evidentiary hearings before Judge Milton F. Lee and Judge Ebony Scott. Both judges made findings of fact and of law that Appellants were likely to succeed on the merits, that Appellants had an inadequate remedy at law, that Appellants were facing irreparable harm, that the public interest favored granting injunctive relief, and that no bond was required. No Appellee noticed an appeal of the injunctions, or moved to dissolve or modify the injunctions, until April of this year.

The Appellees have also engaged in a series of procedural maneuvers to manufacture federal jurisdiction over state law claims. Those maneuvers included the creation of Appellee JPK NewCo, LLC ("JPK NewCo") – a company that only existed on paper – in order to forum shop Appellants' claims to the Bankruptcy Court, which they perceived to be a more favorable forum. From June of 2024, and up until a recent appeal was granted, the Bankruptcy Court had shown little interest in pushing back on Appellees' maneuvers to manufacture federal jurisdiction.

On October 21, 2026, the Bankruptcy Court dissolved both injunctions. It did not find that the prior findings were wrong on the records before the Superior Court judges. It instead held that the "change in law" required to dissolve an injunction was supplied by the removal of the cases to federal court because federal law articulates the preliminary-injunction standard differently from D.C. law and because the Superior Court judges required no bond. Tr. Oct. 21,

2026 (“Tr. II”) at 96:21–97:12, 100:2–22.[1] The Bankruptcy Court’s reasoning would require dissolution of every state-court injunction ever removed to federal court, which reasoning is contrary to 28 U.S.C. § 1450 and *Granny Goose Foods, Inc. v. Brotherhood of Teamsters Local 70*, 415 U.S. 423, 436 (1974), both of which recognize that state court injunctions will not lapse upon removal. The Bankruptcy Court’s reasoning is also contrary to this Circuit’s rule that the amount of a Rule 65(c) bond, including a nominal bond, is committed to the court’s discretion.

The Bankruptcy Court’s alternative findings of “changed facts” rest upon matters that are either products of the injunction itself (the absence of a scheduled foreclosure), the natural consequence of a lender dispute that has lasted three years (accrued interest, litigation expense, deferred construction), or mistakes as a matter of law. Nearly all of the Bankruptcy Court’s findings were not “significant changes” in the facts that the Appellees had to prove before the Bankruptcy Court could undo injunctions that it did not enter.

The Bankruptcy Court temporarily stayed its order for fourteen days to allow an appeal and stated that the stay and bond questions would be addressed on a motion for stay pending appeal “if brought before this Court, and again, if this Court denies it, if brought before the District Court on appeal.” Tr. II at 106:17–107:8. That fourteen-day period has expired. Nothing now prevents JPK NewCo from proceeding with new foreclosure sales. A sale of either property owned by the Appellants to a third party would moot this appeal and destroy the subject of more than three years of litigation. The equities that supported the Superior Court’s orders granting injunctive relief in 2023 support a stay now.

---

[1] Tr. II is attached as Exhibit 3.

## II. FACTUAL AND PROCEDURAL BACKGROUND [2]

### A. The Parties, the Loan Documents, and the D.C. Superior Court Cases

This is a dispute between two related real-estate development entities – RE1 and 423 Kennedy – and the Appellees. RE1 owns 5501 and 5505 1st Street, NW. 423 Kennedy owns 419–423 Kennedy Street, NW. Each property is encumbered by two deeds of trust originated by Appellee WCP Fund I, LLC (the "WCP Fund"): a senior deed of trust ($3,579,000 on 1st Street; $8,689,693 on Kennedy Street) and a junior deed of trust ($524,000 on 1st Street; $1,256,000 on Kennedy Street). The Appellants were current on their loan obligations in 2022. As the loan maturity dates approached, Appellants were in the process of refinancing the loans through MainStreet Bank, which refinancings would have paid the WCP Fund in full. At no point prior to December 8, 2022 did anyone assert that either of Appellants was in default under any of their loan documents.

After learning of the refinancings, Appellee Daniel Huertas, who owns Appellee DP Capital, LLC d/b/a Washington Capital Partners ("WCP"), the servicer of the loans, began taking actions to obstruct both projects. In October 2022, the WCP Fund stopped funding construction draws for 423 Kennedy, citing dissatisfaction with an unrelated project involving another developer. The WCP knew that withholding draws would halt construction, which was 75% complete at 423 Kennedy Street. Even though payments under Appellants' loans were current, Mr. Huertas tried to pressure Mel Negussie, a member of both owner entities, to cover a $700,000 shortfall on a separate, unrelated development at 2507 I Street NW. On December 8, 2022, Mr. Huertas threatened (in a phone call) that a wealthy investor involved in the 2507 I Street project would "make trouble" for Mr. Negussie on all of his projects unless he arranged

[2] The facts and procedural background are supported by both the record and the Affidavit of Mr. Negussie that is attached as Exhibit 1.

for payment of the shortfall. When Mr. Negussie refused, the WCP "withdrew" all prior payoff statements and issued unsigned Notices of Default for each project that did not specify the alleged defaults and threatened foreclosure. On the same day, the WCP issued new payoff statements demanding over $2 million in newly imposed default interest and penalties – charges that had not appeared on any earlier payoff statements.

The WCP's counsel, Appellee Russel Drazin, who also served as trustee under the deeds of trust, acted on behalf of the WCP despite an inherent conflict of interest. Mr. Drazin attempted to retroactively justify the default declarations by identifying - after the fact - technical or minor issues, such as alleged cross-defaults or slightly late payments, among other alleged defaults. The Appellants contend that these justifications were pretextual and intended to conceal the true motivation for declaring the defaults.

Procedurally, the Appellants filed separate but nearly identical lawsuits in D.C. Superior Court beginning in December 2022 after the WCP Fund improperly asserted that the loans were in default, and later tried to foreclose on the properties in the cases known as *423 Kennedy St Holdings, LLC v. The WCP Fund, et al.*, Case No. 2023-CAB-004260 (D.C. Super. Ct.) and *Developer RE1, LLC v. the WCP Fund I, LLC, et al.*, 2022-CAB-005935 (D.C. Super Ct.). In both cases the Appellants filed motions seeking injunctive relief, *i.e.*, that any foreclosures be enjoined until after the Appellants' claims were decided.

