eFiled
07/20/2023 1:54:50 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
CIVIL DIVISION

| | |
|---|---|
| 423 Kennedy St Holdings LLC,<br><br>Plaintiff,<br><br>v.<br><br>DP Capital, LLC, et al.<br><br>Defendants. | Case No. 2023 CAB 004260<br>Judge Milton Lee<br><br>Hearing on Motion for Temporary Restraining Order: July 21, 2023 at 1:30 pm |

**OPPOSITION TO PLAINTIFF'S OPPOSED MOTION FOR TEMPORARY RESTRAINING ORDER TO PREVENT AN IMMINENT FORECLOSURE SALE**

Come now DP Capital, LLC ("DPCL"), WCP Fund I LLC ("WCP"), Daniel Huertas ("Mr. Huertas"), and Russell Drazin ("Mr. Drazin") (DPCL, WCP, Mr. Huertas and Mr. Drazin being collectively known as the "Defendants"),[1] by and through undersigned counsel, pursuant to District of Columbia Rule of Civil Procedure 12-I(e), and in opposition to the Plaintiff's Opposed Motion for Temporary Restraining Order to Prevent an Imminent Foreclosure Sale (the "Motion," with the plaintiff being known as the "Plaintiff") state as follows:

## I. Introduction

"[T]he court finds Defendant has acted in accordance with the terms of the contract," this Honorable Court (Mitchell-Rankin, J.) concluded when presented with a similar – albeit not identical – motion for a temporary restraining order, by 423 Kennedy St Holdings LLC (the "Plaintiff") in February 2023. *See* Order, attached hereto as Exhibit A. In that instance, the

[1] There is a fifth defendant to this action: SF NU, LLC ("SNL"). Undersigned counsel has not, as of present, been engaged to represent SNL. Accordingly, references to the "Defendants" are in exclusion of SNL. However, it appears the inclusion of SNL in this lawsuit is either grossly errant or an act of manifest bad faith, as SNL has – quite literally – nothing to do with the loans at issue *sub judice* and, equally, is an entity wholly independent and separate from the Defendants.

Plaintiff's request for injunctive relief was denied and the Plaintiff's case was *sua sponte* dismissed. Now, with a foreclosure of its eponymous property scheduled, the Plaintiff seeks a second bite at the proverbial apple.

The Motion merits denial this time as well. This is a case where the Plaintiff borrowed $9,945,693.00 from WCP on March 31, 2022, through two loans memorialized by promissory notes and secured by deeds of trust. Barely a month later, the Plaintiff defaulted when it failed to make a timely interest payment. A month later, the Plaintiff again defaulted by failing to make another interest payment on time. A third default followed – for the same reason – on July 1, 2022.

A fourth default came a few months later when, on November 17, 2022, the Plaintiff's failure to pay a government fine resulted in a senior lien being imposed on the property securing the debt. A fifth default followed two weeks after, when the Plaintiff did not make its December 1, 2022 interest payment on time. And seventh and eighth defaults ensued on February 1, 2023 and March 1, 2023 when the Plaintiff, yet again, failed to make interest payments.

It is the ninth default, however, that is the most significant. The loans matured on March 31, 2023 and were not repaid. It is not that the Plaintiff only repaid the principal or paid the principal with some portion of the interest; it is, rather, that the Plaintiff altogether failed to repay the loans at maturity.[2]

[2] Given the number of defaults, the defendants have created a demonstrative exhibit setting forth the details of each such breach of the loan documents correlative to the second loan, together with the monetary impact of each breach, the correlative provisions of loan documents giving rise to the breach, and the date of each breach. Some of the breaches were missed payments that were later made; many of the missed payments – including the maturity payment – were never made at all. Where a payment was eventually made, that, too, is indicated on the exhibit. *See* Demonstrative Exhibit, attached hereto as Exhibit B. This exhibit does *not* include the breaches of the loan documents for the first loan, since it is the second loan's security interest that is currently scheduled for foreclosure.

With more than three months having now elapsed since repayment of the loaned monies came due, and with more than a year having now elapsed since the beginning of the Plaintiff's string of defaults under the loan documents, the Plaintiff is asking for a temporary restraining order to enjoin WCP and DPCL from exercising their bargained-for rights under those documents. Or, stated otherwise, the Plaintiff endeavors to retain the monies loaned to it by WCP and DPCL, while also retaining the collateral it pledged as security for those loans. In the words of the former Municipal Court of Appeals for the District of Columbia, "[t]he plaintiff wishes to have his cake and eat it too." *Plant v. Plant*, 57 A.2d 204, 208 (D.C. 1948).

The Motion merits denial because (i) the Plaintiff cannot show a likelihood of success on the merits where the undisputed and objective record evidences myriad defaults under loan documents, including a failure to pay at maturity; (ii) the "irreparable harm" cited by the Plaintiff is nothing more than the exercise of a contractually bargained-for right; (iii) the Plaintiff has an adequate remedy at law, inasmuch as it is free to seek bankruptcy protection and invoke the automatic stay set forth in Section 362 of Title 11 of the United States Code; (iv) any balancing of equities necessarily weighs against the Plaintiff being able to retain WCP and DPCL's money while also retaining WCP and DPCL's collateral, more than three months after two loans have fully matured; and (v) public policy disfavors using this Honorable Court to disrupt the District of Columbia's long history of permitting non-judicial foreclosures of commercial assets.

For these reasons, and as extrapolated upon *infra*, the Defendants ask this Honorable Court to deny the relief sought in the Motion.

## II. Standard

The standard for a non-*ex parte* temporary restraining order is substantively comparable to that for a preliminary injunction. *See, e.g.*, *Council on Am.-Islamic Relations v. Gaubatz*, 667 F.

Supp. 2d 67, 74 (D.D.C. 2009) (noting the overlapping elements of the two forms of relief); *Campbell v. U. S.*, 295 A.2d 498, 501 (D.C. 1972) (noting federal rules may be used to offer guidance where similar to the rules of this Honorable Court).

Specifically, a four prong test controls any request for non-final injunctive relief, with a "sliding scale" governing the weight afforded each such criterion:

> "(1) likelihood of irreparable harm in the absence of a preliminary injunction; (2) likelihood of success on the merits in the underlying cause of action; (3) [whether] the "balance of injuries" favors granting an injunction; and (4) [whether] the public interest would be served by granting the injunctive relief sought."

*Ifill v. Dist. of Columbia*, 665 A.2d 185, 187–88 (D.C. 1995) (quoting *In re Antioch Univ*., 418 A.2d 105, 109 (D.C.1980)).

Importantly, "When seeking a preliminary injunction, the movant has the burden to show that all four factors, taken together, weigh in favor of the injunction." *Davis v. Pension Ben. Guar. Corp*., 571 F.3d 1288, 1292 (D.C. Cir. 2009) (citing *CFGC v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006)).

## III. Relevant Facts

The Defendants submit the following facts to be without genuine dispute and, where appropriate, to be evidenced by documents appended to the Motion or appended hereto:

1. On March 31, 2022, WCP loaned the Plaintiff the sum of $8,689,693 (the "First Loan"). *See* Commercial Deed of Trust Note, attached to Complaint (the "Complaint") as Exhibit B.

2. Of even date therewith, WCP loaned the Plaintiffs an additional sum of $1,256,000.00 (the "Second Loan"). *See* Commercial Deed of Trust Note, attached to Complaint as Exhibit D.

3. Both promissory notes stipulate that "[p]ayments of interest only shall be due and payable on the first day of each calendar month…" *See* Commercial Deed of Trust Note, attached to Complaint as Exhibit B, at § 3; *See* Commercial Deed of Trust Note, attached to Complaint as Exhibit D, at § 3.

4. The interest-only payment of $12,560.00, on the Second Loan, due on May 1, 2022, was not made until July 14, 2022 – some 74 days after the obligation came due. *See* Second Loan Payment History, attached hereto as Exhibit C.[3]

5. The interest-only payment of $12,978.67, on the Second Loan, due on June 1, 2022, was not made until July 14, 2022 – some 43 days after the obligation came due. *See* Second Loan Payment History, attached hereto as Exhibit C.

6. The interest-only payment of $12,560.00, on the Second Loan, due on July 1, 2022, was not made until July 14, 2022 – some 13 days after the obligation came due. *See* Second Loan Payment History, attached hereto as Exhibit C.

7. On November 17, 2022, the Plaintiff permitted a government lien to encumber the real property securing the loans (the "Property") by failing to pay fines and penalties to the District of Columbia Department of Buildings. *See* Lien Notice, attached hereto as Exhibit D.

8. The interest-only payment of $12,560.00, on the Second Loan, due on December 1, 2022, was not made until December 8, 2022 – some 7 days after the obligation came due. *See* Second Loan Payment History, attached hereto as Exhibit C.

[3] The exhibit has two pages. The first page is an excerpt of the pertinent portions of the payment history. The second page is the full payment history. This is done because of the size of the second page and resulting concerns about readability.

9. The interest-only payment of $44,846.67, on the First Loan, due on December 1, 2022, was not made until December 8, 2022 – some 7 days after the obligation came due. *See* First Loan Payment History, attached hereto as Exhibit E.[4]

10. The interest-only payment of $12,978.67, on the Second Loan, due on January 1, 2023, has never been made. *See* Second Loan Payment History, attached hereto as Exhibit C.

11. The interest-only payment of $46,341.56, on the First Loan, due on January 1, 2023, has never been made. *See* First Loan Payment History, attached hereto as Exhibit E.

12. The interest-only payment of $12,978.67, on the Second Loan, due on February 1, 2023, has never been made. *See* Second Loan Payment History, attached hereto as Exhibit C.

13. The interest-only payment of $46,341.56, on the First Loan, due on February 1, 2023, has never been made. *See* First Loan Payment History, attached hereto as Exhibit E.

