eFiled
12/23/2022 4:48:06 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| DEVELOPER RE1 LLC,<br>1629 K Street, N.W, Suite 300<br>Washington, DC 20006<br><br>*Plaintiff*,<br><br>v.<br><br>DP CAPITAL, LLC D/B/A WASHINGTON CAPITAL PARTNERS, ET AL.,<br><br>*Defendants*. | Case No. 2022 CAB 005935<br>Judge Ebony Scott |

# PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

The Plaintiff, Developer RE1 LLC ("Developer RE1") by counsel, hereby requests that the Court enter a Temporary Restraining Order enjoining all of the Defendants in this case from exercising any remedy that they have under certain loan documents, including the remedy of foreclosure, to preserve the status quo and to prevent irreparable harm to Developer RE1. The Defendants have engaged in an improper scheme to try to extort money from Developer RE1 (and others), to prevent Developer RE1 from obtaining a refinancing loan, and to foreclose on valuable real property without any valid basis.

## I. FACTUAL BACKGROUND

### A. Developer RE1 and the Property

Developer RE1 is a domestic, sole purpose, limited liability company that owns real property known as 5501 1st Street, N.W., Lot 138, Square 3389 (the "Property"). Compl. ¶ 9. The sole purpose of Developer RE1 is to own and develop the Property. *Id.* ¶ 11. Developer RE1 is partially owned by Mel Negussie. *Id.* ¶ 10.



GDL Documents\4887-8420-9222.v1-12/23/22

B. The Defendants and Their Roles

There are four defendants in this case. DP Capital, LLC ("DP Capital"), is a Virginia company that uses the trade name "Washington Capital Partners". *Id.* ¶ 2. For convenience, this motion refers to DP Capital, LLC d/b/a Washington Capital Partners as "WCP". The WCP Fund I, LLC ("WCP Fund"), is a Delaware company that engages in a lending business in the District. *Id.* ¶ 3. Daniel Huertas ("Mr. Huertas") is an individual that resides in Virginia. *Id.* ¶ 5. Mr. Huertas controls WCP, and WCP controls the WCP Fund. *Id.* ¶¶ 4-5. Russell Drazin ("Mr. Drazin"), is an individual and counsel to the WCP and the WCP Fund. *Id.* ¶ 6. Mr. Drazin is also the Trustee under two deeds of trust that he drafted. *Id.*

C. The Loan Documents

On December 23, 2021, the WCP helped facilitate Developer RE1 in obtaining an acquisition finance loan for the Property, which original loan was later refinanced. *Id.* ¶¶ 13-14. As part of that refinancing, Developer RE1 signed the following documents:

- a Deed of Trust (the 'First DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee;
- a Commercial Deed of Trust Note (the "First Note") in the amount of $3,579,000.00, as "Borrower", in favor of the WCP Fund.
- a second, additional Deed of Trust ("Second DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee.
- a second Commercial Deed of Trust Note (the "Second Note") in the amount of $524,000.00, as "Borrower".

*Id.* ¶¶ 14, 17, 20, and 23. True copies of the First DOT, the First Note, the Second DOT, and the Second Note were attached to the Complaint and are attached to this motion as Exhibits A, B, C, and D, respectively. These documents are sometimes referred to together as the "loan documents". The loan documents were for documents prepared by Mr. Drazin that Developer RE1 was not allowed to modify. *Id.* ¶¶ 15-16, 18-19, 21-22, and 24-25. The loan documents

provided security for the construction financing loans that Developer RE1 needed to develop the Property.

D. Mr. Huertas Threatens to Make Trouble for Developer RE1 Unless Developer RE1 Accedes to His Demands Regarding Another, Unrelated Development.

As of November 3, 2022, Developer RE1 had paid all amounts due to the WCP Fund under the First and Second Note. *Id.* ¶ 29. On November 3, 2022, Mr. Huertas sent an email to Developer RE1 (via Mr. Negussie) to inquire about the status of the payoff of both loans by Developer RE1. *Id.* ¶ 30. Mr. Huertas wrote that: "we [WCP and the WCP Fund] will not be working with you after the maturity of 5505." *Id.* A copy of the November 3, 2022 correspondence was attached to the Complaint and is attached as Exhibit E. On November 15, 2022, Mr. Huertas sent another email to Developer RE1 (via Mr. Negussie) "following up on the refinance progress on both projects." *Id.* ¶ 31. A true copy of the November 15, 2022 email was attached to the Complaint and is attached as Exhibit F.