On July 24 and 25, 2023, Judge Lee and Judge Scott respectively, after notice and hearings at which most Appellees appeared and were heard, entered orders enjoining any foreclosure on each property pending trial. Judge Lee found a likelihood of success on breach-of contract and tortious-interference claims. Judge Lee also found irreparable harm because the properties are unique and a foreclosure sale "would undoubtedly result in the loss of investment

for Plaintiffs." Tr. II at 94:11–18, 98:12–22 (quoting the order). As to the RE1 property, Judge Scott adopted Judge Lee's findings after similar evidence was presented to her at a separate, contested injunction hearing. Neither judge required a bond, and neither order stated a termination date, because both judges contemplated a prompt trial. ECF # 1-1, pages 1371-392 (Judge Lee's Order) and 1543-48 (Judge Scott's Order). The Appellees did not appeal either injunction, which they could have done as of right. The two cases were consolidated in June 2024 (the "Consolidated Cases"). Unbeknownst to Appellants, after the cases had been pending for more than a year, Appellees created JPK NewCo and arranged for the junior loan documents to be transferred to that entity around April 15-16, 2024.

On July 3, 2024, the Borrowers noted the depositions of several of the Appellees and multiple fact witnesses (employees of the WCP) to take place back-to back on July 8-9, 2024. At 12:55 a.m. on July 4, 2024, the Appellees filed a notice of removal of the Consolidated Cases resulting in the Adversary Proceeding entitled *Developer RE1, et al., v. WCP Fund I, LLC,* (*In re Paret),* Adv. Pro. 24-10023-ELG.[3] This was the first time the Appellants learned about the existence of JPK NewCo. The evidence available to date indicates that several of the Appellees formed JPK NewCo, transferred the junior loan documents, and set up a single, separate, fictitious loan that could not be repaid to manufacture JPK NewCo's insolvency. It was also obvious from the timing of the first notice of removal and JPK NewCo's subsequent involuntary bankruptcy that those filings were intended to prevent the Appellants from taking depositions

[3] The initial basis for removal was the fact that Charles Paret, a debtor in an involuntary bankruptcy case that two of the Appellees initiated after Mr. Paret sued Mr. Huertas in D.C. Superior Court, had alleged that he was involved in a partnership with Mr. Huertas, and that partnership included sharing in the profits of the loan documents of various properties. *See In re Paret,* Case No. 23-00217-ELG at ECF #132.

and to ensure that a September 9, 2024 trial date, which was set on an expedited basis given the injunctions, did not take place in D.C. Superior Court.

B. JPK NewCo's Lack of Any Indicia That It Is a Legitimate Company

JPK NewCo was formed on February 1, 2024. Since its formation, JPK NewCo has conducted no legitimate business. It has no employees, it generates no income from sales, it produces no goods, and it provides no services. JPK NewCo's principal place of business was the same as the WCP's office in McLean, VA – an address that is also shared with the WCP Fund and Mr. Huertas. Until April 15, 2024, JPK NewCo existed simply as a shell entity. On April 15, 2024, the WCP Fund and SF NU, LLC ("SF NU"), the prior owner of one junior loan, while still defendants in the Consolidated Cases, assigned the junior loan documents to JPK NewCo. Although assignment documents indicate that the assignments were "for value received," given that JPK NewCo had no money and provided no services, it appears that these assignments were actually for no consideration.

On June 3, 2024, when the discovery period in the Consolidated Cases was nearing completion, Shaheen Sariri, a friend of Mr. Huertas, "loaned" JPK NewCo $50,000. This "loan", which was made despite JPK NewCo having no income or assets other than the assigned junior notes that would yield no income due to the injunctions in the Consolidated Cases, was supposed to repay, in full, with 10.55% annual interest, two months later on August 3, 2024. The first payment was due on July 1, 2024. Given that JPK NewCo had no ability to repay this "loan" to Mr. Sariri, it is obvious that this "loan" was a sham. Indeed, it was never intended that JPK NewCo would repay this loan. Rather, the purpose of this "loan" was to cause JPK NewCo to incur a debt to a single individual, Mr. Sariri, so Mr. Sariri could then initiate an involuntary bankruptcy against JPK NewCo, thereby giving the Appellees another potential ground to allow the Bankruptcy Court, which they perceive as a friendlier forum, to have jurisdiction over all or

part of the Appellants' claims. JPK NewCo received the "loan" from Mr. Sariri on June 21, 2024. On June 25, 2024, JPK NewCo loaned the remaining $26,000 to an entity known as Energy Morroco, LLC, a loan that was not scheduled to be repaid (other than a $325 interest payment to be made each month) until December 21, 2024 – well after the "loan" from Mr. Sariri was due to be paid in full. The purpose of the loan to Energy Morroco, LLC, was to give the false impression that JPK NewCo was carrying on some type of legitimate business activity.

All available information indicates that the plan to manufacture federal jurisdiction through the loan from Mr. Sariri and a subsequent bankruptcy filing by JPK NewCo was created and carried out on the advice of the Appellees' former attorney, Maurice VerStandig. Given that on July 1, 2024, when the first payment to Mr. Sariri came due, JPK NewCo had (by design) no cash on hand to repay the "loan", it failed to make its first payment to Mr. Sariri.

C. The First Collusive Efforts to Manufacture Federal Jurisdiction – *JPK NewCo I*

Allegedly as a result of a default under the manufactured Sariri note, on July 23, 2024, Mr. Sariri filed an involuntary Chapter 11 petition against JPK NewCo. *See In Re: JPK NewCo, LLC,* Case No. 24-00262-ELG ("*JPK NewCo I*"). The U.S. Trustee's office moved to dismiss *JPK NewCo I* as a bad faith filing. *See JPK NewCo I;* ECF # 37. In its opposition, the WCP admitted that JPK NewCo was created as a separate entity to "to firewall any liability [to the Appellants] from reaching WCP or its various co-defendants." *See* ECF #56 at 6, ¶¶ 15 (WCP Opposition filed in *JPK NewCo I*). The WCP fund also represented that JPK NewCo was formed with the intent of being ". . . focused on addressing multiple litigation claims and thusly likely sheltering WCP and SNL from the ultimate economic reach of the subject litigation claims." *Id.* ¶ 18. The Bankruptcy Court issued a Scheduling Order permitting discovery and setting an evidentiary hearing on the U.S. Trustee's motion to dismiss. But before the motion to

dismiss was decided, JPK NewCo and the U.S. Trustee's office signed off on a consent order dismissing *JPK NewCo I*. The sole basis listed for dismissal was JPK NewCo's failure to pay quarterly fees to the U.S. Trustee's office. *See* ECF # 85 in *JPK NewCo I*.