14. The interest-only payment of $11,722.67, on the Second Loan, due on March 1, 2023, has never been made. *See* Second Loan Payment History, attached hereto as Exhibit C.

15. The interest-only payment of $41,856.89, on the First Loan, due on March 1, 2023, has never been made. *See* First Loan Payment History, attached hereto as Exhibit E.

16. Both loans matured on March 31, 2023. *See* Commercial Deed of Trust Note, attached to Complaint as Exhibit B; Commercial Deed of Trust Note, attached to Complaint as Exhibit D.

17. Neither loan was paid at maturity, nor have any payments been made thereon at any time in the almost seven months since maturity. *See* Payment History for Second Loan, attached hereto as Exhibit C; Payment History for First Loan, attached hereto as Exhibit E.

---

[4] See, *supra*, n. 3.

18. Both the First Loan and the Second Loan are secured by deeds of trust on the real property commonly known as 419-423 Kennedy Street, NW, Washington, DC 20011 (previously defined as the "Property"). *See* Deed of Trust, attached to Complaint as Exhibit A; Deed of Trust, attached to Complaint as Exhibit C.

19. Both deeds of trust require the Plaintiff to pay any "fine" or "penalty" in a timely manner, so as to ensure there is no accrual of statutory liens senior to those of WCP and DPCL:

> Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

*See* Deed of Trust, attached to Complaint as Exhibit A, at § 4.2; Deed of Trust, attached to Complaint as Exhibit C, at § 4.2.

20. Neither the promissory notes nor the deeds of trust require written notice of a default, nor of acceleration upon default, being commercial loan instruments governed by District of Columbia law. *See* Commercial Deed of Trust Note, attached to Complaint as Exhibit B, *passim*; Commercial Deed of Trust Note, attached to Complaint as Exhibit D, *passim*; Deed of Trust, attached to Complaint as Exhibit A, *passim*; Deed of Trust, attached to Complaint as Exhibit C, *passim*.

21. The promissory notes and deeds of trust expressly provide that WCP and DPCL may temporarily forbear from exercising remedies pursuant to a default of the Plaintiff, without waiving such remedies or the right to invoke such remedies. *See* Commercial Deed of Trust Note, attached to Complaint as Exhibit B, § 5; Commercial Deed of Trust Note, attached to Complaint

as Exhibit D, § 5; Deed of Trust, attached to Complaint as Exhibit A, § 11.4; Deed of Trust, attached to Complaint as Exhibit C, § 11.4.

## IV. Argument: The Motion Merits Rejection

### a. The Plaintiff is Not Likely to Succeed on the Merits

The thrust of the Plaintiff's claims in this case is that a failure to pay two promissory notes at maturity, preceded by multiple payment defaults thereunder and the imposition of a municipal lien on the collateral securing those loans, is not grounds to foreclose under standard commercial deeds of trust. This is *reductio ad absurdum*.

#### i. Breach of Contract

The Plaintiff's first claim (Count I) is for breach of contract. Notably, the Motion devotes only two sentences to this cause of action, observing (i) the elements of such a claim; and (ii) that "the Lender Defendants stopped funding constructions draws as promised for no valid reason…" Motion at § IV(B)(2). The threadbare nature of this assertion – in a filing where the Defendants agreed that the Plaintiff could exceed the ordinary page count – is notable.

The Plaintiff is correct about the governing elements for a breach of contract claim. *See* Motion at § IV(B)(2) (noting the elements to be "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; (4) damages caused by that breach.") (citing *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 186 (D.C. 2009)).

The first core problem with this claim, though, is that there is no such contract. The Complaint posits that "The WCP and WCP Fund's agreement to provide construction draws was memorialized on the HUD 1 Settlement Statement signed at closing." Complaint at ¶ 17. Yet a

review of the settlement statements reveals no such agreement. *See* Settlement Statements, attached hereto as Exhibit F.

Nor is this surprising. A HUD-1 Settlement Statement is a government-promulgated, standardized document that sets forth the flow of monies occurring at the time of a real estate closing. It is not a contract, as a matter of law. *See, e.g.*, *Regions Bank v. Commonwealth Land Title Ins. Co.*, 977 F. Supp. 2d 1237, 1265 (S.D. Fla. 2013) ("…a closing statement is not a contract…") (citing *Cornelius v. Fidelity Nat. Title Co.*, 2009 WL 596585, at *3 (W.D. Wash. 2009) *Kirby v. Bank of Am., N.A.*, 2012 WL 1067944, at *8 (S.D. Miss. 2012); *Jankanish v. First Am. Title Ins. Co.*, 2009 WL 779330, at *2 (W.D. Wash. 2009); *Deutsch Tane Waterman & Wurtzel, P.C. v. Hochberg*, 890 N.Y.S.2d 755, 757 (N.Y. App. Div. 2009)); *Koschene v. Hutchinson*, 2007 WL 6013037, at *2 (Va. Cir. 2007) ("…it is apparent to the Court that the HUD–1 is not a contract, but is really a statement as to how funds shall be distributed."); *Jankanish*, 2009 WL 779330, at *2 ("…the current settlement statements do not include terms and conditions, reflect no fee paid as consideration for a separate HUD–1 contract, and contain no contractual promise to perform (or refrain from performing) some act. The Court therefore finds that the HUD–1 statements are not contracts and dismisses count two.") (citing *Cornelius* at 5-6) (citing *DePhillips v. Zolt Constr. Co.*, 959 P.2d 1104 (Wash. 1998)); *Garland v. ServiceLink L.P.*, 2013 WL 5428716, at *1 (D. Md. 2013) ("Despite the arrangement, the Garlands do not allege to having signed a formal agreement, noting only that the terms were detailed in a HUD–1 Settlement Statement (the 'HUD–1 Statement'), which the Garlands concede is not a contract").

The Plaintiff also theorizes some agreement to fund constructions draws may have been set forth in a draw budget or a term sheet. Complaint at ¶ 19. Yet the Plaintiff has not appended these documents and, to the contrary, does not point to any provision of either document where

WCP, DPCL, or any other person or entity expressly agrees to fund construction draws. And it is thusly difficult to appreciate why the Plaintiff believes either of these documents could form a binding contract – especially in the context of two loans that are memorialized by formal promissory notes (neither of which so much as references a promise to fund construction draws) and deeds of trust (which are also wholly silent on the issue).

Though perhaps the biggest issue with this claim, in the prism of the Motion, is that it is a claim that – should the cause of action survive a motion to dismiss – would invite litigation of monetary damages. The "contract" allegedly breached, to the extent one can be surmised from the Complaint (with the Motion being topically silent), would be an agreement to fund construction – not an agreement to buy or sell real estate. And this would, accordingly, be an agreement for which solely monetary damages could be awarded.

Yet, under District of Columbia law, injunctive relief is not available for a claim that can be remedied through the award of a monetary payment. *See, e.g. Karriem v. Gray*, 623 A.2d 112, 115 (D.C. 1993) ("Because this harm could, conceivably, be cured by a monetary payment an injunction is not needed to avoid irreparable harm to appellant.") (citing *In re Antioch University*, 418 A.2d 105, 109–10 (D.C. 1980)).

To be sure, the Plaintiff does *not* seek a permanent injunction in connection with Count I of its Complaint, asking instead for solely-monetary damages. And this is thusly a claim that (i) is addressed in only two sentences of the Motion; (ii) that appears to be untethered to any legally-cognizable contract; and (iii) that cannot support injunctive relief.

**ii. Tortious Interference with Business Relations**

The heart of the claim for tortious interference with business relations (Count II) is that WCP and DPCL should not have declared the promissory notes to be in default on December 8,

2022, when the Plaintiff had already defaulted on the notes and their correlative deeds of trust at least six separate times. Rather, the Plaintiff posits, WCP and DPCL were obligated to refrain from noting the myriad defaults, so the Plaintiff could fraudulently represent to a new lender that its existing loan obligations were in good standing.

A claim for tortious interference with business relations requires a showing of "(1) existence of a valid contractual or other business relationship; (2) [the defendant's] knowledge of the relationship; (3) intentional interference with that relationship by [the defendant]; and (4) resulting damages." *Whitt v. Am. Prop. Constr., P.C.*, 157 A.3d 196, 202 (D.C. 2017) (quoting *Newmyer v. Sidwell Friends Sch.*, 128 A.3d 1023, 1038 (D.C. 2015) (quoting *Havilah Real Prop. Servs., LLC v. VLK, LLC*, 108 A.3d 334, 345–46 (D.C. 2015))).

Here, the Plaintiff has not shown that it had a valid contractual or other business relationship with anyone aside from WCP and DPCL. The Plaintiff claims to have been in the process of endeavoring to refinance its debt, but in a case where the Plaintiff has appended an extensive array of exhibits to nearly every filing, the record is notably devoid of a loan commitment letter from a third party lender. And while ultimately immaterial because of the Plaintiff's failure to make showings of other required elements, this prong ought not be overlooked. To the contrary, this is a case where the Plaintiff claims that there is significant equity in the Property, but that it suddenly became unable to procure a refinancing (despite that significant equity) in December 2022 because WCP and DPCL declared their loans to be in default. This assertion is, on many levels, not only counterintuitive but, indeed, plainly illogical. It seems far-fetched to surmise a lender walked away from refinancing an obligation secured by a healthy equity cushion, and it is altogether suspect that the Plaintiff has never mustered any evidence of this actually occurring.

Equally, the Plaintiff has not shown that WCP and DPCL did anything to intentionally interfere with any third party relationship. All the Plaintiff alleges is that WCP and DPCL sent default notices and payoff statements *to the Plaintiff*. There is no claim that any of the Defendants contacted another lender, libeled the Plaintiff, or undertook any actions whatsoever in connection with a third party. The Plaintiff's claim necessarily fails on account of this reality, as tortious interference mandates some action over and above merely communicating with the allegedly-aggrieved party itself.