E. The WCP/WCP Fund Send Multiple Payoff Statements Without Making Any Claim of "Default" Under Any of the Loan Documents

By as early as November 15, 2022, the Defendants knew that Developer RE1 had secured alternative financing for the Property with another lender named Main Street Bank, and that Developer RE1 expected to close on the new refinancing loans in December of 2022. *Id.* ¶ 33. A true copy of a November 17, 2022 email sent by Mr. Huertas was attached to the Complaint and is attached as Exhibit G. As of November 30, 2022, there was no allegation made by any Defendant that any default by Developer RE1 existed either the First Note, the Second Note, the First DOT, or the Second DOT. *Id.* ¶ 34.

On November 30, 2022, Developer RE1 made a request by email to WCP for the payoff figures for both loans for the Property. *Id.* ¶ 35. A copy of the November 30, 2022 email sent by Developer RE1 to WCP was attached to the Complaint and is attached as Exhibit H. That same

day (November 30, 2022) Developer RE1 requested, and WCP agreed, to provide the payoff figures for both loans as of December 23, 2022. *Id.* ¶ 36. A copy of the second November 30, 2022 email exchange between Developer RE1 and WCP was attached to the Complaint and is attached as Exhibit I.

On or about December 1, 2022, Mr. Negussie contacted Mr. Huertas to inquire with WCP about whether the WCP/WCP Fund would agree to extend the maturity date for the First Note and the Second Note for six to twelve months. *Id.* ¶ 37. Mr. Huertas replied that the only way an extension of the maturity date would be granted would be if Developer RE1 paid down the First Note and the Second Note by $1 million to $1.5 million (in principal). *Id.* On or about December 6, 2022, Mr. Negussie contacted Mr. Huertas again to inquire whether WCP will be willing to extend the maturity date for the First Note and the Second Note loans for six to twelve months if Developer RE1 paid down the notes by $500,000 to $750,000. *Id.* ¶ 38. Mr. Huertas reiterated that, at a minimum, the notes needed to be paid down by $1 million. *Id.* Mr. Negussie then told Mr. Huertas that he would try to raise that amount ($1 million) from additional investors. *Id.* As of December 8, 2022 there was still no claim made that any default be Developer RE1 existed under any of the loan documents. *Id.* ¶ 39.

F. <u>Mr. Huertas Then Demands that Either Developer RE1 or Mr. Negussie Resolve Another Debt Owed to the WCP for Another, Unrelated Project, "Or Else".</u>

By December 8, 2022, Developer RE1 had made all payments due under the Notes ($332,319.03 in interest payments). *Id.* ¶ 40. That day, Mr. Huertas told Developer RE1 that the Defendants and an unnamed investor were displeased with how the development of another, unrelated property (located at 2507 I Street, NW) had turned out. *Id.* ¶ 41. For convenience, the unrelated development project will be referred to as the "2507 I Street Project". During that call, Mr. Huertas told Mr. Negussie that WCP was "withdrawing the payoff



GDL Documents\4887-8420-9222.v1-12/23/22

statements recently issued and that he was defaulting all loans that Mr. Negussie was associated with at WCP, including Developer RE1." *Id.* ¶ 42. Mr. Huertas further stated that the 2507 I Street Project has "turned out very bad and that the person who lent the money to WCP ("Investor Lender") to provide the loan to 2507 I St Holdings LLC, is 'pissed off' with the quality of the work done". *Id.* Mr. Huertas further stated that the Investor Lender "is very wealthy and will make life hard for you", and "has now bought the notes" on 423 Kennedy and another project financed by WCP, and that WCP is "defaulting the loans." *Id.* Mr. Huertas also said: "why don't you do the honorable thing and have your investors buy 2507 I St to make things right" or have them "take care of the $700,000" shortfall on that project." *Id.* Mr. Huertas also said that if Mr. Negussie did not "do the right thing" by arranging for the $700,000 shortfall (on the 2507 I Street Project) to be paid, then the Defendants and the unnamed investor "would make trouble for you on all of your other projects". *Id.* ¶ 43.