After *JPK NewCo I* was dismissed, the Appellants renewed their motion for remand of the Consolidated Cases, which the Appellees again opposed. *See* ECF ## 46 and 51 in 24-10023-ELG. After a hearing, the Bankruptcy Court remanded the Consolidated Cases back to D.C. Superior Court on May 12, 2025. *See* ECF # 64 in 24-10023-ELG.

D. <u>The Condensed Procedural History of *JPK NewCo II*</u>.

On May 27, 2025, JPK NewCo again sought relief from the Bankruptcy Court by filing a voluntary Chapter 11 petition (25-00200-ELG) ("*JPK NewCo II*") and by filing the next day an adversary proceeding over the same claims as Appellants' claims (25-10015-ELG). Then on September 1, 2025, JPK NewCo re-removed the Consolidated Cases as an adversary proceeding (25-10037-ELG). The Appellants moved to dismiss *JPK NewCo II* for being filed in bad faith. *See JPK NewCo II;* ECF # 19. The Bankruptcy Court heard oral argument on the motion to dismiss on July 30-31, 2025. On September 2, 2025, the Bankruptcy Court issued an Order Denying the motion to dismiss. The Appellants timely noted an appeal of that decision.

On September 10, 2026, this Court (Sooknanan, J.) vacated the denial of the motion to dismiss and remanded the case, holding that the Bankruptcy Court had applied the wrong legal standard for bad faith. *See Developer RE1, LLC v. JPK NewCo, LLC*, No. 1:25-cv-03250-SLS, ECF No. 23 (D.D.C. Sept. 10, 2026). JPK NewCo appealed that decision to the D.C. Circuit in the case known as No. 26-7194 (the "DC Circuit Appeal"). The Appellants have moved to dismiss the DC Circuit Appeal based upon a lack of jurisdiction, and that motion remains pending. The remanded motion to dismiss *JPK NewCo II* (for bad faith) has not yet been set for an evidentiary hearing by the Bankruptcy Court.

E. The Withdrawal of the Reference Cases.

On August 20, 2025, the Appellants filed a motion for abstention and to dismiss the new adversary proceeding and a motion for remand of the re-removed Consolidated Cases. *See* ECF ##25-26 in 25-10015-ELG and #10 in 25-10037-ELG. The Bankruptcy Court denied those motions at a hearing on September 5, 2025. Thereafter, the Appellants filed a Motion for Withdrawal of the Reference as to both adversary proceedings, and those motions are currently pending before Judge Boasberg in Case. Nos. 25-mc-00160 and 26-mc-00161.

F. The Motion to Dissolve Injunctions and the Dissolution Order

Notably, the Appellees did not move to dissolve or modify either injunction, or later ask that any bond be set, at any time during the time the cases remained in the Superior Court, either before the first removal in July of 2024 or before the second removal on September 1, 2025. It was not until April 23, 2026, nearly three years after the injunctions were entered, that Appellees moved in the Bankruptcy Court to dissolve the injunctions. The Bankruptcy Court heard evidence on October 19, 2026 and closing argument on October 21, 2026. At the outset it ruled that the Superior Court orders, although appeared styled as a temporary restraining order ("TRO"), were preliminary injunctions under federal law because they had remained in effect beyond the period permitted for a TRO. Tr. II at 92:6–22. Appellees presented no recent appraisal, no inspection report, and no witness on the condition or value of either property; the only witness they called on their motion was Rosana Cordova, who did not testify about any changed circumstances. The Appellees' evidence of "deterioration" consisted of an email from Mr. Negussie and his testimony on cross-examination. TR. II at 82:18-19 (Appellees' counsel stating that "[w]e didn't need to provide a witness").

In its oral ruling on October 21, 2026, the Bankruptcy Court granted the motion to dissolve. It found a "change in law" on two grounds: (1) that upon removal "we have moved

from the District of Columbia state law to the District of Columbia Circuit law," under which economic loss does not constitute irreparable harm, TR. II at 96:25–97:12, 97:21–100:22; and (2) that "the failure to issue a bond makes it an invalid injunction under District of Columbia Circuit law," TR. II at 100:17–19, while acknowledging that the absence of a bond "doesn't . . . stand[] alone as a reason to dissolve." Tr. II at 95:20–96:14. The Bankruptcy Court also indicated that there was a "change in facts" consisting of: the passage of three years; Appellants' asserted failure to operate in accordance with their operating agreements because they had not completed construction and had spent money on litigation; the absence of a presently scheduled foreclosure sale; the availability of bankruptcy as an alternative remedy; the properties' vacant-property tax classification and a tax sale of the Kennedy Street property; and the Bankruptcy Court's understanding of Mr. Negussie's testimony about Appellants' intentions for the properties. Tr. II at 100:23–106:3. The Bankruptcy Court expressly declined to rely on accrued interest or the terms of the notes, which "were before Judges Lee and Scott." Tr. II at 105:6–11.

The Bankruptcy Court entered an order dissolving both injunctions "for the reasons stated on the record," stayed that order for fourteen days, and stated that the question of a bond "would be appropriate to bring up at that time under Rule 8007(a)(1)(B)". Tr. II at 106:17–107:8. ECF # 48 in 25-10037-ELG. Appellants filed their notice of appeal on November 3, 2026. The fourteen-day stay of the Bankruptcy Court's order expired on November 4, 2026.

## III. Jurisdiction to Hear This Appeal

An order dissolving a preliminary injunction is immediately appealable in civil proceedings generally under 28 U.S.C. § 1292(a)(1). Bankruptcy appeals are "taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals." 28 U.S.C. § 158(c)(2). Courts have accordingly treated orders granting, denying, or dissolving injunctions



8161\0002\4906-1825-9938.v1

as appealable to the district court without leave. *In re World Imports Ltd.*, 820 F.3d 576, 582 n.5 (3d Cir. 2016) (Noting that the district court had jurisdiction of the appeal from the bankruptcy court both under 28 U.S.C. § 158(a) and under § 1292(a)(l); *In re Continental Airlines*, 91 F.3d 553, 557 (3d Cir. 1996) (en banc) (recognizing immediate appellate review for orders modifying or dissolving reorganization-related injunctions); *In re Lomas Financial Corp.*, 932 F.2d 147, 150–51 (2d Cir. 1991) (holding a denial of a motion to dissolve a preliminary injunction is appealable as of right without leave); *In re Neuman*, 81 B.R. 796, 801–02 & n.5 (S.D.N.Y. 1988) (allowing immediate appeal without leave under § 158(a)(3) by incorporating § 1292(a)).