Most importantly, though, the Plaintiff has not shown resulting damages. The Plaintiff defaulted – at least six times – under loan documents, leading WCP and DPCL to simply note the defaults and declare the loans to be in default. This does not invite any legally-cognizable form of damages; to the contrary, this is merely WCP and DPCL proceeding under contractually bargained-for loan documents, in accord with the express terms thereof. In fact, WCP and DPCL waited until at least four more defaults occurred – including a failure to pay both loans at maturity – before noticing a foreclosure, permitting the Plaintiff more than the bargained-for time period to seek new financing.

In short, the Plaintiff is alleging that WCP and DPCL exercising their contractual remedies, under valid loan documents, constitutes tortious interference. The innate failure of this contention – and the resulting absence of any probability of success on the merits – is self-evident.

**iii. Breach of the Duty of Good Faith and Fair Dealing**

The Plaintiff is similarly unlikely to prevail on its claim for breach of the implied covenant of good faith and fair dealing (Count III). Only a single paragraph is devoted to this claim in the Motion, and for good reason: the Plaintiff is arguing that a lender cannot foreclose, under a deed of trust, after a borrower breaches loan documents at least nine separate times, including a failure

to pay the loan at maturity. Such a holding would not only invite untold havoc upon the docket of this Honorable Court but would, too, do palpable violence to the commercial paper market writ large.

Familiarly, "… to establish a breach of the implied covenant of good faith and fair dealing in all three jurisdictions, the plaintiff must plead that (1) the defendant has taken steps, or refused to take steps, (2) which destroyed or injured the plaintiff's right to receive the fruits of the contract." *Magee v. Am. Inst. of Certified Pub. Accountants*, 245 F. Supp. 3d 106, 112 (D.D.C. 2017) (citing *Mero v. City Segway Tours of Wash. D.C., LLC*, 826 F.Supp.2d 100, 106 (D.D.C. 2011); *Williams v. Craft Dev., LLC*, 199 N.C.App. 500, 682 S.E.2d 719, 723 (2009); *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 107 Nev. 226, 808 P.2d 919, 923 (1991)).

Here, the Plaintiff was entitled to receive loaned monies from WCP and DPCL, pursuant to the terms of the loan documents. Those are the "fruits of the contract" insofar as the Plaintiff is concerned, and there is no dispute but that the Plaintiff received loaned monies. Rather, what the Plaintiff argues is that it is entitled, too, to retain the collateral it pledged as security – notwithstanding an avalanche of defaults and a failure to pay the notes at maturity – because the Plaintiff is not fond of the terms for which it bargained.

To be clear, the "fruits of the contract" are the monies paid to the Plaintiff. In fact, it is the repayment of those monies with interest – something the Plaintiff has failed to honor – that is the fruit of the contract for WCP and DPCL. And to the extent there is a claim for breach, in this instance, such a claim may be rightfully understood to belong to the Defendants – not the Plaintiff.

**iv. Breach of Fiduciary Duty**

The Plaintiff also theorizes that Mr. Drazin, a respected local attorney, has a conflict of interest and cannot serve as the trustee foreclosing the second deed of trust, since he is also counsel

to WCP and DPCL. In so doing, the Plaintiff not only ignores that the District of Columbia has a longstanding tradition of having creditors' attorneys act as trustees in connection with foreclosure proceeding but, too – and more importantly – that no actual breach of his fiduciary obligations has been alleged. The Plaintiff insists there is a conflict of interest, but does not – and cannot – point to a single action taken by Mr. Drazin that is not in precise conformity with his obligations as expressly set forth in the correlative deed of trust.

In his capacity as trustee, Mr. Drazin has (i) filed a Notice of Foreclosure Sale of Real Property or Condominium Unit, on the official form issued by the District of Columbia; (ii) caused that form to be served on all pertinent parties (including the Plaintiff and its counsel of record); (iii) scheduled a foreclosure auction; and (iv) made arrangements to have notice of that foreclosure auction advertised in the Washington Post. The notice is a matter of public record and was sent to the Plaintiff and its counsel; the time and date of the foreclosure are contained in the notice; the newspaper advertisements can be found online and in the pages of the region's most-read daily newspaper.

Further, Mr. Drazin's service as a trustee is largely ministerial in nature, being intentionally devoid of latitude to make decisions beyond the date/time of a foreclosure sale and where to publish advertisements for the sale. Under District of Columbia law:

> Trustees on deeds generally "have only those powers and duties imposed by the trust instrument itself, coupled with the applicable statute governing foreclosure sales in the District of Columbia." Trustees on deeds must exercise their powers "with religious fidelity to ethical principles." Where a trustee has conflicting interests, the trustee bears the burden of showing that it faithfully executed its duties.

*Evans v. First Mount Vernon, ILA*, 786 F. Supp. 2d 347, 356 (D.D.C. 2011) (quoting *In re Rothenberg*, 173 B.R. 4, 16 (Bankr. D.D.C. 1994) (citing *Perry v. Virginia Mortg. & Inv. Co.*, 412 A.2d 1194, 1197 (D.C.1980)); *S & G Inv. Inc. v. Home Fed. Sav. & Loan Ass'n*, 505 F.2d 370, 377

n. 21 (D.C. Cir. 1974); citing *Sheridan v. Perpetual Bldg. Ass'n*, 322 F.2d 418, 422 (D.C. Cir. 1963)). The obligations of a trustee under a deed of trust are, accordingly, quite limited in scope, consisting almost entirely of (a) properly giving notice of an auction, (b) carrying out that auction, and (c) then delivering a deed to the buyer. *Henok v. Chase Home Fin., LLC*, 915 F. Supp. 2d 162, 169 (D.D.C. 2013).

Stated otherwise, Mr. Drazin's duty as trustee is to (i) obey the plain language of the deed of trust under which he is foreclosing; and (ii) obey the dictates of District of Columbia law as they relate to foreclosures. This is a case where the underlying promissory note matured in March 2023 and has not been paid off; the deed of trust plainly provides for a foreclosure to occur in such an instance. And Mr. Drazin, as an experienced local attorney, is familiar with the laws governing how that procedure is to accordingly be executed.

To be sure, there is no contention in this case that the Plaintiff has not defaulted under the deed of trust. To the contrary, it is manifest the underlying loan matured without payment after a preceding series of independent defaults that include (i) the Plaintiff failing to make various payments in a timely fashion; (ii) the Plaintiff failing to make other payments altogether; and (iii) the Plaintiff allowing a municipal lien to accrue on the real estate. So Mr. Drazin proceeding with a foreclosure, under the deed of trust, is both ministerial in nature and uninformed by any pertinent information not held by others.

Equally, this is not a case where there is any allegation that Mr. Drazin has erred in his duties as trustee. To the contrary, it is facially apparent that he filed the correct form for a Notice of Foreclosure Sale of Real Property or Condominium Unit, that he gave proper notice thereof, that he has scheduled an auction, and that he has caused that auction to be advertised. He has, in

the words of the *Evans* Court, "faithfully executed [his] duties." And in so doing, he has most certainly not undertaken any actions that render him subject to suit herein.

**v. The Defaults are Not "Technical" and Do Give Rise to Foreclosure**

Remarkably, the Plaintiff describes the breaches giving rise to a default under the loan documents as being "technical" in nature, not inviting foreclosure. Motion at § IV(b)(7). The Plaintiff also alleges these violations to be "pretextual," *Id.* at § IV(b)(5), and that the violations have been cured, *Id.* at § IV(b)(7). The former assertion is belied by the undisputed record; the latter assertions are plainly counter-factual in nature.

To be sure, failing to pay a loan at maturity is not a "technical" breach of the promissory note or deed of trust. Indeed, it is difficult to fathom a more substantive breach. Equally, failing to make regular payments on time is not a "technical" violation. Nor is altogether failing to make interest payments, for multiple months (without ever paying those obligations, even tardily) a "technical" violation. And, similarly, allowing a senior to encumber a lender's collateral, because of the non-payment of a government fine, is most certainly not a "technical" breach of loan documents.

Vis a vis the alleged "cure" of these violations, it is undisputed that the loan balances remain unpaid, despite the notes having matured. Yes, *some* of the late payments were ultimately made on installment interest, but several were not. And perhaps the senior lien was ultimately retired (that seems less clear). Still, as this Honorable Court has previously observed, those breaches would be alone sufficient to invite foreclosure under the loan documents (which do not allow for cures to void defaults of these types); yet, to focus on those breaches is to miss the forest for the trees: the Plaintiff owes more than $8.5 million on account of loans that matured and were

not repaid upon maturity. And this has been true for more than three months, with the maturity having occurred toward the end of March 2023.[5]

### vi. The Late Fee is Enforceable

The Plaintiff next argues that a late fee bargained for in the promissory notes is not enforceable, on the basis that it is a forbade liquidated damages clause. Yet this contention is without legal support, as the District of Columbia expressly allows parties to contractually bargain for damages arising on account of contractual breaches.

The District of Columbia Court of Appeals has made clear that liquidated damages provisions of contracts are allowable in nature:

> "It is well-settled that parties to a contract may agree in advance to a sum certain to be forfeited as liquidated damages for breach of contract." This is because a liquidated damages clause serves "to simplify the resolution of a breach of contract dispute" by "giving the parties an opportunity to resolve the damages question without resorting to litigation" and by "fix[ing] the measure of damages at the outset before a breach even occurs."

*Proulx v. 1400 Pennsylvania Ave., SE, LLC*, 199 A.3d 667, 673 (D.C. 2019) (quoting *Burns v. Hanover Ins. Co.*, 454 A.2d 325, 237 (D.C. 1982); *Vicki Bagley Realty, Inc. v. Laufer*, 482 A.2d 359, 367 (D.C. 1984)).