Mr. Negussie told Mr. Huertas that his threats to cause trouble to either Mr. Negussie or to any development projects were improper. *Id.* ¶ 44. After Mr. Negussie refused to accede to Mr. Huertas' threats related to the 2507 I Street Project, Mr. Huertas told Mr. Negussie that all prior Payoff Statements that were sent "were withdrawn" and that he would place Developer RE1 and the borrower on another, unrelated project named 423 Kennedy St Holdings, LLC ("423 Kennedy") in default under their loan documents. *Id.* ¶ 45.[1]

The Defendants knew that Developer RE1 was not involved in the 2507 I Street Project, that there is no legal or other business relationship between Developer RE1 and either the developer for the 2507 I Street Project or 423 Kennedy, and that 423 Kennedy was a sole

[1] 423 Kennedy has filed a similar lawsuit against the Defendants. *See 423 Kennedy St Holdings LLC v. DP Capital, LLC d/b/a Washington Capital Partners et al.*, 2022-CAB-005903 (D.C. Super. Ct.).

purpose entity involved with a development project at 5501 1st Street, NW. *Id.* ¶¶ 46-50, and 52-57. Mr. Huertas provided no basis for why or how the Defendants could put Developer RE1 in default under the loan documents. *Id.* ¶ 51.

G. Mr. Huertas Follows Up on His Unethical, Improper Threats to Developer RE1 By Improperly Demanding Payment of $727,598.67 in "Default Penalties" and "Default Interest" and By Threatening Developer RE1 With Foreclosure.

Later that day (December 8, 2022), Mr. Huertas followed through with his threats to "make trouble" for Mr. Negussie, 423 Kennedy and Developer RE1 by arranging for Leslie Calderas to send two letters, each called a "Notice of Default" to Mr. Negussie by email. *Id.* ¶ 58. A true copy of each "Notice of Default" was attached to the Complaint and are attached as Exhibits J, K, and L. Each "Notice of Default" was unsigned and failed to include either a description of the alleged "default" or a referenced "copy of the first page of the Deed of Trust as Exhibit A". *Id.* ¶¶ 60-61. Email is also not listed as a permissible means to send a default notice. *Id.* ¶¶ 64-65; Ex. A (First DOT) at pages 17-18 and Compl. Ex. C (Second DOT) at pages 17-18.

With the December 8, 2022 email, the WCP included two Payoff Statements for Developer RE1. *Id.* ¶ 66. A true copy of the two Payoff Statement that were included with that email were attached to the Complaint and are attached to as Exhibits M and N. *Id.* ¶¶ 66-68. The Payoff Statement for the first loan included a demand that Developer RE1 pay $276,776.00 in "Default Interest" and a "Default Penalty" of $357,900.00, while the Payoff Statement for the second loan including a demand that Developer RE1 pay $40,522.67 in "Default Interest" and $52,400.00 for a "Default Penalty". *Id.*

H. Mr. Huertas "Lawyers Up" and Asks Mr. Drazin to Come Up with A Cover Story

Mr. Negussie immediately called Mr. Huertas to ask him the basis for the "default" claims. *Id.* ¶ 69. Mr. Huertas refused to disclose that basis and told Mr. Negussie that



GDL Documents\4887-8420-9222.v1-12/23/22

he had to contact the WCP's counsel. *Id*. Developer RE1 believes that Mr. Huertas then instructed Mr. Drazin to review every provision of the loan documents to try to find a reason to justify the decision to declare that Developer RE1 was in "default". *Id*. ¶¶ 70-71. Developer RE1 also believes that Mr. Huertas directed Mr. Drazin to come up with the cover story to conceal the fact that there was no valid basis for declaring Developer RE1 to be in default and to conceal the real reason why Developer RE1 was improperly placed in default -- because the Defendants were angry about the 2507 I Street Project. *Id.* ¶¶ 71-72.

The First and Second DOT state that Mr. Drazin, as Trustee, could collect a "commission" of 2.50% of the "total amount then due", and a another "commission" of 5.00% of the proceeds of a foreclosure sale, so there is a financial incentive for him to inflate the amounts that are claimed to be due. *Id.* ¶¶ 73-74. The Defendants knew that by improperly alleging that Developer RE1 was in default under the loan documents, and by adding $727,598.77 in "Default Interest" and "Default Penalt[ies]", Developer RE1 would not be able to go to closing on the refinance loan. *Id.* ¶¶ 75-77. The Defendants deliberately interfered with the refinancing loan to prevent Developer RE1 from being able to go to closing. *Id.* ¶ 77. The Defendants also sent a "Notice of Default" to improperly pressure either 423 Kennedy, Developer RE1, and/or Mr. Negussie to pay someone else's debt (*i.e.,* for the 2507 I Street Project). *Id* ¶ 78. The Defendants also knew that they had no right to demand that someone else either correct, or pay for, any problems at the 2507 I Street Project. *Id.* ¶ 79. The Defendants are trying to inflict damages upon Developer RE1, and their misconduct is a form of extortion. *Id*. ¶ 80.