## IV. STATEMENT UNDER FED. R . BANKR. PROC. 8007(B)(2)

Fed. R. Bankr. P. 8007(a)(1) provides that a party "ordinarily" must file a motion for stay pending appeal in the bankruptcy court. But Fed. R. Bankr. P. 8007(b)(2) permits a motion for stay pending appeal to be filed in the district court if the movant shows that "moving first in the bankruptcy court would be impracticable." *Id.* (subpart (b)(2)(A)). Filing a motion for stay with the Bankruptcy Court is impracticable for several reasons. First, the Bankruptcy Court has already ruled against one of the key questions a stay motion presents: irreparable injury. The Bankruptcy Court has already decided that Appellants "[did] not meet the standard for federal injunctions" and that Appellants cannot show irreparable injury as a matter of Circuit law. Tr. II at 95:17–20, 97:21–100:12. For the Bankruptcy Court to now find that the Appellants are likely to prevail on the merits of this appeal, the Bankruptcy Court would effectively be admitting that it committed legal error in its decision to dissolve the injunctions. The Appellants believe that there is no chance that the Bankruptcy Court will make such an inconsistent "about face" decision. Second, in its decision the Bankruptcy Court contemplated that the stay and bond questions would ultimately come before this Court. Tr. II at 106:20–25.

## V. THE LEGAL STANDARD FOR A MOTION TO STAY PENDING APPEAL

A stay pending appeal is governed by four factors: whether the applicant has made a strong showing of likelihood of success on the merits; whether the applicant will be irreparably injured absent a stay; whether a stay will substantially injure the other parties; and where the public interest lies. *Nken v. Holder*, 556 U.S. 418, 434 (2009). The first two factors "are the most critical." *Id.* In this Circuit a strong showing on irreparable harm may support a stay where the merits present "a serious legal question." *See Sherley v. Sebelius*, 644 F.3d 388, 392–93 (D.C. Cir. 2011) (describing the sliding-scale approach to evaluating stay requests and whether *Winter v. NRDC*, 555 U.S. 7 (2008), displaced it). Where, as here, the order under review dissolved an injunction, Bankruptcy Rule 8007(a)(1)(C) and Federal Rule of Civil Procedure 62(d) permit the court to "restore" the injunction pending appeal on terms that secure the opposing party's rights.

## VI. LEGAL ARGUMENTS

### A. Appellants Are Likely to Succeed on Appeal, and the Appeal Presents at Least Serious Legal Questions.

The Bankruptcy Court correctly identified the governing standard: a party seeking to dissolve an injunction bears the burden of showing "a significant change either in factual conditions or in law" such that continued enforcement is no longer equitable. Tr. II at 95:1–16 (citing *Doe 2 v. Shanahan*, 755 F. App'x 19 (D.C. Cir. 2019) (per curiam)); *see also Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 384 (1992) (discussing changes to a consent decree under Rule 60(b)(5)). The inquiry under a motion to dissolve is confined to new matters only; it is not an occasion to relitigate the original injunction. *Doe 2*, 755 F. App'x at 23. But the Bankruptcy Court misapplied the governing standard in several respects, each of which is a question of law that this Court can review de novo.



8161\0002\4906-1825-9938.v1

B. Removal to Federal Court is Not a "Change in Law".

The Bankruptcy Court's principal "change in law" decision was that, upon removal, "we have moved from the District of Columbia state law to the District of Columbia Circuit law, and there is a different standard." Tr. II at 96:25–97:12. It then measured the Superior Court's 2023 findings against the federal irreparable-harm rule of *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985), found them wanting, and dissolved the injunctions on that basis. Tr. II at 97:21–100:22. In *Agostini v. Felton*, 521 U.S. 203 (1997) the Supreme Court indicated that subsequent changes in the law requiring modification of a consent decree or an injunction under Rule 60(b)(5) refers to "subsequent changes in either statutory or decisional law". *Agostini*, 521 U.S. at 215 (listing cases where there were changes to statutes by Congress or changes to decisional law). The fact that there was a change in forum is not a "subsequent change in law". Nothing in the decisional law governing the Appellants' state law claims changed between 2023 and 2026; the only thing that changed was the forum.

Section 1450 of Title 28 of the U.S. Code further provides that upon removal "[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." In *Granny Goose*, the Supreme Court explained that § 1450 "ensures that interlocutory orders entered by the state court to protect various rights of the parties will not lapse upon removal . . ." so that ". . . injunctions[] and other orders obtained in state court all remain effective after the case is removed to federal court." 415 U.S. at 436. Although federal law governs "the future course of proceedings" after removal, *id.* at 437, nothing in *Granny Goose* suggests that the mere availability of a federal formulation of the preliminary-injunction standard is itself a change in law warranting re-examination of the state court's findings on the original record. The Bankruptcy Court recognized that the injunctions "continue up until the Court modified or dissolved them" yet



8161\0002\4906-1825-9938.v1

treated the mere availability of a federal standard as a "change in law" that allows for dissolution of the injunctions. Tr. II at 92:19–22. If the Bankruptcy Court's reasoning was correct, then every state-court injunction removed to federal court would be subject to dissolution on the day of removal and § 1450 would be rendered meaningless.

The Bankruptcy Court's second "change in law" finding was that the absence of a bond rendered the injunctions "invalid" under this Circuit's caselaw. Tr. II at 100:17–19. This second "change in law" finding is also legal error. The D.C. Circuit has held that the amount of security under Rule 65(c) "is within the sound discretion of the trial court," which may set a nominal bond or none where the circumstances warrant. *See Federal Prescription Service, Inc. v. American Pharmaceutical Ass'n*, 636 F.2d 755, 759–61 (D.C. Cir. 1980) (noting the "widely recognized discretion" of a district court "not only to set the amount of security but to dispense with any security requirement whatsoever"). The Bankruptcy Court acknowledged that the lack of a bond "doesn't . . . stand[] alone as a reason to dissolve" and the remedy for a missing bond, if one were required, is to set one under Rule 65(c), not to dissolve the injunction. Tr. II at 95:20–22. The Superior Court judges' decisions to not require a bond (or other security) were themselves discretionary rulings that the Appellees never challenged. The Bankruptcy Court never asked the Appellees why they did not appeal the initial orders nor why they waited almost three years to challenge or modify them.