The Plaintiff devotes but a single paragraph to this contention in its Motion (despite an agreement to exceed the page count ordinarily governing motions practice). This is problematic, inasmuch as the burden would be on the Plaintiff to establish that (i) the late fee in the loan documents is a penalty; (ii) the late fee is not reasonable compensation for a breach; and (iii) the

---

[5] The Motion also argues that an affiliate relationship does not invite a breach of the loan documents. Motion at § IV(b)(6). WCP and DPCL dispute this assertion and believe the relevant third party entities to be affiliates of the Plaintiff, but such is besides the point for purposes of the instant Motion. As noted *passim*, there are more than six separate breaches of the loan documents – not involving any affiliates – that punctuate the frivolity of the Plaintiff's claims.

late fee was unreasonable at the time the promissory notes were entered into. *Id.; Proulx v. 1400 Pennsylvania Ave., SE, LLC,* 199 A.3d 667, 673 (D.C. 2019). The Motion makes no such showing.

To the contrary, WCP and DPCL loaned millions of dollars, expecting those monies to be repaid in a year. It has now been nearly seven months since those debts came due and the loans remain unpaid, leaving the lenders without access to their capital. The Defendants never bargained for an indefinite loan and, to the contrary, WCP and DPCL are in the business of making short term loans and being able to then redeploy their capital accordingly. It is thusly altogether sensible that there is a late fee when payments are not timely made, and it is undisputed that the late fee was agreed to by the Plaintiff when the promissory notes were executed.

Indeed, in the words of the *Proulx* Court, "We have ... consistently adhered to a general rule that one who signs a contract has a duty to read it and is obligated according to its terms.... [A]bsent fraud or mistake, one who signs a contract is bound by a contract which [s]he has an opportunity to read whether [s]he does so or not." *Proulx*, 199 A.3d at 672 (quoting *Pyles v. HSBC Bank USA, N.A.*, 172 A.3d 903, 907 (D.C. 2017) (quoting *Pers Travel, Inc. v. Canal Square Assocs.*, 804 A.2d 1108, 1110 (D.C. 2002))).

**b. The Motion Does Not Demonstrate Irreparable Harm**

The Motion should also be denied because the Plaintiff cannot show irreparable harm. While a foreclosure would serve to alienate the Plaintiff's interest in the Property, the Plaintiff has an adequate remedy at law to forestall the foreclosure, inasmuch as the Plaintiff is free to seek bankruptcy protection and invoke the automatic stay set forth in Section 362 of Title 11 of the United States Code. This is the remedy normally invoked by commercial borrowers who face a foreclosure and do not wish to see it proceed; it is altogether unclear why the Plaintiff has not travelled this relatively simple and oft-invoked route.

Under well settled precedent, the existence of such a remedy precludes the entry of injunctive relief. *See, e.g.*, *Dist. of Columbia v. Wical Ltd. P'ship*, 630 A.2d 174, 185 n. 4 (D.C. 1993) ("Assuming without deciding that there is substance to this allegation, the existence of an adequate remedy at law precludes the entry of injunctive relief with respect to this claim as well."); *Dist. of Columbia v. N. Washington Neighbors, Inc.*, 367 A.2d 143, 144 (D.C. 1976) ("This case was earlier before us … where we reversed the trial court's decision to grant a preliminary injunction on the ground that the plaintiffs had an adequate remedy at law").

Here, the Motion makes clear that owning the subject property is the singular purpose of the Plaintiff's operations. Motion at § I. No tangential or other operations are alleged, nor does the Plaintiff purport to have any other assets or affairs. *Id.* Thusly, the Plaintiff could stay a foreclosure by filing a petition for bankruptcy relief. 11 U.S.C. § 362. The United States Bankruptcy Court for the District of Columbia regularly handles single asset real estate cases (as that term is used in Section 51B of Section 101 of Title 11 of the United States Code) and the bankruptcy process provides an express stay that permits foreclosures – and other collection actions – to be halted until such a time as bankruptcy courts are able to at least summarily adjudicate the merits, *vel non*, of any dispute concerning the existence of a contractual breach and/or the remedies accordingly rendered available.

To be sure, filing a petition for bankruptcy relief is a remedy at law, and a more-than-adequate one at that. It is telling the Plaintiff has not elected to follow this well-trodden path and has, instead, asked this Honorable Court to afford extraordinary relief notwithstanding the existence of an adequate legal remedy.

### c. Public Policy Does Not Support Imposition of an Injunction

Rare is the defaulted commercial debtor that does not – rather vehemently – wish to stave off foreclosure of its collateral. Yet to entertain such drastic relief would be to encourage all of the defaulted borrowers of this city – commercial and consumer alike – to file cases in this Honorable Court, to allege their respective defaults are not sufficiently severe to merit foreclosure, and to point to the loss of encumbered property as an irreparable harm. As noted *supra*, the longstanding alternative course of action is to permit such controversies to be handled by bankruptcy courts, which are nearly custom-tailored to address the idiosyncrasies of such disputes. To permit otherwise, and afford injunctive relief in a case where the Plaintiff tacitly acknowledges breaches of the deed of trust but insists such should be ignored, would be to open a floodgate of vexatious filings.

This is all the more true where, as here, the defaulting party is an entity without any other assets or operations. The Plaintiff has, quite literally, nothing to lose by bringing this suit and seeking injunctive relief; with no unencumbered assets to be reached, the Plaintiff is without fear of the monetary sanctions that ordinarily serve to deter frivolity, and without any other business operations, the Plaintiff is without any concern about reputational harm or denigration of goodwill. Literally every similarly situated real estate holding company facing foreclosure would be incentivized to file a similar action and seek a similar injunctive remedy, if such were readily available. And yet public policy clearly disfavors such, with the bankruptcy courts being the designated venues for adjudication of such matters and with this Honorable Court's docket already being weighed down by myriad other matters.

Case 24-10023-ELG Doc 1-1 Filed 11/18/24 Entered 11/18/24 08:52:13 Page 21 of 43
Exhibit A - All Docket Entries with All Docket Entries Page 1326 of 2207

**V. Argument: If an Injunction is Entered, the Plaintiff Should be Required to Post a Bond**

Finally, the Motion (including the proposed order appended thereto) conveniently misses that entry of injunctive relief is, as a matter of law, necessarily accompanied by the requirement that the petitioning party post appropriate security. *See, e.g.*, District of Columbia R. Civ. P. 65(c) ("The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained…"). In this case, the Plaintiff asks that the Defendants be enjoined from exercising rights against their collateral – while also not receiving any payments, whatsoever, on the monies they have loaned – for an indefinite period of time, as this litigation plays out. Such relief would, in turn, beget appreciable economic damage – especially since the Plaintiff acknowledges having no other assets from which to collect.

The total indebtedness *sub judice* is over $8.5 million. The debt is accruing interest at the rate of $4,828.13 per day. *See* Payoff Statements, attached to Motion as Exhibits K and L. And that represents the money WCP and/or DPCL would be able to make on their capital if they were not enjoined from taking contractually bargained for steps to recover that collateral. So it would be accordingly appropriate to set a bond herein at $1,762,267.45 – being one year of interest that will accrue while an injunction pends.

To be sure, litigation in this Honorable Court normally runs well in excess of a single year. And it may be reasonably surmised the bond will, accordingly, need to be revisited as the case progresses. But if the Plaintiff is to be permitted an injunction prohibiting WCP and DPCL from accessing their capital (an injunction that, as urged *supra*, ought not be granted in any event), a bond of one year's interest on that capital would seem the appropriate measure of security.

The Defendants are aware this number may seem palpably large. But so, too, are the ramifications injunction the Plaintiff seeks. The Plaintiff is not merely asking that a foreclosure be enjoined; the Plaintiff is – by extension – asking that WCP and DPCL be completely without access to their capital for however long this case may pend. That is an enormously expensive undertaking to ask of companies in the business of disbursing capital to the community, and the bond proposed (if an injunction is to be granted) is accordingly measured to reflect that damage. This is especially so since it is manifest, by the Plaintiff's own description of its affairs, that the Plaintiff will be wholly without monies or other assets to satisfy accruing damages should it fail to prevail in this action. Rule 65 clearly serves to ensure litigants not be afforded such an opportunity to proceed with an injunction to the financial peril of the parties against whom they seek relief.

## VI. Conclusion

WHEREFORE, the Defendants respectfully pray this Honorable Court (i) deny the Motion; (ii) alternatively, condition an injunction upon the posting of a bond in the amount of $1,762,267.45; and (iii) afford such other and further relief as may be just and proper.

Dated: July 20, 2023

Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
DC Bar #1034066
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Telephone: 301-444-4600
Facsimile: 301-444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for the Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing was served by the Court's electronic filing system this 20th day of July 2023, and a notice of filing should be served on all counsel of record.

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.

# Exhibit A

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**
**Judge-in-Chambers**

| | | |
|---|---|---|
| **423 KENNEDY ST. HOLDINGS** | : | |
| **Plaintiff** | : | **Case No. 2022 CAB 5903** |
| | : | **Judge-in-Chambers** |
| v. | : | |
| | : | **CLOSED CASE** |
| **DP CAPITAL, LLC, Et. Al.** | : | |
| **Defendant.** | : | |

**ORDER**

This case was set before the Court for a Temporary Restraining Order Hearing at 10:00 a.m. on the 6th day of February 2023. Counsel for Plaintiff and Defendants appeared before the Court today. Plaintiff seeks to enjoin Defendants from foreclosing on 423 Kennedy St. NW, Lot 56, Square 3260, Washington, DC. However, both Plaintiff and Defendant agree that no such foreclosure is pending or advertised. Plaintiff provided no other grounds to demonstrate imminent, irreparable harm. Additionally, the Court finds Defendant has acted in accordance with the terms of the contract.