GDL Documents\4887-8420-9222.v1-12/23/22

I. The Cover Story Does Not Survive Scrutiny Under the Terms of the First DOT and the Second DOT

After being asked by counsel for Developer RE1 to provide a basis for the "default" claims, Mr. Drazin sent the cover story that Mr. Huertas had asked for. In a reply email, Mr. Drazin claimed that Developer RE1 was in "default" because:

- "There is a massive Water/Sewer balance due and owing to DC Water ($44,857.93). DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397). The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW";
- The "Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022. DEVELOPER RE1 LLC did not timely pay those Taxes. Payment was not made until October 16 and 19, 2022.";
- Developer RE1 was not entitled to any notice of any default;
- there was "<u>no right to cure</u>", "<u>no right to deceleration</u>", <u>no right to reinstatement</u>, and that the '<u>Loans are in default and are accelerated</u>."; and that
- "Section 7.9 of the Deeds of Trust states that any default or breach of any loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default".

A true copy of Mr. Drazin's email was attached to the Complaint and is attached as Exhibit O (italics and underlined emphasis in original). *Id.* ¶ 81. For convenience, the alleged DC Water Debt will be referred to as the "DC Water Alleged Debt Claim" and the second property tax payment claim will be referred to as "Property Tax Late Payment Claim." *Id.* ¶ 82

Developer RE1 first learned that there may be outstanding DC Water invoices on or about August 31, 2022, because DC Water was sending the invoices for the Property to the wrong address. *Id.* ¶ 83. The dates of the DC Water invoices were 02/23/22, 03/18/22, 04/19/22, 05/18/22 and 06/16/22 (the "Disputed Invoices"). *Id.* Upon learning of the Disputed Invoices, Developer RE1 promptly contacted DC Water and disputed the amounts that DC Water

claimed was due. *Id.* On September 22, 2022, DC Water stated in an email that "the dispute deadline date for these charges has expired" and that "[b]ills must be paid or disputed by their respective due dates." *Id.* ¶ 84. Because Developer RE1 did not receive an invoice until on or about August 31, 2022, DC Water claimed that the deadline to dispute any of the Disputed Invoices had already expired by about sixty days. *Id.* That same day, Developer RE1 submitted (by email) a Petition for Administrative Hearing to contest the Disputed Invoices. *Id.* ¶ 85. Developer RE1 is currently waiting for an administrative hearing to be scheduled. *Id.* A true copy of the September 22, 2022 email and the Petition for Administrative Hearing are attached together as Exhibit P.

Under Section 7.6 of the First and Second DOT, Developer RE1 arguably has a right to either discharge "within thirty (30) calendar days" or to "appeal therefrom" any final judgment without being in violation of the covenant in Section 7.6 (entitled "Judgments"). *Id.* ¶ 86. Developer RE1 is still waiting for an administrative hearing to be scheduled on the appeal. *Id.*

The second alleged default by Developer RE1 claimed by Mr. Drazin (the Property Tax Late Payment Claim) involves the late payments of property taxes by Developer RE1 on October 16 and 19, 2022 instead of on September 15, 2022. *Id.* ¶ 90. Developer RE1 paid property taxes in the amount of $16,522.89 on October 16, 2022, and property taxes in the amount of $222.28 on October 19, 2022. *Id.* ¶ 91. True copies of the receipts for the property tax payments are attached as Exhibit Q and Exhibit R, respectively. There are currently no outstanding property taxes owed by Developer RE1, and the late payment of taxes caused no harm whatsoever to the WCP Fund. *Id.* ¶ 92.

The defaults by Developer RE1 that have been alleged were all claimed after-the-fact as a pre-text. No claim of default was made by WCP against Developer RE1 until after WCP became

aware that Developer RE1 was obtaining a refinance loan for the Property with Main Street Bank. *Id.* ¶ 94. The property taxes have now been paid, and Developer RE1, a sole purpose entity, has no affiliates. *Id.* ¶¶ 100-114. Even though there is no valid, legal basis under any provision of either the First or the Second DOT that would permit the Defendants to foreclose on the Property, they have threatened to take that step. *See* Ex. L ("our legal counsel will commence foreclosure proceedings"); *Id.* ¶ 117. The real reason that the Defendants improperly alleged that Developer RE1 was in default under the loan documents was because the Defendants and/or their representatives, were angry that the 2507 I Street Project did not turn out the way that they wanted it to. *Id.* ¶ 96.