C. The Bankruptcy Court Re-Examined the Original Injunctions Instead of Confining Itself to New Circumstances; the Loss of Real Property Constitutes Irreparable Harm as a Matter of Law.

Having first erroneously found a "change in law," the Bankruptcy Court then proceeded to hold that Judge Lee's irreparable-harm finding was "not the standard under the D.C. Circuit" and that his view of the bankruptcy alternative was "an inaccurate statement of bankruptcy law on its face." Tr. II at 97:21–99:20. Whatever the merit of those criticisms, they are criticisms of

the original injunctions on the original record. Appellees could have raised those concerns by noting an immediate appeal in 2023 or by motion filed in the Superior Court at any time thereafter. Nevertheless, even though Appellants warned the Bankruptcy Court that this Circuit has clearly held that a motion to dissolve is not an opportunity to relitigate the original injunction decision (citing *Doe 2)* the Bankruptcy Court decided to do just that. Tr. I at 40:24-41:1-4 ("I'm going to give the Defendants in entirety the ability to show . . . why the evidence presented at [the July 2023] hearing[s were] incomplete or do[ ] not support the finding, or for any other reason . . .).

The Bankruptcy Court's underlying premise was also incorrect as a matter of law. The loss of real property through foreclosure is the classic example of irreparable harm that a remedy at law (in damages) cannot repair, as courts in this District and elsewhere have repeatedly held. *See, e.g., L.C. v. Trump,* 2026 U.S. Dist. LEXIS 106000, *29 (2026) (unauthorized interference with a real property interest constitutes irreparable harm as a matter of law since real property is a "unique commodity for which a monetary remedy for injury is an inherently inadequate substitute") (internal citations omitted); *Shvartser v. Lekser,* 308 F. Supp. 3d 260 (2018) (enjoining a foreclosure sale and noting that, as a matter of law, "a piece of [real] property is considered to be a unique commodity for which a monetary remedy for injury is an inherently inadequate substitute") (internal citation omitted); *Peterson v. D.C. Lottery & Charitable Games Control Bd.,* No. 94-1643, 1994 U.S. Dist. LEXIS 10309, 1994 WL 413357, at *4 (D.D.C. July 28, 1994) ("It is settled beyond the need for citation . . . that a given piece of property is considered to be unique, *and its loss is always an irreparable injury*.") (italic emphasis added); *Bean v. Independent Am. Sav. Ass'n,* 838 F.2d 739, 743 (5th Cir. 1988) (injunctive relief was appropriate to prevent a foreclosure where the movant stood to lose interests in real property,

which are presumed to be unique). Judge Lee made exactly that finding. Tr. II at 98:16–22. *Wisconsin Gas*, the decision upon which the Bankruptcy Court chiefly relied, addressed a claimed monetary loss from a regulatory order; it did not hold that the forced sale of land to a third party is compensable in damages. *Wisconsin Gas*, 758 F.2d at 672.

D. The "Changed Facts" Identified by the Bankruptcy Court Were Not Significant Changes, Were Not Supported by the Record, or Were Legally Mistaken.

This Court can review the Bankruptcy Court's factual findings under the clearly erroneous standard. *Hardy v. Ross (In re Hardy)*, 589 B.R. 217, 220 (2018) ("A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."). The Bankruptcy Court's factual errors are summarized below. For the court's convenience, Appellants have also provided a detailed chart outlining these factual errors. *See* Exhibit 2.

1. *The Absence of a Scheduled Foreclosure Is Not a Changed Circumstance.* The Bankruptcy Court found a change in facts because the 2023 orders were entered "on the eve of foreclosure" whereas today "there is no foreclosure being scheduled." Tr. II at 103:5–11. There were no foreclosure sales being scheduled because the injunctions forbid them. A party cannot obtain dissolution of an injunction by pointing to the injunction's own effect.

2. *The Availability of Bankruptcy is Not an Adequate Remedy at Law.* The Bankruptcy Court found that Appellants now have "other available remedies at law," including a Chapter 11 filing. Tr. II at 103:3–5, 105:18–20. Neither the Appellees nor the Bankruptcy Court pointed to any case that support the proposition that filing for bankruptcy is considered an "adequate remedy at law", and the Appellants are not aware of any such case. Nevertheless, that option existed in 2023, when Judge Lee considered and rejected it, which the Bankruptcy Court acknowledged. Tr. II at 99:7–20 and 103:16–18. A court's disagreement with a prior judge's

weighing of an alternative that has not changed is not a changed circumstance, much less a significant one.

3. *The Operating Agreements and Litigation Expenses Are Not Changed Circumstances.* The Bankruptcy Court found that "it seems" that [Appellants] were not operating in accordance with their operating agreements" because they had not completed construction and had spent approximately $850,000 on legal fees and maintenance. Tr. II at 102:14-24 and 66:13-19. Section 1.4 of the 423 Kennedy Operating agreement contains no development purpose, which the Bankruptcy Court stated was "implied. Tr. II at 101:15-22. No party to the operating agreements complained of any such breach, and Appellees have no standing to enforce the terms of the operating agreements. More fundamentally, the Bankruptcy Court's finding about litigation expenses penalizes the Appellants for asserting their rights to seek remedies against the Appellees' for their misconduct, found likely by two judges, and for defending against the Appellees' scheme to manufacture federal jurisdiction. That is the status quo the injunctions preserved, not a departure from it.

4. *The Court Erred in its Assessment of the Vacant Property Tax Classification.* The Bankruptcy Court took judicial notice that District law "allows for only four years to apply for and obtain" vacant-property exemptions and found that Appellants had exhausted them. Tr. II at 103:20–104:12. The relevant D.C. statutes provide otherwise. The cumulative limit on exemptions is ". . . 5 tax years in any 12-year period," D.C. Code § 42-3131.06a(d). The same statute separately exempts property whose title "is the subject of litigation" or "under active construction" for up to 3 tax years. *Id.* § 42-3131.06a(b)(3) and (b)(6). RE1's challenge to the 2025 real estate taxes is also pending before the Real Property Tax Appeals Commission. Tr:

(Oct. 19, 2026) at 98:5-99:10 (10/19/26) ("Tr. I").[4] A finding of changed fact that rests upon a misreading of the statute and treats a contested classification as settled cannot support dissolution of the injunctions.