Accordingly, the Court finds Plaintiff's injury to be too speculative and non-concrete. Plaintiff's current pleadings do not satisfy the elements for a temporary restraining order or a preliminary injunction as both forms of injunction require imminent, irreparable harm. Here, the harm is neither imminent nor irreparable. The Court reviewed Plaintiff's cited case law but found no viable reason to rule in any other way than as follows. The Court will deny Plaintiff's Motion for Temporary Restraining Order and vacate the upcoming Preliminary Injunction Hearing in this case. Plaintiff may refile when its injuries are both imminent and irreparable.

Wherefore, it is this 6th day of February 2023, hereby

**ORDERED**, that the above captioned case is **DISMISSED WITHOUT PREJUDICE.**

Zinora Mitchell-Rankin, Senior Judge
Sitting in Judge-in-Chambers

Copies to:

423 Kennedy St. Holdings
Plaintiff.
Via Odyssey

DP Capital LLC
WCP Fund
Daniel Huertas
Russell Drazin
Defendant
Via Odyssey

# Exhibit B

# 423 Kennedy St Holdings, LLC History of Loan Document Defaults
## $1,256,000.00 Loan from WCP Fund I LLC

**First Default**
$12,560.00 Interest Payment
Due: May 1, 2022
Paid: July 14, 2022
Payment Made 74 Days Late
*See* Promissory Note § 3;
Deed of Trust § 7.1

**Second Default**
$12,978.67 Interest Payment
Due: June 1, 2022
Paid: July 14, 2022
Payment Made 43 Days Late
*See* Promissory Note § 3;
Deed of Trust § 7.1

**Third Default**
$12,560.00 Interest Payment
Due: July 1, 2022
Paid: July 14, 2022
Payment Made 13 Days Late
*See* Promissory Note § 3;
Deed of Trust § 7.1

**Fourth Default**
$1,590.00 Lien Placed on Property
November 17, 2022
Lienor: DC Department of Buildings
Reason: “Failure to Pay Fines and Penalties”
Land Records Document #2022114185
*See* Deed of Trust §§ 1.0; 4.1; 4.2; 5.1; 7.2

**Fifth Default**
$12,560.00 Interest Payment
Due: December 1, 2022
Paid: December 8, 2022
Payment Made 7 Days Late
*See* Promissory Note § 3;
Deed of Trust § 7.1

**Sixth Default**
$12,978.67 Interest Payment
Due: January 1, 2023
Paid: n/a
Payment Never Made
*See* Promissory Note § 3;
Deed of Trust § 7.1

**Seventh Default**
$12,978.67 Interest Payment
Due: February 1, 2023
Paid: n/a
Payment Never Made
*See* Promissory Note § 3;
Deed of Trust § 7.1

**Eighth Default**
$11,722.67 Interest Payment
Due: March 1, 2023
Paid: n/a
Payment Never Made
*See* Promissory Note § 3;
Deed of Trust § 7.1

**Ninth Default**
Payment of Full Sum at Maturity
Due: March 31, 2023
Paid: n/a
Payment Never Made
Amount Now Due: $1,569,730.80
*See* Promissory Note § 3;
Deed of Trust § 7.1

# Exhibit C

| Name | Status Rea | Payment Due On | Days Past | Payment Paid On | Payment Method | Servicing Status | mount Due nterest | mount Due ate ee | mount Due De ault nterest |
|---|---|---|---|---|---|---|---|---|---|
| LPAY-113012 | Unpaid | 8/1/2023 | -13 | | | O | 12978 67 | 0 00 | 12978 67 |
| LPAY-111259 | Unpaid | 7/1/2023 | 18 | | | Defaulted | 12560 00 | 0 00 | 12560 00 |
| LPAY-109379 | Unpaid | 6/1/2023 | 48 | | | Defaulted | 12978 67 | 0 00 | 12978 67 |
| LPAY-108293 | Unpaid | 5/1/2023 | 79 | | | Defaulted | 12560 00 | 0 00 | 12560 00 |
| LPAY-106376 | Unpaid | 4/1/2023 | 109 | | | Defaulted | 12978 67 | 0 00 | 12978 67 |
| LPAY-104932 | Unpaid | 3/1/2023 | 140 | | | Defaulted | 11722 67 | 0 00 | 11722 67 |
| LPAY-103819 | Unpaid | 2/1/2023 | 168 | | | Defaulted | 12978 67 | 0 00 | 12978 67 |
| LPAY-102228 | Unpaid | 1/1/2023 | 199 | | | Defaulted | 12978 67 | 0 00 | 12978 67 |
| LPAY-100115 | Paid | 12/1/2022 | 230 | 12/8/2022 8:00 | Wire | Late (5-15 Days) | 12560 00 | 0 00 | 0 00 |
| LPAY-098554 | Paid | 11/1/2022 | 260 | 11/4/2022 14:05 | Stripe | Current | 12978 67 | 0 00 | 0 00 |
| LPAY-096476 | Paid | 10/1/2022 | 291 | 9/26/2022 8:00 | Wire | Current | 12560 00 | 0 00 | 0 00 |
| LPAY-093144 | Paid | 9/1/2022 | 321 | 9/1/2022 8:00 | ACH | Current | 12978 67 | 0 00 | 0 00 |
| LPAY-090203 | Paid | 8/1/2022 | 352 | 8/1/2022 8:00 | Wire | Current | 12978 67 | 0 00 | 0 00 |
| LPAY-087896 | Paid | 7/1/2022 | 383 | 7/14/2022 8:00 | Wire | Late (5-15 Days) | 12560 00 | 0 00 | 0 00 |
| LPAY-085179 | Paid | 6/1/2022 | 413 | 7/14/2022 8:00 | Wire | Delin uent (30-60 D | 12978 67 | 0 00 | 0 00 |
| LPAY-083482 | Paid | 5/1/2022 | 444 | 7/14/2022 8:00 | Wire | Delin uent (60-90 D | 12560 00 | 0 00 | 0 00 |
| LPAY-082525 | Paid | 3/31/2022 | 475 | 3/31/2022 0:00 | HUD | Originated | 418 67 | 0 00 | 0 00 |

Case 1:26-cv-03920-AHA Document 3-6 Filed 11/18/26 Page 31 of 43
Exhibit A - Aboss Together with All Docket Entries Page 1336 of 2207

| Name | Status Reason | Payment Due On | Days Past Due ( | Payment Paid On | Payment Method | Servicing Status | mount Due nterest | mount Due ate | mount Due De ault n | mount Due P | mount Due otal | mount Paid nterest | mount Paid nterest Pre aid | mount Paid ate ee | mount Paid De ault r | mount Paid F | mount Paid otal | eginning Princ | nding Princi a | Cumulative nt | na lied unc | Princi al Paydo | alance otal | Scheduled Payment Sta | alance no late |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LPAY-113012 | Unpaid | 8/1/2023 | -13 | | | O | 12978 67 | 0 00 | 12978 67 | | 25957 34 | 0 00 | 0 00 | 0 00 | 0 00 | 0 00 | 0 00 | | | | 0 00 | 0 00 | 25957 34 | Uns eduled | 25957 34 |
| LPAY-111259 | Unpaid | 7/1/2023 | 18 | | | Defaulted | 12560 00 | 0 00 | 12560 00 | | 25120 00 | 0 00 | 0 00 | 0 00 | 0 00 | 0 00 | 0 00 | | | | 0 00 | 0 00 | 25120 00 | Uns eduled | 25120 00 |
| LPAY-109379 | Unpaid | 6/1/2023 | 48 | | | Defaulted | 12978 67 | 0 00 | 12978 67 | | 25957 34 | 0 00 | 0 00 | 0 00 | 0 00 | 0 00 | 0 00 | | | | 0 00 | 0 00 | 25957 34 | Uns eduled | 25957 34 |
| LPAY-108293 | Unpaid | 5/1/2023 | 79 | | | Defaulted | 12560 00 | 0 00 | 12560 00 | | 25120 00 | 0 00 | 0 00 | 0 00 | 0 00 | 0 00 | 0 00 | | | | 0 00 | 0 00 | 25120 00 | Uns eduled | 25120 00 |
| LPAY-106376 | Unpaid | 4/1/2023 | 109 | | | Defaulted | 12978 67 | 0 00 | 12978 67 | | 25957 34 | 0 00 | 0 00 | 0 00 | 0 00 | 0 00 | 0 00 | | | | 0 00 | 0 00 | 25957 34 | Uns eduled | 25957 34 |
| LPAY-104932 | Unpaid | 3/1/2023 | 140 | | | Defaulted | 11722 67 | 0 00 | 11722 67 | | 23445 34 | 0 00 | 0 00 | 0 00 | 0 00 | 0 00 | 0 00 | | | | 0 00 | 0 00 | 23445 34 | Uns eduled | 23445 34 |
| LPAY-103819 | Unpaid | 2/1/2023 | 168 | | | Defaulted | 12978 67 | 0 00 | 12978 67 | | 25957 34 | 0 00 | 0 00 | 0 00 | 0 00 | 0 00 | 0 00 | | | | 0 00 | 0 00 | 25957 34 | Uns eduled | 25957 34 |
| LPAY-102228 | Unpaid | 1/1/2023 | 199 | | | Defaulted | 12978 67 | 0 00 | 12978 67 | | 25957 34 | 0 00 | 0 00 | 0 00 | 0 00 | 0 00 | 0 00 | | | | 0 00 | 0 00 | 25957 34 | Uns eduled | 25957 34 |
| LPAY-100115 | Paid | 12/1/2022 | 230 | 12/8/2022 8:00 | Wire | Late (5-15 Days) | 12560 00 | 0 00 | 0 00 | | 12560 00 | 12560 00 | 0 00 | 0 00 | 0 00 | 0 00 | 12560 00 | | | | 0 00 | 0 00 | 0 00 | Uns eduled | |
| LPAY-098554 | Paid | 11/1/2022 | 260 | 11/4/2022 14:05 | Stripe | Current | 12978 67 | 0 00 | 0 00 | | 12978 67 | 12978 67 | 0 00 | 0 00 | 0 00 | 0 00 | 12978 67 | | | | 0 00 | 0 00 | 0 00 | ACH - Cleared | |
| LPAY-096476 | Paid | 10/1/2022 | 291 | 9/26/2022 8:00 | Wire | Current | 12560 00 | 0 00 | 0 00 | | 12560 00 | 12560 00 | 0 00 | 0 00 | 0 00 | 0 00 | 12560 00 | | | | 0 00 | 0 00 | 0 00 | ACH - ailed | |
| LPAY-093144 | Paid | 9/1/2022 | 321 | 9/1/2022 8:00 | ACH | Current | 12978 67 | 0 00 | 0 00 | | 12978 67 | 12978 67 | 0 00 | 0 00 | 0 00 | 0 00 | 12978 67 | | | | 0 00 | 0 00 | 0 00 | Uns eduled | |
| LPAY-090203 | Paid | 8/1/2022 | 352 | 8/1/2022 8:00 | Wire | Current | 12978 67 | 0 00 | 0 00 | | 12978 67 | 12978 67 | 0 00 | 0 00 | 0 00 | 0 00 | 12978 67 | | | | 0 00 | 0 00 | 0 00 | Uns eduled | |
| LPAY-087896 | Paid | 7/1/2022 | 383 | 7/14/2022 8:00 | Wire | Late (5-15 Days) | 12560 00 | 0 00 | 0 00 | | 12560 00 | 12560 00 | 0 00 | 0 00 | 0 00 | 0 00 | 12560 00 | | | | 0 00 | 0 00 | 0 00 | Uns eduled | |
| LPAY-085179 | Paid | 6/1/2022 | 413 | 7/14/2022 8:00 | Wire | Delin uent (30-60 Days) | 12978 67 | 0 00 | 0 00 | | 12978 67 | 12978 67 | 0 00 | 0 00 | 0 00 | 0 00 | 12978 67 | | | | 0 00 | 0 00 | 0 00 | Uns eduled | |
| LPAY-083482 | Paid | 5/1/2022 | 444 | 7/14/2022 8:00 | Wire | Delin uent (60-90 Days) | 12560 00 | 0 00 | 0 00 | | 12560 00 | 12560 00 | 0 00 | 0 00 | 0 00 | 0 00 | 12560 00 | | | | 0 00 | 0 00 | 0 00 | Uns eduled | |
| LPAY-082525 | Paid | 3/31/2022 | 475 | 3/31/2022 0:00 | HUD | Originated | 418 67 | 0 00 | 0 00 | | 418 67 | 418 67 | 0 00 | 0 00 | 0 00 | 0 00 | 418 67 | | | | 0 00 | 0 00 | 0 00 | Uns eduled | |