J. <u>Developer RE1 Risks Losing the Property</u>

The Defendants have threatened to foreclose on the Property even though they know they do not have any legal basis for doing so. *Id.* ¶ 107. There is no valid, legal basis under any provision of either the First DOT or the Second DOT that would permit the Defendants to foreclose on the Property. *Id.* ¶ 108. The Defendants knew that the First Note and the Second Note list a maturity date of December 23, 2022. The Defendants deliberately timed their improper interference with Developer RE1's business relations -- right before a holiday period -- to make it close to impossible for Developer RE1 to close on the refinancing loan prior to the maturity date, and to tie up any refinancing indefinitely so that they can try to foreclose on the Property. *Id.* ¶ 111. If the Defendants follow through on their threat to foreclose on the Property, Developer RE1, will be irreparably harmed and could lose its entire investment due to the Defendants' misconduct and improper lending practices. *Id.* ¶¶ 109-10.

## II. <u>PROCEDURAL HISTORY</u>

On December 16, 2022, Developer RE1 filed a Complaint against the Defendants. The Complaint includes claims for tortious interference with business relations (Count I) and breach

of the duty of good faith and fair dealing (Count II). The Complaint also seeks a declaratory judgment as to the meaning of certain provisions in two Deeds of Trust (Count III) and injunctive relief (Count IV). Because the Defendants have threatened foreclosure, Developer RE1 asks this Court to preserve the status quo by issuing a temporary injunction that prevents the Defendants from trying to enforce any remedy under the loan documents, including the remedy of foreclosure.

## III. Legal Argument

### A. The Legal Standard for a Temporary Restraining Order

In determining whether to grant a temporary restraining order or a preliminary injunction, the Court must consider four factors: (1) the likelihood of irreparable harm in the absence of the requested injunction; (2) the likelihood of success on the merits on the underlying action; (3) whether the balance of injuries favors granting an injunction; and (4) whether the public interest would be served by granting the injunction. *Ifill v. District of Columbia*, 665 A.2d 185, 187-88 (D.C. 1995). The most important inquiry is that concerning irreparable injury. *District of Columbia v. Grp. Ins. Admin.*, 633 A.2d 2, 22 (D.C. 1993). These four injunctive relief factors, which are discussed in more detail below, weigh heavily in favor of Developer RE1.

### B. Developer RE1 Will Be Irreparably Harmed if the Defendants Follow-Though on Their Threat to Foreclose on the Property

Absent an injunction, the Defendants could foreclose on the Property. If those Defendants foreclose on the Property, Developer RE1 will lose its interest in the Property and the improvements to the Property, which has a current value of almost $4 million. The law considers property to be unique, so the possibility that Developer RE1 could lose its interest in the Property is sufficient, to show irreparable harm. *See Peterson v. D.C. Lottery & Charitable*

*Games Control Bd.*, No. 94-1643, 1994 U.S. Dist. LEXIS 10309, 1994 WL 413357, at *4 (D.D.C. July 28, 1994) ("It is settled beyond the need for citation . . . that a given piece of property is considered to be unique, and its loss is always an irreparable injury."). Accordingly, this first injunctive relief factor weighs heavily in favor of Developer RE1.

C. Developer RE1 Is Likely to Succeed on the Merits as to Its Claims

(1) Developer RE1 is Likely to Succeed on its Intentional Interference with a Business Relationship Claim

To prevail on a claim of tortious interference with business relations, Developer RE1 must establish: (1) the existence of a valid contractual or other business relationship; (2) the defendant's knowledge of the relationship; (3) intentional interference with that relationship by the defendant; and (4) damages. *See Onyeoziri v. Spivok*, 44 A.3d 279 (D.C. 2012). Developer RE1 has alleged sufficient facts to how that the Defendants actions amount to a tortious interference with business relations. The conduct alleged to have occurred here show that the Defendants are attempting to extort money from Developer RE1 (and others) by raising pre-textual defaults at a time when Developer RE1was on the verge of closing on a refinancing loan. Developer RE1 has easily demonstrated the elements of a tortious interference with business relations claim.