5. *The Tax Sale and Unpaid Taxes Do Not Currently Threaten JPK NewCo's Lien Interests.* The court treated the August 2026 tax sale of the Kennedy Street property and unpaid taxes as impairing JPK New Co's liens. Tr. II at 104:21–105:5. But as the Appellants noted at the hearing, the tax sale is subject to redemption, and the redemption action itself cannot be commenced until six months after the issuance of the tax sale certificate. D.C. Code § 47-1360(a) and (d). Appellees' own counsel quantified the combined tax exposure at $269,075.94 for both properties. Tr. II at 52:5–9. The undisputed testimony at the hearing also established that the plan was to pay the taxes "when we have to." Tr. I at 96:11-24. Appellees' own counsel also valued, through Mr. Negussie's testimony, the RE1 property a $4.7 to $5 million and the 423 Kennedy at $11.9 million, which means that there is available equity in the properties to satisfy a $300,000 claim. Tr. II at 50:20–51:3.

6. *The Court Did Not Accurately Describe Appellants' Intentions, and Those Intentions are Not New Circumstances.* The Bankruptcy Court found that Mr. Negussie testified that he has "no intention of finishing these projects." Tr. II at 98:23–99:6. But that finding is a mischaracterization of Mr. Negussie's testimony. His testimony was that: the Appellants did make "all efforts [to obtain financing] after the draws were stopped to continue with this project" that his current efforts to refinance have consisted of "contacting banks and talking to representatives of banks and whatnot"; that "[n]obody will give you a term sheet or have really that much discussion [about financing] unless this matter is resolved"; that Appellants were

---

[4] Tr. I is attached as Exhibit 4.

"always prepared in case this matter is resolved to be able to refinance these two projects"; that due to the JPK NewCo bankruptcy the properties are "tied up in the bankruptcy court system," and, while lenders consider each "a project that we'll be interested in," they say "you need to resolve it"; and that the 423 Kennedy project could have been completed in March of 2023 if the construction draws were not stopped. Tr. I at 110:14–23, 136:1-11, 136:25-137:4, 137:7–15 and 150:7–11. That is the same position the Appellants have held since 2022, not a changed circumstance.

7. *No Evidence of Deterioration was Presented.* The sole basis outlined in the Motion to Dissolve was that there was "deterioration" of the 423 Kennedy project. But at the hearing, Appellees offered no inspection, no recent appraisal, and no expert (or other) testimony regarding the actual condition of the 423 Kennedy property. Their counsel argued that "[w]e didn't need to put on a witness regarding the deterioration of the property." Tr. II at 82:24–83:6. The Bankruptcy Court did not rest its ruling on deterioration – the sole basis for "changed circumstances" that was set forth in the Motion to Dissolve – nor could it have.

8. *The Passage of Time is Not a Changed Circumstance.* The Bankruptcy Court first indicated that the passage of time and the accrual of interest "wouldn't be necessarily appropriate . . . to take into consideration", but then later indicated that the passage of time was a contributing factor in its decisions. Tr. II at 102:6 ("It's been three years"), 103:10 (". . . they've been stayed for three and a half years from collecting on their debts"), 104:18–19 (" . . .the properties have been sitting for three and a half years . . ."). But the passage of time here was a direct byproduct of the Appellees' own conduct and a self-inflicted wound. By first removing the Consolidated Cases to Bankruptcy Court, the Appellees prevented the September 9, 2024 trial from taking place in the Superior Court. All of the subsequent delays here stem from this

original litigation sin. Even though there is a longstanding equitable principal that one who seeks equity must not sleep on his rights (also known as laches), the Bankruptcy Court gave no consideration to Appellees' removal tactics that prevented the September 2024 trial from taking place in Superior Court.

E. <u>The Bankruptcy Court Violated the Party Presentation Principle by Raising and Deciding Multiple Issues that Were Not Advanced by the Appellees</u>.

Under the party presentation principle, courts generally rely on the parties to formulate the issues in dispute and decide the issues presented by the parties. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) (citing *Greenlaw v. United States*, 554 U.S. 237, 244 (2008)). In both civil and criminal cases, in the first instance and on appeal, courts generally rely on the parties to frame the issues for decision and assign to the courts the role of neutral arbiter of matters the parties present. *See id.* The core reason behind this rule is simple: the parties frame the issues for decision, and the court acts as a neutral arbiter to resolve them. The principle also restricts judges from stepping outside of their referee role to rescue a poorly prepared case, or to invent brand-new legal arguments, *sua sponte*, that neither side raised. The principle also protects a party's right to due process, because when a judge decides an issue based upon a hidden theory or an argument that the parties never briefed, it deprives the litigants of their fundamental right to notice and an opportunity to respond.

Here the Bankruptcy Court went beyond calling balls and strikes in several of its decisions. The Appellees did not advance any argument to the Court regarding the terms of the Operating Agreements leading to any change in circumstances – the Bankruptcy Court raised

that "changed circumstance" issue on its own.[5] The Appellees also did not advance any argument that the Appellants had only suffered economic losses or that the Appellants did not and could not show irreparable harm. The Bankruptcy Court overstepped its judicial role by raising these arguments *sua sponte* and advocating those positions on behalf of the Appellees. The Bankruptcy Court did not just call balls and strikes here – it took the pitcher's mound, threw several pitches, then called those pitches strikes and outs against the Appellants.

### F. The Bankruptcy Court Did Not Consider Modification and it Dissolved the Injunctions in Favor of a Party Whose Bankruptcy Petition is Under Scrutiny for Bad Faith.

Even where a movant shows changed circumstances, the remedy must be "suitably tailored" to the changed circumstance. *Rufo*, 502 U.S. at 391. Appellees themselves asked in the alternative for modification of the injunctions to require a bond. Tr. II at 51:15 - 52:25. The Bankruptcy Court did not consider whether a bond, an inspection protocol, a tax-payment condition, or setting an expedited trial date – each of which was an available remedy that could have addressed the concerns that the Bankruptcy Court identified. It instead dissolved the injunctions outright and set no bond, leaving the question for this Court to decide.