# Exhibit D

Doc #: 2022114185
Filed & Recorded
11/17/2022 05:07 PM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS

DOB
DC DEPARTMENT OF BUILDINGS

**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
DC DEPARTMENT OF BUILDINGS
OFFICE OF CIVIL INFRACTIONS

# CERTIFICATE OF DELINQUENT FINES

FOR FAILURE TO PAY FINES AND PENALTIES ASSESSED PURSUANT TO THE CIVIL INFRACTIONS ACT OF 1985, AS AMENDED

DISTRICT OF COLUMBIA
vs.
423 KENNEDY ST HOLDINGS LLC
Owner of Record
1629 K ST NW STE 300
Washington, DC 20006

Date: 11/17/2022
Square: 3260 Suffix: Lot: 0056
NOI No. : VR22-00182
Address of Premises:
423 KENNEDY ST NW

**This Certificate is filed under the authority of and pursuant to Section 2-1802.03(i)(1) of the D.C. Code, which establishes a continuing lien upon the real property (including improvements) and personal property of an owner in the District of Columbia who fails to pay all outstanding fines, penalties or other costs associated with a final adjudication of a Notice of Infraction issued pursuant to the Civil Infractions Act of 1985, as amended.**

**This Certificate, from the date of its filing, has the force and effect, as against the aforesaid delinquent party or parties, of a lien created by a judgment granted by the Superior Court of the District of Columbia. This lien remains in force and effect until the entire assessed amount set forth below, together with penalties and other costs (including, but not limited to, court costs and administrative fees) are paid. Failure to pay the outstanding amount within ninety (90) days after the date to appeal the final decision and order, if no appeal has been filed, may result in the sale of the owner's property for costs at the next tax sale in the same manner and under the same conditions as property sold for delinquent general taxes.**

**Document No: 1**

**Assessed Amount: $1590.00**

By: [signature]

Elizabeth Harshaw
Office of Civil Infractions
DC Department of Buildings

# Exhibit E

| Name | Status Reason | Payment Due On | Payment Paid On | Payment Method | Servicing Status | mount Due nterest | mount Due ate ee | mount Due De ault nterest | mount Due otal |
|---|---|---|---|---|---|---|---|---|---|
| LPAY-113319 | Unpaid | 8/1/2023 | | | Defaulted | 46 341 56 | - | 77 373 39 | 123 714 95 |
| LPAY-111607 | Unpaid | 7/1/2023 | | | Defaulted | 44 846 67 | - | 74 877 47 | 119 724 14 |
| LPAY-109740 | Unpaid | 6/1/2023 | | | Defaulted | 46 341 56 | - | 77 373 39 | 123 714 95 |
| LPAY-108036 | Unpaid | 5/1/2023 | | | Defaulted | 44 846 67 | - | 74 877 47 | 119 724 14 |
| LPAY-106114 | Unpaid | 4/1/2023 | | | Defaulted | 46 341 56 | - | 77 373 39 | 123 714 95 |
| LPAY-104722 | Unpaid | 3/1/2023 | | | Defaulted | 41 856 89 | - | 69 885 64 | 111 742 53 |
| LPAY-103615 | Unpaid | 2/1/2023 | | | Defaulted | 46 341 56 | - | 77 373 39 | 123 714 95 |
| LPAY-102023 | Unpaid | 1/1/2023 | | | Defaulted | 46 341 56 | - | 77 373 39 | 123 714 95 |
| LPAY-100623 | Paid | 12/1/2022 | 12/8/2022 8:00 | Wire | Late (5-15 Days) | 44 846 67 | - | - | 44 846 67 |
| LPAY-098385 | Paid | 11/1/2022 | 11/1/2022 8:00 | ACH | Current | 46 166 18 | - | - | 46 166 18 |
| LPAY-096363 | Paid | 10/1/2022 | 10/1/2022 0:00 | Pre-Paid Interest | Current | 43 025 07 | - | - | 43 025 07 |
| LPAY-093110 | Paid | 9/1/2022 | 9/1/2022 0:00 | Pre-Paid Interest | Current | 42 427 02 | - | - | 42 427 02 |
| LPAY-090197 | Paid | 8/1/2022 | 8/1/2022 0:00 | Pre-Paid Interest | Current | 40 014 28 | - | - | 40 014 28 |
| LPAY-087965 | Paid | 7/1/2022 | 7/1/2022 0:00 | Pre-Paid Interest | Current | 37 151 17 | - | - | 37 151 17 |
| LPAY-085266 | Paid | 6/1/2022 | 6/1/2022 0:00 | Pre-Paid Interest | Current | 36 924 24 | - | - | 36 924 24 |
| LPAY-083485 | Paid | 5/1/2022 | 5/1/2022 0:00 | Pre-Paid Interest | Current | 31 628 07 | - | - | 31 628 07 |
| LPAY-080468 | Paid | 3/31/2022 | 3/31/2022 0:00 | HUD | Originated | 1 008 80 | - | - | 1 008 80 |