(2) Developer RE1 is Likely to Succeed on its Breach of the Duty of Good Faith and Fair Dealing Claim

In the District of Columbia, all contracts contain an implied duty of good faith and fair dealing. *See Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C. 2006). In essence, "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *White v. WCP Fund I, LLC (In re ETS of Wash., LLC)*, Nos. 20-00397-ELG, 21-10005, 2022 Bankr. LEXIS 96, at *25-26 (Bankr. D.D.C. Jan. 14, 2022) (quoting *id.*). Here, Developer RE1 has alleged facts showing that WCP

and the WCP Fund breached the implied duty of good faith and fair dealing. Making up defaults after the fact in order to put pressure on someone, whether that pressure is to pay someone else's debt, or to extract exorbitant "default" fees and penalties, are textbook examples of bad faith. Developer RE1 has also shown that the Defendants are taking improper actions under the loan documents for the purpose of injuring the rights of Developer RE1 (and others) and to try to deprive Developer RE1 of the value of the Property.

(3) Developer RE1 Is Likely to Prevail on Its Claims that the Defendants' Allegations of Default Are Pretextual – and that the Alleged Defaults Cannot Form a Valid Basis Upon Which to Foreclose on the Property

The facts alleged by Developer RE1 demonstrate that Mr. Huertas declared Developer RE1 in default for pre-textual reasons. More importantly, the default claims that were alleged are either incorrect as a matter of law, or are so trivial in nature that they cannot be used as a basis upon which to effectuate a forfeiture.

(4) Developer RE1 is Likely to Prevail on Its Claim that It Is Not an Affiliate of 423 Kennedy (or Any Other Entity).

WCP, the WCP Fund, and Mr. Drazin appear to claim that Section 7.9 of in the First DOT and the Second DOT allow them to declare a default because they claim that Developer RE1 is an "affiliate" of 423 Kennedy – a separate entity that is only partially owned by Mr. Negussie. Section 7.9 in each deed of trust states:

> Other Indebtedness. Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature - *other than the Indebtedness and the Obligations secured hereby* - *of Grantor* or any guarantor of the Indebtedness, *or any of their affiliates*, *to Beneficiary*, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.



GDL Documents\4887-8420-9222.v1-12/23/22

Case 1:23-cv-03920-AHA Document 1-1 Filed 11/28/24 Page 14 of 21
Exhibit A - All Docket Entries (Part 1) Page 240 of 207

*See* Ex. A (First DOT) and Ex. C (Second DOT) at pages 11-12 (italic and underlined emphasis added).

Although the First DOT and the Second DOT do not define the term "affiliate", under federal banking law, the term "affiliate" means "any company that controls, is controlled by, or is under common control with another company." 15 U.S. Code §6809(6). But Developer RE1, a sole purpose entity, is not under common control with 423 Kennedy or any other entity. There is no business or other relationship between 423 Kennedy and Developer RE1. Although Mr. Negussie does have a partial interest in Developer RE1, he does not have a controlling interest in 423 Kennedy.[2] Developer RE1 does not control 423 Kennedy and vice versa. Both entities are sole purpose limited liability companies whose businesses are separate. Cross-default provisions have also been found to be inherently suspect. *See, e.g., JP Morgan Chase Bank, N.A. v. Charter Communs. Operating, LLC (In Re Charter Communs.)*, 419 B.R. 221; 2009 Bankr. LEXIS 3609 (SDNY 2009) (noting that "cross default provisions are inherently suspect" and that "[b]efore enforcing them, a court should carefully scrutinize the facts and circumstances surrounding the particular transaction . . ."). The Defendants cannot rely upon the "affiliate" language in the cross-default provision (Section 7.9) to declare a default by Developer RE1.

(5) Developer RE1 is Likely to Prevail on Its Argument that a Fine That Caused No Damages, and Has Since Been Paid, Cannot Be Used as a Basis to Foreclose on the Property.

It is settled law in the District that "equity abhors forfeitures . . . [and] so indeed does the law." *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181 (2009) (citing *Association of American Railroads v. Connerton,* 723 A.2d 858, 862 (D.C.1999) (citation omitted). As the

[2] The Complaint contained a typographical error in paragraph 103. The word "not" was mistakenly omitted. Paragraph 103 should have stated: "Mr. Negussie does not have a controlling interest in 423 Kennedy." Developer RE1 will be correcting this mistake in an amended complaint.

Court of Appeals explained in *Tsintolas Realty* by using a sports (basketball) analogy, technical violations of a contract that cause no harm cannot be used to justify a forfeiture:

> [T]his case falls within the 'no harm no foul' rule." To paraphrase an analogous passage in *In re DiMartino,* 108 B.R. 394, 403 (D.R.I.1989),
>
> [t]he no-harm-no-foul rule of the basketball court should be applied in this law court. Since [the landlord] has suffered no monetary harm from any alleged breach [of the settlement agreement], the [tenants are] not liable and there can be no set-off to the sum[ ] owed on the [settlement agreement] by [the landlord].