The only Appellee positioned to foreclose is JPK NewCo, whose Chapter 11 petition another judge of this Court found had been evaluated under the wrong legal standard, and whose good faith remains to be determined. Dissolving the injunctions in JPK NewCo's favor before the bad faith determination inverted the proper order of the decisions. If the Chapter 11 petition is dismissed as being filed in bad faith, the adversary proceedings should return to the Superior

[5] Appellees' counsel only argued that the Operating Agreements were introduced to support the 2022 claim that there were cross defaults under the loan documents. Tr: II 40:25-42:18. This is not a changed circumstance.

Court, whose injunction orders will have been dissolved by a court that never should have had any authority over the case.

## VII. Appellants Will Suffer Irreparable Harm Absent a Stay.

Without a stay, JPK NewCo may immediately issue a new notice setting a foreclosure on thirty days' notice. D.C. Code § 42-815. A completed sale to a third party would (i) divest Appellants of unique real property that two judges found could not be replaced with a damage award; (ii) moot this appeal, because the Court cannot restore an injunction against a sale that has already occurred; and (iii) eliminate the purpose of the adversary proceeding, which seeks to enjoin foreclosure permanently and to adjust the debt by recoupment of damages. As Appellants have already noted, the loss of real property is presumed to constitute irreparable harm. *See* Part VI.C, *supra.* The harm is concrete and imminent: Appellees sought dissolution for the stated purpose of proceeding to foreclosure, and Appellees' counsel told the Bankruptcy Court that "if these properties were to go to foreclosure, no one would bid on them," Tr. II at 83:24–84:1, which implies that JPK NewCo intends to acquire both properties by credit bid.

## VIII. A Stay Will Not Substantially Injure Appellees.

Appellee JPK NewCo is already a secured creditor. JPK NewCo holds junior liens of $524,000 and $1,256,000 on properties that Mr. Negussie's testimony valued at $4.7 to $5 million now (RE1) and $11.9 million as of November 2022 (423 Kennedy). Tr. I at 133:3–5 and 142:25–143:3. Interest continues to accrue and is recoverable from the collateral; the injunctions postponed collection, they did not forgive it. The senior lienholder has also not moved to dissolve the injunctions nor has it sought to foreclose. Appellees also waited nearly three years to seek dissolution, so it is hard to see how they could now argue that a further, brief stay that allows this Court to review the dissolution decision will cause them substantial injury. To the

extent the Court finds any cognizable injury from delay, less drastic remedies are available. *See* Part X, *infra*.

## IX. THE PUBLIC INTEREST FAVORS A STAY.

The public interest favors preserving the status quo so that appellate review is meaningful, respecting the orders of the Superior Court as § 1450 directs until they are properly modified, and resolving the pending question of JPK NewCo's good faith before it is permitted to use the forum it chose to accomplish what the Superior Court injunctions prohibited. No public interest is served by a forced sale of two development sites to a lender's affiliate while the lender's own misconduct is awaiting trial.

## X. NO BOND SHOULD BE REQUIRED; ALTERNATIVELY, ANY SECURITY SHOULD BE MEASURED BY APPELLEES' DEMONSTRATED LOSS FROM DELAY.

Rule 8007(c) provides that the Court "may" condition a stay on a bond or "other appropriate security." Security is discretionary. *Federal Prescription Serv.*, 636 F.2d at 759–61. The purpose of security is to protect the appellee against loss caused by the stay if the appeal fails, not to pay the appellee's claim. *See In re Adelphia Communications Corp.*, 361 B.R. 337, 350–51 (S.D.N.Y. 2007). Either no bond or a nominal bond should be required. The Superior Court required none and Appellees sought none for three years. Appellee JPK NewCo is secured by collateral worth several multiples of its junior liens. If the Court concludes that some security is appropriate, the measure for that security is JPK NewCo's demonstrated loss attributable to the stay period. At the hearing before the Bankruptcy Court, the Appellees did not put on any evidence to show what actual damages they would incur as a result of a delayed foreclosure sale, which was fatal to their request for a bond. *Federal Prescription Serv.*, 636 F.2d. at 759 (noting that Courts have concluded the district court has power not only to set the amount of security but

to dispense with any security requirement whatsoever where the restraint will do the [enjoined party] "no material damage" and/or there "has been no proof of likelihood of harm") (citing *Urbain v. Knapp Brothers Manufacturing Co.*, 217 F.2d 810, 816 (6th Cir. 1954), *cert. denied*, 349 U.S. 930, (1955) and *International Controls Corp. v. Vesco*, 490 F.2d 1334, 1356 (2d Cir. 1974) (citing *Ferguson v. Tabah*, 288 F.2d 665, 675 (2d Cir. 1961)).

## XI. CONCLUSION

For these reasons, Appellants respectfully request that the Court (a) grant a stay pending appeal and restore the injunctions until after a decision on the merits of Appellants' claims; and (b) decline to require a bond or, alternatively, set a nominal bond. A proposed order is attached.

Dated: November 18, 2026

DEVELOPER RE1, LLC AND 423 KENNEDY ST HOLDINGS, LLC,

/s/ James D. Sadowski

James D. Sadowski (DC 446635)
GREENSTEIN DELORME & LUCHS, P.C.
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400
Fax: (202) 452-1410
Emails: jds@gdllaw.com;

and

Jeremy S. Williams (DC 994825)
KUTAK ROCK LLP
1021 East Cary Street, Suite 810
Richmond, Virginia 23219
Telephone: (804) 644-1700
Fax: (804) 783-6192
Email: jeremy.williams@kutakrock.com

*Co-Counsel for Developer RE1, LLC and 423 Kennedy St Holdings, LLC*

## CERTIFICATE REGARDING DUTY TO CONFER

I hereby certify that pursuant to LCvR 7(m), prior to filing this motion I either called or emailed opposing counsel (Stephen Willner and Maurice Verstandig) seeking consent to the relief requested in this motion, which consent was refused.

/s/ James D. Sadowski
James D. Sadowski

## CERTIFICATE OF SERVICE

I hereby certify that on November 18, 2026, the foregoing Motion was filed through the Court's CM/ECF system, which should send notice of electronic filing to all counsel of record, including counsel for JPK NewCo, LLC; DP Capital, LLC; WCP Fund I, LLC; Daniel Huertas; SFNU, LLC; Russell S. Drazin; and Shaheen Sariri.