| Name | Status Reason | Payment Due On | Payment Paid On | Payment Method | Servicing Status | mount Due nterest | mount Due ate ee | mount Due De ault nterest | mount Due otal | mount Paid nterest | mount Paid nterest Pre aid | mount Paid ate ee | mount Paid De ault nterest | mount Paid Princi al | mount Paid otal | alance otal | alance no late ee |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LPAY-113319 | Unpaid | 8/1/2023 | | | Defaulted | 46 341 56 | - | 77 373 39 | 123 714 95 | - | - | - | - | - | - | 123 714 95 | 123 714 95 |
| LPAY-111607 | Unpaid | 7/1/2023 | | | Defaulted | 44 846 67 | - | 74 877 47 | 119 724 14 | - | - | - | - | - | - | 119 724 14 | 119 724 14 |
| LPAY-109740 | Unpaid | 6/1/2023 | | | Defaulted | 46 341 56 | - | 77 373 39 | 123 714 95 | - | - | - | - | - | - | 123 714 95 | 123 714 95 |
| LPAY-108036 | Unpaid | 5/1/2023 | | | Defaulted | 44 846 67 | - | 74 877 47 | 119 724 14 | - | - | - | - | - | - | 119 724 14 | 119 724 14 |
| LPAY-106114 | Unpaid | 4/1/2023 | | | Defaulted | 46 341 56 | - | 77 373 39 | 123 714 95 | - | - | - | - | - | - | 123 714 95 | 123 714 95 |
| LPAY-104722 | Unpaid | 3/1/2023 | | | Defaulted | 41 856 89 | - | 69 885 64 | 111 742 53 | - | - | - | - | - | - | 111 742 53 | 111 742 53 |
| LPAY-103615 | Unpaid | 2/1/2023 | | | Defaulted | 46 341 56 | - | 77 373 39 | 123 714 95 | - | - | - | - | - | - | 123 714 95 | 123 714 95 |
| LPAY-102023 | Unpaid | 1/1/2023 | | | Defaulted | 46 341 56 | - | 77 373 39 | 123 714 95 | - | - | - | - | - | - | 123 714 95 | 123 714 95 |
| LPAY-100623 | Paid | 12/1/2022 | 12/8/2022 8:00 | Wire | Late (5-15 Days) | 44 846 67 | - | - | 44 846 67 | 44 846 67 | - | - | - | - | 44 846 67 | - | |
| LPAY-098385 | Paid | 11/1/2022 | 11/1/2022 8:00 | ACH | Current | 46 166 18 | - | - | 46 166 18 | 30 573 03 | 15 593 15 | - | - | - | 46 166 18 | - | |
| LPAY-096363 | Paid | 10/1/2022 | 10/1/2022 0:00 | Pre-Paid Interest | Current | 43 025 07 | - | - | 43 025 07 | - | 43 025 07 | - | - | - | 43 025 07 | - | |
| LPAY-093110 | Paid | 9/1/2022 | 9/1/2022 0:00 | Pre-Paid Interest | Current | 42 427 02 | - | - | 42 427 02 | - | 42 427 02 | - | - | - | 42 427 02 | - | |
| LPAY-090197 | Paid | 8/1/2022 | 8/1/2022 0:00 | Pre-Paid Interest | Current | 40 014 28 | - | - | 40 014 28 | - | 40 014 28 | - | - | - | 40 014 28 | - | |
| LPAY-087965 | Paid | 7/1/2022 | 7/1/2022 0:00 | Pre-Paid Interest | Current | 37 151 17 | - | - | 37 151 17 | - | 37 151 17 | - | - | - | 37 151 17 | - | |
| LPAY-085266 | Paid | 6/1/2022 | 6/1/2022 0:00 | Pre-Paid Interest | Current | 36 924 24 | - | - | 36 924 24 | - | 36 924 24 | - | - | - | 36 924 24 | - | |
| LPAY-083485 | Paid | 5/1/2022 | 5/1/2022 0:00 | Pre-Paid Interest | Current | 31 628 07 | - | - | 31 628 07 | - | 31 628 07 | - | - | - | 31 628 07 | - | |
| LPAY-080468 | Paid | 3/31/2022 | 3/31/2022 0:00 | HUD | Originated | 1 008 80 | - | - | 1 008 80 | 1 008 80 | - | - | - | - | 1 008 80 | - | |

# Exhibit F

# A. Settlement Statement

U.S. Department of Housing and Urban Development

OMB Approval No. 2502-0265

| | | | |
|---|---|---|---|
| 1. ☐ FHA 2. ☐ RHS 3. ☐ Conv. Unins.<br>4. ☐ VA 5. ☐ Conv Ins. | 6. File No.<br>22-0210 | 7. Loan No. | 8. Mortgage Insurance Case No. |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| | | |
|---|---|---|
| D. Name & Address of Borrower:<br>423 Kennedy St Holdings LLC<br>1629 K Street Northwest<br>Washington, DC 20006 | E. Name & Address of Seller: | F. Name & Address of Lender:<br>WCP Fund I, LLC<br>2815 Hartland Road<br>Suite 200<br>Falls Church, VA 22043 |
| G. Property Location:<br>419-423 Kennedy Street, NW<br>Washington, DC 20011<br>3260-0000-0056 | H. Settlement Agent:<br>District Title<br><br>Place of Settlement:<br>1775 I Street Northwest #560 Washington, DC 20006 | I. Settlement Date:<br>03/31/2022<br>Funding Date:<br>03/31/2022<br>Disbursement Date:<br>03/31/2022 |

| | |
|---|---|
| **100. Gross Amount Due from Borrower** | |
| 101. Contract sales price | |
| 102. Personal property | |
| 103. Settlement charges to borrower (line 1400) | $5,319,912.45 |
| 104. Payoff to Washington Capital Partners | $4,546,765.88 |
| 105. | |
| **Adjustment for items paid by seller in advance** | |
| 106. City/Town Taxes | |
| 107. County Taxes | |
| 108. Assessments | |
| 109. | |
| 110. | |
| 111. | |
| 112. | |
| **120. Gross Amount Due from Borrower** | $9,866,678.33 |
| **200. Amount Paid by or in Behalf of Borrower** | |
| 201. Deposit | |
| 202. Principal amount of new loan(s) | $8,689,693.00 |
| 203. Existing loan(s) taken subject to | |
| 204. Transfer from 22-0210A | $1,176,985.33 |
| 205. | |
| 206. | |
| 207. | |
| 208. | |
| 209. | |
| **Adjustments for items unpaid by seller** | |
| 210. City/Town Taxes | |
| 211. County Taxes | |
| 212. Assessments | |
| 213. | |
| 214. | |
| 215. | |
| 216. | |
| 217. | |
| 218. | |
| 219. | |
| **220. Total Paid by/for Borrower** | $9,866,678.33 |
| **300. Cash at Settlement from/to Borrower** | |
| 301. Gross amount due from borrower (line 120) | $9,866,678.33 |
| 302. Less amounts paid by/for borrower (line 220) | $9,866,678.33 |
| 303. Cash ☐ From ☒ To Borrower | |

| | |
|---|---|
| **400. Gross Amount Due to Seller** | |
| 401. Contract sales price | |
| 402. Personal property | |
| 403. | |
| 404. | |
| 405. | |
| **Adjustment for items paid by seller in advance** | |
| 406. City/Town Taxes | |
| 407. County Taxes | |
| 408. Assessments | |
| 409. | |
| 410. | |
| 411. | |
| 412. | |
| **420. Gross Amount Due to Seller** | |
| **500. Reductions in Amount Due to Seller** | |
| 501. Excess deposit (see instructions) | |
| 502. Settlement charges to seller (line 1400) | |
| 503. Existing loan(s) taken subject to | |
| 504. Payoff of first mortgage loan | |
| 505. Payoff of second mortgage loan | |
| 506. | |
| 507. | |
| 508. | |
| 509. | |
| **Adjustments for items unpaid by seller** | |
| 510. City/Town Taxes | |
| 511. County Taxes | |
| 512. Assessments | |
| 513. | |
| 514. | |
| 515. | |
| 516. | |
| 517. | |
| 518. | |
| 519. | |
| **520. Total Reduction Amount Due Seller** | |
| **600. Cash at Settlement to/from Seller** | |
| 601. Gross amount due to seller (line 420) | |
| 602. Less reductions in amounts due seller (line 520) | |
| 603. Cash ☒ To ☐ From Seller | |

Section 5 of the Real Estate Settlement Procedures Act (RESPA) requires the following: • HUD must develop a Special Information Booklet to help persons borrowing money to finance the purchase of residential real estate to better understand the nature and costs of real estate settlement services; • Each lender must provide the booklet to all applicants from whom it receives or for whom it prepares a written application to borrow money to finance the purchase of residential real estate; • Lenders must prepare and distribute with the Booklet a Good Faith Estimate of the settlement costs that the borrower is likely to incur in connection with the settlement. These disclosures are mandatory.

Section 4(a) of RESPA mandates that HUD develop and prescribe this standard form to be used at the time of loan settlement to provide full disclosure of all charges imposed upon the borrower and seller. These are third party disclosures that are designed to provide the borrower with pertinent information during the settlement process in order to be a better shopper.

The Public Reporting Burden for this collection of information is estimated to average one hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number.

The information requested does not lend itself to confidentiality.

Certified True Copy

Case 1:26-cv-03920-AHA Document 4-25 Filed 11/18/26 Page 39 of 43
Exhibit A - Docket Entries Page 1314 of 2207

L. Settlement Charges

| | | |
|---|---|---|
| 700. [illegible] | | |
| Division of commission (line 700) as follows : | | |
| 701. $ | | |
| 702. $ | | |
| 703. Commission paid at settlement | | |
| 704. | | |
| 800. [illegible] | | |
| 801. Our origination charge payable to DP Capital, LLC | $217,242.33 | |
| 802. Your credit or charge (points) for the specific interest rate chosen | | |
| 803. Appraisal fee to CL Group LLC | $2,950.00 | |
| 804. Credit report | | |
| 805. Tax service | | |
| 806. Flood certification | | |
| 807. Construction Draw to WCP Fund I LLC | $4,650,000.00 | |
| 808. Loan Processing Fee to DP Capital LLC - POC by $1,000.00 | $2,000.00 | |
| 809. | | |
| 810. | | |
| 900. [illegible] | | |
| 901. Daily interest charges from 03/31/2022 to 04/01/2022 @ $1008.8000 /day | $1,008.80 | |
| 902. Mortgage insurance premium | | |
| 903. Homeowner's insurance to Chenault Insurance Services, LLC | $22,185.00 | |
| 904. Prepaid Interest to WCP Fund I LLC | $246,763.00 | |
| 1000. Reserves Deposited with Lender | | |
| 1001. Initial deposit for your escrow account | | |
| 1002. Homeowner's insurance | | |
| 1003. Mortgage insurance | | |
| 1004. Property taxes | | |
| 1005. | | |
| 1006. | | |
| 1007. Aggregate Adjustment $0.00 | | |
| 1100. Title Charges | | |
| 1101. Settlement or closing fee to District Title | | |
| 1102. Owner's title insurance to Fidelity National Title Insurance Company | | |
| 1103. Lender's title insurance to Fidelity National Title Insurance Company | $20,796.05 | |
| 1104. Lender's title policy limit $10,862,116.25 | | |
| 1105. Owner's title policy limit $ | | |
| 1106. Settlement Fee to District Title | $495.00 | |
| 1107. Title Commitment Fee to District Title | $738.56 | |
| 1108. Release Tracking Fee to Require | $38.49 | |
| 1109. E- Recording Fee to Simplifile | $5.02 | |
| 1110. Abstract Fee to Executive Abstracting Company | $160.00 | |
| 1111. Draw Fees 6 @ $100 to District Title | $600.00 | |
| 1112. CPL (Lender) to Fidelity National Title Insurance Company | $50.00 | |
| 1113. Notary Fees to Bancserv | $200.00 | |
| 1200. Government Recording and Transfer Charges | | |
| 1201. Recording fees: Deed $ Mortgage $156.50 Release $ to District of Columbia District Recording Office | $156.50 | |
| 1202. City/County tax/stamps Deed $ Mortgage $ | | |
| 1203. State tax/stamps Deed $0.00 Mortgage $116,250.00 to District of Columbia District Recording Office | $116,250.00 | |
| 1204. | | |
| 1300. Additional Settlement Charges | | |
| 1301. Property Taxes GT 04/01/2022 to DC Treasurer | $37,547.52 | |
| 1302. Special Assessment Due - A2200101 to DC Treasurer | $726.18 | |
| 1303. | | |
| 1304. | | |
| 1305. | | |
| 1306. | | |
| 1307. | | |
| 1308. | | |
| 1309. | | |
| 1400. Total Settlement Charges (enter on lines 103, Section J and 502, Section K) | $5,319,912.45 | |