*Tsintolas Realty,* 984 A.2d at 186-97 (citing with approval *Mira v. Nuclear Measurements Corp.,* 107 F.3d 466, 473 (7th Cir.1997) ("the law abhors a forfeiture.").

Here, just like the landlord in *Tsintolas Realty*, the Defendants are claiming a technical default (nonpayment of a $500.00 fine) to justify the forfeiture of property, after the fact, for which they could not have suffered any actual damages. As the *Tsintolas Realty* court further explained:

> It is a longstanding principle in civil law that there can be no monetary recovery unless the plaintiff has suffered harm." *Mira,* 107 F.3d at 473 (citing *Brock v. Robbins*, 830 F.2d 640, 647 (7th Cir.1987)). "[M]ere breach without proof of monetary loss is *injuria absque dam-no*," *Cagle v. Southern Bell Tel. & Tel. Co.,* 143 Ga.App. 603, 604, 239 S.E.2d 182, 183 (Ga.Ct.App.1977*) i.e.,* "a wrong which results in no loss or damage, and thus cannot sustain an action." *Mira,* 107 F.3d at 473 n. 7 (citing Black's Law Dictionary 785 (6th ed.1990)).

*Tsintolas Realty,* 984 A.2d at 187.

Developer RE1 is likely to prevail on its argument that technical defaults that caused no harm cannot serve as a basis for the foreclosure on a Property worth almost $4 million. *See Allen v. United States,* 603 A.2d 1219, 1227 (D.C.) (en banc), *cert. denied,* 505 U.S. 1227 (1992) ("Proportionality is of consummate importance in judicious adjudication[.]")" [.]")". Other courts have also refused to allow a forfeiture based upon an inconsequential breach of a contract.

In *Miller v. Cain Partnership, Ltd.*, No. 1993 Tenn. App. LEXIS 485, (Tenn. Ct. App. July 20, 1993), the court noted several, general rules regarding forfeitures, such as: "Every reasonable presumption is against forfeiture and every intendment or presumption is against the party seeking to enforce the forfeiture", (citing 17A C.J.S. Contracts § 407 (1963)) and that "[f]orfeitures are not favored in equity and unless the penalty is fairly proportionate to the damages suffered by the breach, relief will be granted when the [party seeking forfeiture] can, by compensation or otherwise, be placed in the same condition as if the breach had not occurred.") (quoting *Hooten v. Nacarto GMC Truck, Inc.*, 772 S.W.2d 41, 46 (Tenn. Ct. App. 1989)); *see also Arrowroot v. Natural Pharm. v. Std. Homeopathic Co.*, 1998 U.S. Dist. Lexis 1327, *39-42 ("Equity, it has been said, abhors a forfeiture and is greatly hesitant to enforce one." ) (issuing an injunction to prevent the termination of a Joint Venture agreement based upon inconsequential violations and when there was substantial performance under the contract). Because of the longstanding rule that equity abhors a forfeiture, especially when the party trying to effectuate the forfeiture has suffered no damages, the third injunctive relief factor -- the likelihood of success on the merits -- weighs heavily in Developer RE1's favor.

D. <u>The Balance of the Injuries is Tipped Decidedly in Developer RE1's Favor</u>

The irreparable harm to Developer RE1 greatly outweighs any potential injury to the Defendants, who really can prove no injury because, but for their improper conduct, Developer RE1 would have gone to closing and repaid the amounts owed in full. The Defendants have suffered no identifiable injuries to date, and any harm that the WCP or the WCP Fund could arguably claim that Developer RE1 has caused them are wounds that are self-inflicted. By refusing pre-textually placing Developer RE1 in default, trying to improperly extort money from Developer RE1 (and others), and by directly interfering with, and delaying indefinitely, Developer RE1's closing on a refinance loan, the Defendants have effectively shot

themselves in the foot. The third injunctive relief factor, the "balance of the injuries", also weighs heavily in favor of Developer RE1.