/s/ James D. Sadowski
James D. Sadowski

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In Re:<br><br>JPK NEWCO, LLC | |
| DEVELOPER RE1, LLC. ET AL.,<br><br>*Appellants,*<br><br>v.<br><br>JPK NEWCO, LLC, ET AL.,<br><br>*Appellees.* | Civil Action No.: 26-03920 (AHA) |

**[PROPOSED] ORDER**

Upon consideration of Appellants' Motion for a Stay Pending Appeal ("Motion for Stay"), the opposition to the Motion for Stay, and the Reply, it is hereby

ORDERED that the Motion to Stay is GRANTED; and it is further

ORDERED that the order of the United States Bankruptcy Court for the District of Columbia entered October 21, 2026 in Adversary Proceeding No. 25-10037-ELG (Dkt. No. 48) dissolving the orders of the D.C. Superior Court is STAYED pending the disposition of this appeal, and the orders of the D.C. Superior Court are RESTORED and shall remain in full force and effect pending further order of this Court.

Dated: ______________________________

______________________________
AMIR H. ALI
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:<br><br>JPK NEWCO, LLC,<br><br>*Debtor* | Case. No. 25-00200-ELG<br>Purported Chapter 11 |
| DEVELOPER RE1, LLC. ET AL.,<br><br>*Appellants,*<br><br>v.<br><br>JPK NEWCO, LLC, ET AL.,<br><br>*Appellees.* | Civil Action No.: 26-03920 (AHA) |

**APPELLANTS' EXHIBIT LIST AND RELEVANT RECORD MATERIALS FOR MOTION FOR STAY PENDING APPEAL**

| Ex. #. | Date | ECF No.[1] | Page Nos.[2] | Document Description |
|---|---|---|---|---|
| 1 | 11/18/26 | | | Affidavit of Mel Negussie |
| 2 | 11/18/26 | | | Chart of Testimony and Transcript Citations |
| 3 | 10/21/26 | 57 | | Transcript of Hearing Held on 10/21/2026. |
| 4 | 10/19/26 | 58 | | Transcript of Hearing Held on 10/19/2026. |

[1] All ECF No. references are to the record in Adv. Proc. 25-10037-ELG.

[2] Page number references are to the lower right corner page number due to the fact that ECF page numbers at the top of most pages are obscured.

| Ex. #. | Date | ECF No. | Page Nos. | Document Description |
|---|---|---|---|---|
| 5 | 07/18/23 | 1-1 | 1177-291 | [423 Kennedy’s] Opposed Emergency Motion for Temporary Restraining Order |
| 6 | 07/20/23 | 1-1 | 1292-334 | Opposition to [423 Kennedy’s] Motion for Temporary Restraining Order |
| 7 | 07/23/23 | 1-1 | 1359-60 | Defendants’ Supplement to Opposition to [423 Kennedy’s] Motion for Temporary Restraining Order |
| 8 | 09/23/26 | 1-1 | 1371-392 | Order of Judge Milton F. Lee entering an Injunction |
| 9 | 12/23/22 | 1-1 | 213-233 | [Developer RE1,LLC’s] Motion for Temporary Restraining Order (without Exhibits) |
| 10 | 1/31/23 | 1-1 | 511-18 | Opposition to [Developer RE1’s] Motion for Temporary Restraining Order |
| 11 | 2/28/23 | 1-1 | 542-43 | Consent Praecipe to Withdraw [Developer RE1’s] Motion for Temporary Restraining Order |
| 12 | 7/11/23 | 1-1 | 550-718 | [Developer RE1’s] Opposed Emergency Motion for Temporary Restraining Order to Prevent an Imminent Foreclosure Sale |
| 13 | 07/14/23 | 1-1 | 1109-11 | Praecipe Submitting Verification/Affidavit to [Developer RE1’s] Opposed Emergency Motion for Temporary Restraining Order to Prevent an Imminent Foreclosure Sale |
| 14 | 07/17/23 | 1-1 | 1134-59 | Opposition to [Developer RE1’s] Motion for Temporary Restraining Order to Prevent an Imminent Foreclosure Sale |
| 15 | 07/25/23 | 1-1 | 1393-400 | Defendants’ Exhibit List (partial) |
| 16 | 08/15/23 | 1-1 | 1543-48 | Hearing Order of Judge Ebony Scott entering an Injunction |
| 17 | 03/01/24 | 1-1 | 1644-51 | Consent Moton to Modify the Scheduling Oder (filed in the RE1 Case) |
| 18 | 07/03/24 | 1-1 | 195-96 | Notice of Individual Depositions of [Multiple Fact Witnesses] |

| Ex. #. | Date | ECF No. | Page Nos. | Document Description |
|---|---|---|---|---|
| 19 | 07/03/24 | 1-1 | 215-28 | Notice of Rule 30(b)(6) Deposition of DP Capital, LLC |
| 20 | 04/23/26 | 20 | | Motion to Dissolve Injunction |
| 21 | 05/08/26 | 21 | | Plaintiff's Opposition to Motion to Dissolve Injunction |
| 22 | 10/12/26 | 39 | | WCP Defendants' Witness List for Preliminary Injunction Hearing |
| 23 | Jan. 2020 | 40-1 | 154-73 | Amended and Restated Limited Liability Company Operating Agreement of 423 Kennedy St Holdings LLC dated January 2020 |
| 24 | 12/31/22 | 40-1 | 174-188 | First Amended and Restated Operating Agreement of Developer RE1 LLC |
| 25 | 10/19/26 | 44 | | Plaintiffs' Supplemental Memorandum on the Burden of Proof for a Motion to Dissolve Injunction and Their Opposition to the Preliminary Injunction Hearing |
| 26 | 10/21/26 | 47 | | Plaintiffs' List of Authorities for Motion to Dissolve Injunction Hearing |
| 27 | 10/21/26 | 48 | | Order Granting Motion to Dissolve Injunction |
| | | | | The exhibits below could not be uploaded. Counsel will contact the Clerk's office. |
| 28 | 10/19/26 | 45 | | PDF with Audio File. Court Date & Time [10/19/2026 10:45:08 AM]. File Size [ 50520 KB ]. Run Time [ 03:39:32 ]. |
| 29 | 10/22/26 | 49 | | PDF with Audio File. Court Date & Time [10/21/2026 10:10:30 AM]. File Size [ 38483 KB ]. Run Time [ 02:46:59 ]. |
| | | | | |