**See signature addendum**

423 Kennedy St Holdings LLC, a District of Columbia Limited Liability Company

By: [signature] 3/31/2022 ______ Date

By: Mel Melaku Negussie, Manager ______ Date

The HUD-1 settlement statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement

[signature] ______ 3/31/2022

Settlement Agent ______ Date

## A. Settlement Statement

U.S. Department of Housing and Urban Development — OMB Approval No. 2502-0265

| | | | |
|---|---|---|---|
| 1. ☐ FHA 2. ☐ RHS 3. ☐ Conv. Unins. 4. ☐ VA 5. ☐ Conv Ins. | 6. File No. 22-0210-A | 7. Loan No. | 8. Mortgage Insurance Case No. |

C. Note: This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked "(p.o.c.)" were paid outside the closing; they are shown here for informational purposes and are not included in the totals.

| | | |
|---|---|---|
| D. Name & Address of Borrower: 423 Kennedy St Holdings LLC, 1629 K Street Northwest, Washington, DC 20006 | E. Name & Address of Seller: | F. Name & Address of Lender: WCP Fund I, LLC, 2815 Hartland Road, Suite 200, Falls Church, VA 22043 |
| G. Property Location: 419-423 Kennedy Street, NW, Washington, DC 20011, 3260-0000-0056 | H. Settlement Agent: District Title<br>Place of Settlement: 1775 I Street Northwest #560 Washington, DC 20006 | I. Settlement Date: 03/31/2022<br>Funding Date: 03/31/2022<br>Disbursement Date: 03/31/2022 |

| | |
|---|---|
| **100. Gross Amount Due from Borrower** | |
| 101. Contract sales price | |
| 102. Personal property | |
| 103. Settlement charges to borrower (line 1400) | $79,014.67 |
| 104. Transfer to 22-0210 | $1,176,985.33 |
| 105. | |
| **Adjustment for items paid by seller in advance** | |
| 106. City/Town Taxes | |
| 107. County Taxes | |
| 108. Assessments | |
| 109. | |
| 110. | |
| 111. | |
| 112. | |
| **120. Gross Amount Due from Borrower** | $1,256,000.00 |
| **200. Amount Paid by or in Behalf of Borrower** | |
| 201. Deposit | |
| 202. Principal amount of new loan(s) | $1,256,000.00 |
| 203. Existing loan(s) taken subject to | |
| 204. | |
| 205. | |
| 206. | |
| 207. | |
| 208. | |
| 209. | |
| **Adjustments for items unpaid by seller** | |
| 210. City/Town Taxes | |
| 211. County Taxes | |
| 212. Assessments | |
| 213. | |
| 214. | |
| 215. | |
| 216. | |
| 217. | |
| 218. | |
| 219. | |
| **220. Total Paid by/for Borrower** | $1,256,000.00 |
| **300. Cash at Settlement from/to Borrower** | |
| 301. Gross amount due from borrower (line 120) | $1,256,000.00 |
| 302. Less amounts paid by/for borrower (line 220) | $1,256,000.00 |
| 303. Cash ☐ From ☒ To Borrower | |

| | |
|---|---|
| **400. Gross Amount Due to Seller** | |
| 401. Contract sales price | |
| 402. Personal property | |
| 403. | |
| 404. | |
| 405. | |
| **Adjustment for items paid by seller in advance** | |
| 406. City/Town Taxes | |
| 407. County Taxes | |
| 408. Assessments | |
| 409. | |
| 410. | |
| 411. | |
| 412. | |
| **420. Gross Amount Due to Seller** | |
| **500. Reductions In Amount Due to Seller** | |
| 501. Excess deposit (see instructions) | |
| 502. Settlement charges to seller (line 1400) | |
| 503. Existing loan(s) taken subject to | |
| 504. Payoff of first mortgage loan | |
| 505. Payoff of second mortgage loan | |
| 506. | |
| 507. | |
| 508. | |
| 509. | |
| **Adjustments for items unpaid by seller** | |
| 510. City/Town Taxes | |
| 511. County Taxes | |
| 512. Assessments | |
| 513. | |
| 514. | |
| 515. | |
| 516. | |
| 517. | |
| 518. | |
| 519. | |
| **520. Total Reduction Amount Due Seller** | |
| **600. Cash at Settlement to/from Seller** | |
| 601. Gross amount due to seller (line 420) | |
| 602. Less reductions in amounts due seller (line 520) | |
| 603. Cash ☒ To ☐ From Seller | |

Section 5 of the Real Estate Settlement Procedures Act (RESPA) requires the following: • HUD must develop a Special Information Booklet to help persons borrowing money to finance the purchase of residential real estate to better understand the nature and costs of real estate settlement services; • Each lender must provide the booklet to all applicants from whom it receives or for whom it prepares a written application to borrow money to finance the purchase of residential real estate; • Lenders must prepare and distribute with the Booklet a Good Faith Estimate of the settlement costs that the borrower is likely to incur in connection with the settlement. These disclosures are mandatory.

Section 4(a) of RESPA mandates that HUD develop and prescribe this standard form to be used at the time of loan settlement to provide full disclosure of all charges imposed upon the borrower and seller. These are third party disclosures that are designed to provide the borrower with pertinent information during the settlement process in order to be a better shopper.

The Public Reporting Burden for this collection of information is estimated to average one hour per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information.

This agency may not collect this information, and you are not required to complete this form, unless it displays a currently valid OMB control number.

The information requested does not lend itself to confidentiality.

Certified True Copy

Case [illegible] Document [illegible] Filed 11/18/24 Page 42 of 43
Exhibit A - All Docket Entries [illegible] Page 1347 of 2207

| | | |
|---|---|---|
| Division of commission (line 700) as follows : | | |
| 701. $ | | |
| 702. $ | | |
| 703. Commission paid at settlement | | |
| 704. | | |
| 801. Our origination charge to DP Capital, LLC (3.5%) | $43,960.00 | |
| 802. Your credit or charge (points) for the specific interest rate chosen | | |
| 803. Appraisal fee | | |
| 804. Credit report | | |
| 805. Tax service | | |
| 806. Flood certification | | |
| 807. Processing Fee to DP Capital LLC | $1,250.00 | |
| 808. | | |
| 809. | | |
| 810. | | |
| 901. Daily interest charges from 03/31/2022 to 04/01/2022 @ $418.6667 /day | $418.67 | |
| 902. Mortgage insurance premium | | |
| 903. Homeowner's Insurance | | |
| 904. | | |
| 1001. Initial deposit for your escrow account | | |
| 1002. Homeowner's insurance | | |
| 1003. Mortgage insurance | | |
| 1004. Property taxes | | |
| 1005. | | |
| 1006. | | |
| 1007. Aggregate Adjustment $0.00 | | |
| 1101. Settlement or closing fee to District Title | | |
| 1102. Owner's title insurance to Fidelity National Title Insurance Company | | |
| 1103. Lender's title insurance to Fidelity National Title Insurance Company | $1,334.50 | |
| 1104. Lender's title policy limit $1,570,000.00 | | |
| 1105. Owner's title policy limit $ | | |
| 1106. Settement Fee to District Title | $495.00 | |
| 1107. | | |
| 1108. | | |
| 1201. Recording fees: Deed $ Mortgage $156.50 Release $ to District of Columbia District Recording Office | $156.50 | |
| 1202. City/County tax/stamps Deed $ Mortgage $ | | |
| 1203. State tax/stamps Deed $ Mortgage $31,400.00 to District of Columbia District Recording Office | $31,400.00 | |
| 1204. | | |
| 1301. Property Taxes to DC Treasurer - POC by borrower $34263.90 | | |
| 1302. | | |
| 1303. | | |
| 1304. | | |
| 1305. | | |
| 1306. | | |
| 1307. | | |
| 1308. | | |
| 1309. | | |
| 1400. Total Settlement Charges (enter on lines 103 Section J and 502 Section K | $79,014.67 | |

**See signature addendum**

[redacted]

423 Kennedy St Holdings LLC, a District of Columbia Limited Liability Company

By: ______________________ 3/31/2022 ______________________ Date

By: Mel Melaku Negussie, Manager Date

The HUD-1 settlement statement which I have prepared is a true and accurate account of this transaction. I have caused or will cause the funds to be disbursed in accordance with this statement

______________________ 3/31/2022

Settlement Agent Date