E. The Public Interest is Firmly in Favor of Preventing Foreclosure

The public interest will be served by stopping a foreclosure where the borrower was not in default and had abided by the terms of its loan documents. The public interest is served by ensuring that those who adhere to the terms of loan documents are rewarded, not penalized. The public interest is not served by rewarding wrongdoers. Here, Developer RE1 had paid all amounts owed to the WCP and the WCP Fund before they issued Payoff Statements demanding $727,598.77 "default" penalties. At best, the defaults alleged by the Defendants were technical violations of the First and Second DOT. The public interest will not be served if the Court, using another sports (tennis) analogy, were to allow what are basically "foot faults" to decide an entire tennis match, especially in a case like this one where the Defendants have, acting in concert, engaged in predatory lending practices. Allowing the Defendants to move forward with a foreclosure under these circumstances would actually harm the public as it would encourage the Defendants to engage in even more deceitful, predatory lending practices. The "public interest" factor also favors Developer RE1.

## IV. CONCLUSION

Based on the facts presented and the attached exhibits, the Court should enter a Temporary Restraining Order that prevents to Defendants from taking any further action to foreclose on the Property. For these reasons and for any reasons that may be advanced at a hearing on this motion, the Plaintiff, Developer RE1 LLC, requests that this Honorable Court: (a) schedule an emergency hearing on this motion; (b) enter the attached proposed order; and award such other and further relief as the Court may deem just and proper.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: December 23, 2022

/s/ James D. Sadowski
Alexandria J. Smith (D.C. Bar. No. 1781067)
James D. Sadowski (D.C. Bar No. 446635)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone: (202) 452-1400
Email: jds@gdllaw.com
*Counsel for Plaintiff Developer RE1 LLC*

## REQUEST FOR EMERGENCY ORAL HEARING

Plaintiff requests that this Motion for Temporary Restraining Order be set for an oral hearing before the Judge in Chambers on an expedited basis.

/s/ Alexandria J. Smith
Alexandria J. Smith

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this Motion for a Temporary Restraining Order was served by the Court's electronic filing system this 23rd day of December 2022, and a notice of filing should be served on all counsel of record. I also served a copy of this motion by email (as indicated) and by FedEx on the following persons:

DP Capital d/b/a Washington
Capital Partners
8401 Greensboro Drive - Suite 960
McLean, VA 22102
rdrazin@pardodrazin.com

WCP Fund I, LLC
c/o National Registered Agents Inc. –
Registered Agent
1015 15th Street, NW, Suite 1000
Washington, DC 20005

Daniel Huertas
909 Chinquapin Road
McLean, VA 22102

Russell S. Drazin
4400 Jenifer Street, NW - Suite 2
Washington, DC 20015

Pardo & Drazin, LLC
4400 Jenifer Street, NW - Suite 2
Washington, DC 20015
Attn: Russell S. Drazin

/s/ Alexandria J. Smith
Alexandria J. Smith

## CERTIFICATE REGARDING CONSENT

The Plaintiff attempted to seek consent to the relief requested in this motion by sending an email to Russell Drazin, Esq., a Defendant who is also believed to be counsel for the other Defendants, on December 22, 2022. Mr. Drazin replied that the Defendants did not consent.

/s/ Alexandria J. Smith
Alexandria J. Smith

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| DEVELOPER RE1 LLC,<br>*Plaintiff,*<br>v.<br>DPA CAPITAL, LLC D/B/A WASHINGTON CAPITAL PARTNERS, ET AL.,<br>*Defendants.* | Case No. 2022 CAB 005935<br>Judge Ebony Scott |

**[PROPOSED] ORDER**

Upon Consideration of Plaintiff Developer RE1 LLC's Motion for Temporary Restraining Order, any response thereto, the facts and arguments presented at the hearing, and a review of the record of this case, this Court finds that the Plaintiff has met the standards required for the issuance of injunctive relief. Accordingly, it is this ___ day of December, 2022, hereby

ORDERED that the Plaintiff's Motion for Temporary Restraining Order is hereby GRANTED; and it is

FURTHER ORDERED that Defendants must immediately stop taking any action to: (a) exercise any right or remedy that they have under the First DOT, the Second DOT, the First Note, and/or the Second Note; (b) foreclose on the Property (5501 1st Street, N.W., Lot 138, Square 3389); and/or (c) collect any amounts that are claimed to be due under the First Note and the Second Note pending further order of this Court.

SO ORDERED.

________________________________
The Honorable Ebony Scott
Superior Court of the District of Columbia

Copies To:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Daniel Huertas
DPA Capital, LLC d/b/a Washington Capital Partners
The WCP Fund 1, LLC
Russel Drazin, Esq.



GDL Documents\4887-8420-9222.v1-12/23/22