eFiled
07/11/2023 9:02:23 PM
Superior Court
of the District of Columbia

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

2022-CAB-005935

| | |
|---|---|
| DEVELOPER RE1 LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>DP CAPITAL, LLC D/B/A WASHINGTON CAPITAL PARTNERS, ET AL.,<br><br>*Defendants*. | Case No. 2022-CAB-005935<br>Judge Ebony Scott<br>Next Event: Close of Discovery 8/10/2023 |

# PLAINTIFF'S OPPOSED EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER TO PREVENT AN IMMINENT FORECLOSURE SALE

The Plaintiff, Developer RE1 LLC ("Developer RE1"), requests that the Court enjoin the Defendants from moving forward with a scheduled foreclosure sale to preserve the status quo and prevent irreparable harm to Developer RE1. The Defendants have engaged in an improper scheme to try to extort money from Developer RE1 (and others). The Defendants also deliberately prevented Developer RE1 from obtaining a refinancing loan, and they now seek to further their misconduct by foreclosing on real property owned by Developer RE1 on July 25, 2023 -- before Developer RE1 can complete discovery in this case to expose the full extent of their misconduct. The Court should issue a temporary restraining order stopping any foreclosure sale to prevent an injustice.

## I. DETAILED FACTUAL BACKGROUND

Developer RE1 and the Property.

Developer RE1 is a domestic, sole purpose, limited liability company that owns real property known as 5501 1st Street, N.W., Lot 138, Square 3389 (the "Property"). Am. Compl.

¶ 9. The sole purpose of Developer RE1 is to own and develop the Property. *Id.* ¶ 11. Developer RE1 is partially owned by Mel Negussie. *Id.* ¶ 10.

<u>The Defendants and Their Roles.</u>

There are four defendants in this case. DP Capital, LLC ("DP Capital"), is a Virginia company that uses the trade name "Washington Capital Partners". *Id.* ¶ 2. For convenience, this motion refers to DP Capital, LLC d/b/a Washington Capital Partners as "WCP". The WCP Fund I, LLC ("WCP Fund"), is a Delaware company that engages in a lending business in the District. *Id.* ¶ 3. Daniel Huertas ("Mr. Huertas") is an individual that resides in Virginia. *Id.* ¶ 5. Mr. Huertas controls WCP, and WCP controls the WCP Fund. *Id.* ¶¶ 4-5. Russell Drazin ("Mr. Drazin"), is an individual and counsel to the WCP and the WCP Fund. *Id.* ¶ 6. Mr. Drazin is also the Trustee under two deeds of trust that he drafted. *Id.*

<u>The Loan Documents.</u>

On December 23, 2021, the WCP helped facilitate Developer RE1 in obtaining an acquisition finance loan for the Property, which original loan was later refinanced. *Id.* ¶¶ 13-14. As part of that refinancing, Developer RE1 signed the following documents:

- a Deed of Trust (the 'First DOT") for the Property that named the WCP Fund as Beneficiary and Mr. Drazin, as Trustee;
- a Commercial Deed of Trust Note (the "First Note") in the amount of $3,579,000.00, as "Borrower", in favor of the WCP Fund;
- a second, additional Deed of Trust ("Second DOT") for the Property that also named the WCP Fund as Beneficiary and Mr. Drazin as Trustee; and
- a second Commercial Deed of Trust Note (the "Second Note") in the amount of $524,000.00, as "Borrower".

*Id.* ¶¶ 14, 17, 20, and 23.

True copies of the First DOT, the First Note, the Second DOT, and the Second Note are attached to this motion as Exhibits A, B, C, and D.[1] These documents are sometimes referred to together as the "loan documents". The loan documents were for documents prepared by Mr. Drazin that Developer RE1 was not allowed to modify. *Id.* ¶¶ 15-16, 18-19, 21-22, and 24-25. The loan documents provided security for the construction financing loans that Developer RE1 needed to develop the Property.

<u>Mr. Huertas Threatens to Make Trouble for Developer RE1 Unless Developer RE1 Accedes to His Demands Regarding Another, Unrelated Development.</u>

As of November 3, 2022, Developer RE1 had paid all amounts due to the WCP Fund under the First and Second Note. *Id.* ¶ 29. On November 3, 2022, Mr. Huertas sent an email to Developer RE1 (via Mr. Negussie) to inquire about the status of the payoff of both loans by Developer RE1. *Id.* ¶ 30. Mr. Huertas wrote that: "we [WCP and the WCP Fund] will not be working with you after the maturity of 5505." *Id.* A copy of the November 3, 2022 email is attached as Exhibit E. On November 15, 2022, Mr. Huertas sent another email to Developer RE1 (via Mr. Negussie) "following up on the refinance progress on both projects." *Id.* ¶ 31. A true copy of the November 15, 2022 email is attached as Exhibit F.

<u>The WCP/WCP Fund Send Multiple Payoff Statements Without Making Any Claim of "Default" Under Any of the Loan Documents.</u>

By as early as November 15, 2022, the Defendants knew that Developer RE1 had secured alternative financing for the Property with another lender named Main Street Bank, and that Developer RE1 expected to close on the new refinancing loans in December of 2022. *Id.* ¶ 33. A true copy of a November 17, 2022 email sent by Mr. Huertas is attached as Exhibit G.

---

[1] All but three of the Exhibits attached to this Emergency Motion (Exhibit S, T, and U) were also attached to the Amended Complaint.

As of November 30, 2022, there was no allegation made by any Defendant that any default by Developer RE1 existed under either the First Note, the Second Note, the First DOT, or the Second DOT. *Id.* ¶ 34.

On November 30, 2022, Developer RE1 made a request by email to WCP for the payoff figures for both loans for the Property. *Id.* ¶ 35. A copy of the November 30, 2022 email sent by Developer RE1 to WCP is attached as Exhibit H. That same day (November 30, 2022) Developer RE1 requested, and WCP agreed, to provide the payoff figures for both loans as of December 23, 2022. *Id.* ¶ 36. A copy of the second November 30, 2022 email exchange between Developer RE1 and WCP is attached as Exhibit I. On or about December 1, 2022, Mr. Negussie contacted Mr. Huertas to inquire with WCP about whether the WCP/WCP Fund would agree to extend the maturity date for the First Note and the Second Note for six to twelve months. *Id.* ¶ 37. Mr. Huertas replied that the only way an extension of the maturity date would be granted would be if Developer RE1 paid down the First Note and the Second Note by $1 million to $1.5 million (in principal). *Id.* On or about December 6, 2022, Mr. Negussie contacted Mr. Huertas again to inquire whether WCP will be willing to extend the maturity date for the First Note and the Second Note loans for six to twelve months if Developer RE1 paid down the notes by $500,000 to $750,000. *Id.* ¶ 38. Mr. Huertas reiterated that, at a minimum, the notes needed to be paid down by $1 million. *Id.* Mr. Negussie then told Mr. Huertas that he would try to raise that amount ($1 million) from additional investors. *Id.* As of December 8, 2022 there was still no claim made that any default by Developer RE1 existed under any of the loan documents. *Id.* ¶ 39.

<u>Mr. Huertas Then Demands that Either Developer RE1 or Mr. Negussie Resolve Another Debt Owed to the WCP for Another, Unrelated Project, "Or Else".</u>

By December 8, 2022, Developer RE1 had made all payments due under the Notes ($332,319.03 in interest payments). *Id.* ¶ 40; *see also* Exhibit S (payment history and screenshots from the WCP web site showing interest payments marked "Paid"). That day, Mr. Huertas told Developer RE1 that the Defendants and an unnamed investor were displeased with how the development of another, unrelated property (located at 2507 I Street, NW) had turned out. *Id.* ¶ 41. For convenience, the unrelated development project will be referred to as the "2507 I Street Project". During that call, Mr. Huertas told Mr. Negussie that WCP was "withdrawing the payoff statements recently issued and that he was defaulting all loans that Mr. Negussie was associated with at WCP, including Developer RE1." *Id.* ¶ 42. Mr. Huertas further stated that the 2507 I Street Project has "turned out very bad and that the person who lent the money to WCP ("Investor Lender") to provide the loan to 2507 I St Holdings LLC, is 'pissed off' with the quality of the work done". *Id.* Mr. Huertas further stated that the Investor Lender "is very wealthy and will make life hard for you", and "has now bought the notes" on 423 Kennedy and another project financed by WCP, and that WCP is "defaulting the loans." *Id.* Mr. Huertas also said: "why don't you do the honorable thing and have your investors buy 2507 I St to make things right" or have them "take care of the $700,000 shortfall on that project." *Id.* Mr. Huertas also said that if Mr. Negussie did not "do the right thing" by arranging for the $700,000 shortfall (on the 2507 I Street Project) to be paid, then the Defendants and the unnamed investor "would make trouble for you on all of your other projects". *Id.* ¶ 43.

Mr. Negussie told Mr. Huertas that his threats to cause trouble to either Mr. Negussie or to any development projects were improper. *Id.* ¶ 44. After Mr. Negussie refused to accede to Mr. Huertas' threats over the 2507 I Street Project, Mr. Huertas told Mr. Negussie that all prior

Payoff Statements that were sent "were withdrawn" and that he would place Developer RE1 and the borrower on another, unrelated project named 423 Kennedy St Holdings, LLC ("423 Kennedy") in default under their loan documents. *Id.* ¶ 45.[2] The Defendants knew that Developer RE1 was not involved in the 2507 I Street Project, that there is no legal or other business relationship between Developer RE1 and either the developer for the 2507 I Street Project or 423 Kennedy, and that 423 Kennedy was a sole purpose entity involved with a development project at 5501 1st Street, NW. *Id.* ¶¶ 46-50, and 52-57. Mr. Huertas provided no basis for why or how the Defendants could put Developer RE1 in default under the loan documents. *Id.* ¶ 51.

Mr. Huertas Follows Up on His Unethical, Improper Threats to Developer RE1 By Improperly Demanding Payment of $727,598.67 in "Default Penalties" and "Default Interest" and By Threatening Developer RE1 With Foreclosure.

Later that day (December 8, 2022), Mr. Huertas followed through with his threats to "make trouble" for Mr. Negussie, 423 Kennedy and Developer RE1 by arranging for Leslie Calderas to send two letters, each called a "Notice of Default" to Mr. Negussie by email. *Id.* ¶ 58. A true copy of that email and each "Notice of Default" are attached as Exhibits J, K, and L. Each "Notice of Default" was unsigned and failed to include either a description of the alleged "default" or a referenced "copy of the first page of the Deed of Trust as Exhibit A". *Id.* ¶¶ 60-61. Email is also not listed as a permissible means to send a default notice. *Id.* ¶¶ 64-65; Ex. A (First DOT) at pages 17-18 and Compl. Ex. C (Second DOT) at pages 17-18. With the December 8, 2022 email, the WCP included two Payoff Statements for Developer RE1. *Id.* ¶ 66. A true copy of the two Payoff Statements that were included with that email are attached as

---

[2] 423 Kennedy filed a similar lawsuit against the Defendants in *423 Kennedy St Holdings LLC v. DP Capital, LLC d/b/a Washington Capital Partners et al.*, 2022-CAB-005903 (D.C. Super. Ct.) (the "*423 Kennedy* Case").

Exhibits M and N. *Id.* ¶¶ 66-68. The Payoff Statement for the first loan included a demand that Developer RE1 pay $276,776.00 in "Default Interest" and a "Default Penalty" of $357,900.00, while the Payoff Statement for the second loan included a demand that Developer RE1 pay $40,522.67 in "Default Interest" and $52,400.00 for a "Default Penalty". *Id.*

Mr. Huertas "Lawyers Up" and Asks Mr. Drazin to Come Up with A Cover Story.

Mr. Negussie immediately called Mr. Huertas to ask him the basis for the "default" claims. *Id.* ¶ 69. Mr. Huertas refused to disclose that basis and told Mr. Negussie that he had to contact the WCP's counsel. *Id.* Developer RE1 believes that Mr. Huertas then instructed Mr. Drazin to review every provision of the loan documents to try to find a reason to justify the decision to declare that Developer RE1 was in "default". *Id.* ¶¶ 70-71. Developer RE1 also believes that Mr. Huertas directed Mr. Drazin to come up with the cover story to conceal the fact that there was no valid basis for declaring Developer RE1 to be in default and to conceal the real reason why Developer RE1 was improperly placed in default -- because the Defendants were angry about the 2507 I Street Project. *Id.* ¶¶ 71-72.

The First and Second DOT state that Mr. Drazin, as Trustee, could collect a "commission" of 2.50% of the "total amount then due", and another "commission" of 5.00% of the proceeds of a foreclosure sale, so there is a financial incentive for him to inflate the amounts that are claimed to be due. *Id.* ¶¶ 73-74. The Defendants knew that by improperly alleging that Developer RE1 was in default under the loan documents, and by adding $727,598.77 in "Default Interest" and "Default Penalt[ies]", Developer RE1 would not be able to go to closing on the refinance loan. *Id.* ¶¶ 75-77. The Defendants deliberately interfered with the refinancing loan to prevent Developer RE1 from being able to go to closing. *Id.* ¶ 77. The Defendants also sent a "Notice of Default" to improperly pressure either 423 Kennedy, Developer RE1, and/or Mr. Negussie to pay someone else's debt (*i.e.*, for the 2507 I Street Project). *Id.* ¶ 78. The

Defendants also knew that they had no right to demand that someone else either correct, or pay for, any problems at the 2507 I Street Project. *Id.* ¶ 79. The Defendants are trying to inflict damages upon Developer RE1, and their misconduct is a form of extortion. *Id.* ¶ 80.

<u>The Cover Story Does Not Survive Scrutiny Under the Terms of the First DOT and the Second DOT.</u>

After being asked by counsel for Developer RE1 to provide a basis for the "default" claims, Mr. Drazin sent the cover story that Mr. Huertas had asked for. In a reply email, Mr. Drazin claimed that Developer RE1 was in "default" because:

- "There is a massive Water/Sewer balance due and owing to DC Water ($44,857.93). DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397). The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW";
- The "Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022. DEVELOPER RE1 LLC did not timely pay those Taxes. Payment was not made until October 16 and 19, 2022.";
- Developer RE1 was not entitled to any notice of any default;
- There was "<u>no right to cure</u>", "<u>no right to deceleration</u>", <u>no right to reinstatement</u>, and that the '<u>Loans are in default and are accelerated</u>."; and that
- "Section 7.9 of the Deeds of Trust states that any default or breach of any loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default".

A true copy of Mr. Drazin's email is attached as Exhibit O (emphasis in original). *Id.* ¶ 81. For convenience, the alleged DC Water Debt will be referred to as the "DC Water Alleged Debt Claim" and the second property tax payment claim will be referred to as "Property Tax Late Payment Claim." *Id.* ¶ 82

Developer RE1 first learned that there may be outstanding DC Water invoices on or about August 31, 2022, because DC Water was sending the invoices for the Property to the wrong address. *Id.* ¶ 83. The dates of the DC Water invoices were 02/23/22, 03/18/22,

04/19/22, 05/18/22 and 06/16/22 (the "Disputed Invoices"). *Id.* Upon learning of the Disputed Invoices, Developer RE1 promptly contacted DC Water and disputed the amounts that DC Water claimed was due. *Id.* On September 22, 2022, DC Water stated in an email that "the dispute deadline date for these charges has expired" and that "[b]ills must be paid or disputed by their respective due dates." *Id.* ¶ 84. Because Developer RE1 did not receive an invoice until on or about August 31, 2022, DC Water claimed that the deadline to dispute any of the Disputed Invoices had already expired by about sixty days. *Id.* That same day, Developer RE1 submitted (by email) a Petition for Administrative Hearing to contest the Disputed Invoices. *Id.* ¶ 85. At the time the Complaint was filed Developer RE1, was waiting for an administrative hearing to be scheduled. *Id.* A true copy of the September 22, 2022 email and the Petition for Administrative Hearing are attached as Exhibit P.

Under Section 7.6 of the First and Second DOT, Developer RE1 arguably had a right to either discharge "within thirty (30) calendar days" or to "appeal therefrom" any final judgment or lien without being in violation of the covenant in Section 7.6 (entitled "Judgments"). *Id.* ¶ 86. The DC Water Alleged Debt Claim was resolved with DC Water and the lien filed by DC Water was released on June 12, 2023. A copy of the lien release filed by DC Water is attached as Exhibit T.

The second alleged default by Developer RE1 claimed by Mr. Drazin (the Property Tax Late Payment Claim) involves the delayed payments of property taxes by Developer RE1 on October 16 and 19, 2022 instead of on September 15, 2022. *Id.* ¶ 90. Developer RE1 paid property taxes in the amount of $16,522.89 on October 16, 2022, and property taxes in the amount of $222.28 on October 19, 2022. *Id.* ¶ 91. True copies of the receipts for the property tax payments are attached as Exhibit Q and Exhibit R, respectively. There are currently no

outstanding property taxes owed by Developer RE1, and the delayed payment of taxes caused no harm whatsoever to the WCP Fund. *Id.* ¶ 92.

The defaults by Developer RE1 that have been alleged were all claimed after-the-fact as a pre-text. No claim of default was made by WCP against Developer RE1 until after WCP became aware that Developer RE1 was obtaining a refinance loan for the Property with Main Street Bank. *Id.* ¶ 94. The DC Water Alleged Debt Claim was resolved, all property taxes have now been paid, and Developer RE1 has no affiliates. *Id.* ¶¶ 100-114. Even though there was no valid, legal basis under any provision of either the First or the Second DOT that would permit the Defendants to foreclose on the Property, they initially threatened to take that step. *See* Ex. L ("our legal counsel will commence foreclosure proceedings"); *Id.* ¶ 117. The real reason that the Defendants improperly alleged that Developer RE1 was in default under the loan documents was because the Defendants and/or their representatives were angry that the 2507 I Street Project did not turn out the way that they wanted it to, and/or because the Defendants want to force Developer RE1 to pay unenforceable penalties. *Id.* ¶ 96. *See also* Part III, C.(6), *infra.*

Developer RE1's Initial Motion for a Temporary Restraining Order.

Developer RE1 initially filed a motion for a temporary restraining order on December 23 2022 ("First TRO Motion"), but the First TRO Motion was withdrawn by consent after a judge determined in another case involving similar facts that a threat of foreclosure did not rise to the level of imminent harm warranting injunctive relief. *See* Order dated February 7, 2023 in the

Case 23-01063-EL20-ALA Document 3-4/24 Filed 11/07/24 Page 11 of 169 Exhibit A - All Docket Entries (Part I) All Dockets Entries

*423 Kennedy* case.[3] The First TRO Motion was also withdrawn due to ongoing settlement negotiations.[4]

<u>The Harm to Developer RE1 is Now Imminent</u>.

The Defendants' initial threat of foreclosure in December 2022 has now turned into a reality. On June 23, 2023, an unknown company called "SF NU, LLC"[5] sent to Developer RE1 a Notice of Foreclosure Sale of Real Property or Condominium Unit ("Foreclosure Notice"). A copy of the Foreclosure Notice is attached as Exhibit U. The Foreclosure Notice sets the date of the foreclosure sale on July 25, 2023 at 2:00 p.m. There was no valid, legal basis under any provision of either the First DOT or the Second DOT that would have permitted the Defendants to foreclose on the Property. Compl. ¶ 108. The Defendants knew that the First Note and the Second Note listed a maturity date of December 23, 2022, so they deliberately timed their improper interference with Developer RE1's business relations -- right before a holiday period -- to make it close to impossible for Developer RE1 to close on the refinancing loan prior to the maturity date, and to tie up any refinancing indefinitely so that they could foreclose on the Property. *Id.* ¶ 111. As will be shown in Part IV.A, *infra*, if the Property is sold at the July 25, 2023 foreclosure sale, Developer RE1 will be irreparably harmed. *Id.* ¶¶ 109-10.

---

[3] While the finding of a lack of imminent harm in the 423 Kennedy case is not binding on this Court, the Defendants raised "lack of imminent harm" as a defense to the First TRO Motion. *See* Opp. to First TRO Motion at 3-4, Part III.b.

[4] Developer RE1 and the Defendants were engaged in settlement discussions since this case was first filed. Unfortunately, the lengthy settlement discussions reached an impasse last month after Developer RE1's final settlement proposal was rejected.

[5] A search of the D.C. Department of Licensing and Consumer Protection's website shows that SF NU, LLC is not authorized to do business in the District. On July 6 and 8, 2023 Developer RE1 served discovery requests on three of the Defendants in this case to try to find out the relationship between SF NU, LLC and the Defendants in this case, and how SF NU, LLU has the right to enforce any of the loan documents.

## II. Procedural History

On December 16, 2022, Developer RE1 filed its Complaint. On January 12, 2023, Developer RE1 filed a First Amended Complaint ("Amended Complaint") to correct a few errors in the Complaint. The Amended Complaint includes claims for tortious interference with business relations (Count I) and breach of the duty of good faith and fair dealing (Count II). The Amended Complaint also seeks a declaratory judgment as to the meaning and enforceability of certain provisions in two Deeds of Trust (Count III) and injunctive relief (Count IV). On January 26, 2023, the Defendants filed a motion to dismiss the Amended Complaint, which was opposed by Developer RE1. No reply to that opposition was filed. At the initial conference on March 24, 2023, the Court denied the motion to dismiss orally from the bench and issued a Track II Scheduling Order.[6]

Discovery in the case is ongoing and is not complete. Only one Defendant (DP Capital, LLC) has served written discovery responses to date, and those responses were incomplete. Developer RE1 served additional discovery responses on the other three Defendants on July 6 and 8, 2023. Responses to those discovery requests are not due until early August. No depositions have been taken. The current date for the close of discovery is August 10, 2023. Because the Defendants are now trying to foreclose on the Property, Developer RE1 asks this Court to preserve the status quo by issuing a temporary restraining order that prevents the Defendants from proceeding with the foreclosure sale. The Property has a current value of $4 million, which exceeds by sixfold the claimed loan balance due at foreclosure ($655,554.78), so a delay of the foreclosure sale will cause no harm to any of the lender Defendants.

---

[6] The Court memorialized its oral decision denying the Motion to Dismiss in an Order dated April 7, 2023.

## III. The Legal Standard for Injunctive Relief

In determining whether to grant injunctive relief, the Court considers four factors: (1) the likelihood of irreparable harm in the absence of the requested injunction; (2) the likelihood of success on the merits on the underlying action; (3) whether the balance of injuries favors granting an injunction; and (4) whether the public interest would be served by granting the injunction. *Ifill v. District of Columbia*, 665 A.2d 185, 187-88 (D.C. 1995). The most important inquiry is that concerning irreparable injury. *District of Columbia v. Grp. Ins. Admin.*, 633 A.2d 2, 22 (D.C. 1993). The four injunctive relief factors each weigh in favor of Developer RE1.

## IV. Legal Argument

### A. Developer RE1 Will Be Irreparably Harmed if the Property is Sold at a Foreclosure Sale.

The foreclosure sale is scheduled for July 25, 2023. Without a restraining order, the Property will be sold and Developer RE1 will lose all its interest in the Property and the improvements to the Property (valued at $4 million). The law considers property to be unique, so Developer RE1's potential loss of the Property is sufficient, without more, to show irreparable harm. *See Peterson v. D.C. Lottery & Charitable Games Control Bd.*, No. 94-1643, 1994 U.S. Dist. LEXIS 10309, 1994 WL 413357, at *4 (D.D.C. July 28, 1994) ("It is settled beyond the need for citation . . . that a given piece of property is considered to be unique, and its loss is always an irreparable injury."). Since a foreclosure sale is scheduled for July 25, 2023, there is an imminent need for injunctive relief to prevent Developer RE1 from losing its ownership interest in the Property. *See Monument Realty LLC v. Wash. Metro. Area Transit Auth.*, 540 F. Supp. 2d 66, 74 (D.D.C. 2008) ("First, the injury must be both certain and great, actual and not theoretical . . . [t]he court must bear in mind whether the movant has substantiated the claim that

irreparable injury is "likely" to occur."). The first injunctive relief factor weighs heavily in favor of Developer RE1.

B. Developer RE1 Is Likely to Succeed on the Merits of Its Claims.

(1) Developer RE1 is Likely to Succeed on its Intentional Interference with a Business Relationship Claim.

To prevail on a tortious interference with business relations claim, Developer RE1 must establish: (1) the existence of a valid contractual or other business relationship; (2) the defendant's knowledge of the relationship; (3) intentional interference with that relationship by the defendant; and (4) damages. *See Onyeoziri v. Spivok*, 44 A.3d 279 (D.C. 2012). Developer RE1 has alleged sufficient facts to how that the Defendants actions amount to a tortious interference with business relations. The conduct alleged to have occurred here shows that the Defendants attempted to extort money from Developer RE1 (and others) by raising pre-textual defaults at a time when Developer RE1 was on the verge of closing on a refinancing loan. By denying the Defendants' motion to dismiss, the Court has already confirmed that the elements of a tortious interference with business relations claim are present here.

(2) Developer RE1 is Likely to Succeed on its Breach of the Duty of Good Faith and Fair Dealing Claim.

In the District, all contracts contain an implied duty of good faith and fair dealing. *See Allworth v. Howard Univ.*, 890 A.2d 194, 201 (D.C. 2006). In essence, "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *White v. WCP Fund I, LLC (In re ETS of Wash., LLC)*, Nos. 20-00397-ELG, 21-10005, 2022 Bankr. LEXIS 96, at *25-26 (Bankr. D.D.C. Jan. 14, 2022). Developer RE1 has alleged facts showing that WCP and the WCP Fund breached the implied duty of good faith and fair dealing. Making up defaults after the fact in order to put pressure on someone, whether that pressure is to pay someone else's debt, or to extract exorbitant "default"

fees and unenforceable penalties, are textbook examples of bad faith. Developer RE1 has also shown that the Defendants are taking improper actions under the loan documents for the purpose of injuring the rights of Developer RE1 (and others) and to try to deprive Developer RE1 of the value of the Property.

(3) Developer RE1 Is Likely to Prevail on Its Claims that the Defendants' Allegations of Default Were Pretextual – and that any of the Alleged Defaults Could Not Support a Valid Basis for a Foreclosure Sale.

The facts alleged by Developer RE1 demonstrate that Mr. Huertas declared Developer RE1 in default for pre-textual reasons. More importantly, the default claims that were alleged were either incorrect as a matter of law, or were subsequently cured, so they could not be used as a basis upon which to invoke the "death penalty" remedy of a foreclosure. The loan documents themselves support Developer RE1's position because a foreclosure sale is expressly conditioned upon the "continuance of" an Event of Default. *See* Exs. A and C (Deeds of Trust) at page 13, Section 8.0 (a) ("During *the continuance of* any Event of Default, the Trustee [may conduct a foreclosure sale]" and Section 8.0 (b) (also conditioning the exercise of other remedies upon "*the continuance of* any Event of Default") (italic emphasis added).

(4) Developer RE1 is Likely to Prevail on Its Claim that It Is Not an Affiliate of 423 Kennedy (or Any Other Entity).

WCP, the WCP Fund, and Mr. Drazin appear to claim that Section 7.9 of the First DOT and the Second DOT allow them to declare a default because they claim that Developer RE1 is an "affiliate" of 423 Kennedy – a separate entity that is only partially owned by Mr. Negussie. Section 7.9 in each deed of trust states:

> Other Indebtedness. Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature - *other than the Indebtedness and the Obligations secured hereby - of Grantor* or any guarantor of the Indebtedness, *or any of their affiliates, to Beneficiary,* whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

*See* Exs. A and C (Deed of Trust) at pages 11-12 (emphasis added). Although the First DOT and the Second DOT do not define the term "affiliate", under federal banking law the term "affiliate" means "any company that controls, is controlled by, or is under common control with another company." 15 U.S. Code § 6809(6). But Developer RE1, a sole purpose entity, is not under common control with 423 Kennedy or any other entity. There is no business or other relationship between 423 Kennedy and Developer RE1. Although Mr. Negussie does have a partial interest in Developer RE1, he does not have a controlling interest in 423 Kennedy. Developer RE1 does not control 423 Kennedy and vice versa. Both entities are sole purpose limited liability companies whose businesses are separate. Cross-default provisions have also been found to be inherently suspect. *See, e.g., JP Morgan Chase Bank, N.A. v. Charter Communs. Operating, LLC (In Re Charter Communs.),* 419 B.R. 221; 2009 Bankr. LEXIS 3609 (SDNY 2009) (noting that "cross default provisions are inherently suspect" and that "[b]efore enforcing them, a court should carefully scrutinize the facts and circumstances surrounding the particular transaction . . ."). The Defendants cannot rely upon the "affiliate" language in the cross-default provision (Section 7.9) to declare a default by Developer RE1.

(5) Developer RE1 is Likely to Prevail on Its Argument that any Alleged Defaults that Were Cured Cannot Be Used as a Basis to Foreclose on the Property.

In the District, "equity abhors forfeitures . . . [and] so indeed does the law." *Tsintolas Realty Co. v. Mendez,* 984 A.2d 181 (2009) (citing *Association of American Railroads*

*v. Connerton*, 723 A.2d 858, 862 (D.C.1999) (citation omitted). As the *Tsintolas Realty* decision explained by using a sports (basketball) analogy, technical violations of a contract that cause no harm cannot be used to justify a forfeiture:

> [T]his case falls within the 'no harm no foul' rule." To paraphrase an analogous passage in *In re DiMartino*, 108 B.R. 394, 403 (D.R.I.1989),
>
> [t]he no-harm-no-foul rule of the basketball court should be applied in this law court. Since [the landlord] has suffered no monetary harm from any alleged breach [of the settlement agreement], the [tenants are] not liable and there can be no set-off to the sum[ ] owed on the [settlement agreement] by [the landlord].

*Tsintolas Realty*, 984 A.2d at 186-97 (citing with approval *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 473 (7th Cir.1997) ("the law abhors a forfeiture.").

Just like the landlord in *Tsintolas Realty*, the Defendants here are claiming technical defaults that have all been cured to justify the forfeiture of property, after the fact, for which they did not suffer actual damages. As the *Tsintolas Realty* court further elaborated:

> It is a longstanding principle in civil law that there can be no monetary recovery unless the plaintiff has suffered harm." *Mira*, 107 F.3d at 473 (citing *Brock v. Robbins*, 830 F.2d 640, 647 (7th Cir.1987)). "[M]ere breach without proof of monetary loss is *injuria absque dam-no*," *Cagle v. Southern Bell Tel. & Tel. Co.*, 143 Ga.App. 603, 604, 239 S.E.2d 182, 183 (Ga.Ct.App.1977*) i.e.*, "a wrong which results in no loss or damage, and thus cannot sustain an action." *Mira*, 107 F.3d at 473 n. 7 (citing Black's Law Dictionary 785 (6th ed.1990)).

*Tsintolas Realty*, 984 A.2d at 187.

Developer RE1 is likely to prevail on its argument that any technical defaults that caused no harm cannot serve as a basis for the foreclosure on a Property. *See Allen v. United States*, 603 A.2d 1219, 1227 (D.C.) (en banc), *cert. denied*, 505 U.S. 1227 (1992) ("Proportionality is of consummate importance in judicious adjudication[.]"). Other courts have also refused to allow a forfeiture based upon an inconsequential breach of a contract. In *Miller v. Cain Partnership, Ltd.*, No. 1993 Tenn. App. LEXIS 485, (Tenn. Ct. App. July 20, 1993), the court noted several, general rules regarding forfeitures, such as: "Every reasonable presumption is against forfeiture

and every intendment or presumption is against the party seeking to enforce the forfeiture", (citing 17A C.J.S. Contracts § 407 (1963)) and that "[f]orfeitures are not favored in equity and unless the penalty is fairly proportionate to the damages suffered by the breach, relief will be granted when the [party seeking forfeiture] can, by compensation or otherwise, be placed in the same condition as if the breach had not occurred.") (quoting *Hooten v. Nacarto GMC Truck, Inc.*, 772 S.W.2d 41, 46 (Tenn. Ct. App. 1989)).[7] Because equity abhors a forfeiture, especially when the party trying to effectuate the forfeiture has suffered no damages, the third injunctive relief factor weighs in Developer RE1's favor.

(6) Developer RE1 is Likely to Prevail on Its Argument that the Claimed "Default Penalties" Are Unenforceable.

"The common law views liquidated damages clauses with a gimlet eye." *District Cablevision Ltd. P'ship v. Bassin,* 828 A.2d 714, 723 (D.C. 2003). The D.C. Court of Appeals has generally upheld the enforcement of a liquidated damages provision "unless it is found to be a penalty". *Burns v. Hanover Ins. Co.,* 454 A.2d 325, 237 (D.C. 1982). And if the agreement "to pay fixed sums plainly [is] without reasonable relation to any probable damage which may follow a breach [, the provision] will not be enforced". *Order of AHEPA v. Travel Consultants, Inc.,* 367 A.2d 119, 126 (D.C. 1976). Here, the lender Defendants have admitted that part of the amounts that the lender is trying to force Developer RE1 to pay to avoid a foreclosure sale are, in fact, a penalty because they have actually described those charges as such. *See* Ex. M (seeking payment of a "Default Penalty" of $357,900.00 under the First DOT) and Ex. N (seeking a

[7] *See also Arrowroot v. Natural Pharm. v. Std. Homeopathic Co.,* 1998 U.S. Dist. Lexis 1327, *39-42 ("Equity, it has been said, abhors a forfeiture and is greatly hesitant to enforce one." ) (issuing an injunction to prevent the termination of a Joint Venture agreement based upon inconsequential violations and when there was substantial performance under the contract).

"Default Penalty" of $52,400.00 under the Second DOT).[8] Given these two admissions, Developer RE1 is likely to prevail on part of its declaratory judgment claim in Count III, *i.e.*, that the loan documents contain identical liquidated damage provisions that are unenforceable as a matter of law, and that the nonpayment of an unenforceable penalty cannot be used as the basis for a foreclosure sale.

C. The Balance of the Injuries is Tipped Decidedly in Developer RE1's Favor.

The irreparable harm to Developer RE1 greatly outweighs any potential injury to the Defendants, who really can prove no injury because, but for their improper conduct, Developer RE1 would have gone to closing in December of 2022 and repaid the amounts owed in full. The Defendants have suffered no identifiable injuries to date, and any harm that the WCP or the WCP Fund could arguably claim that Developer RE1 has caused them are wounds that are self-inflicted. By pre-textually placing Developer RE1 in default, trying to improperly extort money from Developer RE1 (and others), trying to collect unenforceable penalties, and by directly interfering with, and delaying indefinitely, Developer RE1's closing on a refinance loan, the Defendants have effectively shot themselves in the foot. The third injunctive relief factor also weighs in favor of Developer RE1.

D. The Public Interest is Firmly in Favor of Stopping a Wrongful Foreclosure.

The public interest will be served by stopping a foreclosure when a lender has engaged in bad faith, predatory loan practices like those present here. The public interest is also served by ensuring that debtors who are on a clear path try to repay their debts are rewarded, not penalized. The public interest is not served by rewarding wrongdoers. Here, Developer RE1 had

[8] The "Default Penalty" is ten percent (10%) of the principal loan balance. The loan documents also provide for a twenty-four percent (24%) default interest rate, the highest interest rate allowed by law.

paid all amounts owed to the WCP and the WCP Fund before they issued Payoff Statements demanding $727,598.77 in "default" penalties. At best, the defaults alleged by the Defendants were technical violations of the First and Second DOT that caused no damages. The public interest is not served if the Court, using another sports (tennis) analogy, allows "foot faults" to decide a tennis match, especially in a case involving predatory lending practices. Allowing the Defendants to move forward with a foreclosure under these circumstances would harm the public as it would embolden the Defendants to engage in even more predatory lending practices. The fourth and last injunctive relief factor also favors Developer RE1.

## V. CONCLUSION

For these reasons, and for any reasons that may be advanced at a hearing on this motion, the Plaintiff, Developer RE1 LLC, requests that this Honorable Court: (a) schedule an emergency hearing on this motion; (b) enter the attached proposed order enjoying any foreclosure sale, and (c) award such other and further relief as the Court may deem just and proper.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: July 11, 2022

/s/ James D. Sadowski
Alexandria J. Smith (D.C. Bar. No. 1781067)
James D. Sadowski (D.C. Bar No. 446635)
801 17th Street, NW, Suite 1000
Washington, DC 20006
Telephone: (202) 452-1400
Email: jds@gdllaw.com
*Counsel for Plaintiff Developer RE1 LLC*

## REQUEST FOR AN EMERGENCY ORAL HEARING

The Plaintiff requests that its Opposed Emergency Motion for a Temporary Restraining Order to Stop an Imminent Foreclosure Sale be set for a hearing on an expedited basis prior to July 25, 2023.

/s/ Alexandria J. Smith
Alexandria J. Smith

## CERTIFICATE REGARDING CONSENT

The Plaintiff attempted to seek consent to the relief requested in this motion by sending an email to counsel for the Defendants on July 11, 2023. Counsel for Defendants did not consent to this motion.

/s/ Alexandria J. Smith
Alexandria J. Smith

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Stop an Imminent Foreclosure Sale was served by the Court's electronic filing system this 11th day of July 2023, and a notice of filing should be served on all counsel of record.

/s/ Alexandria J. Smith
Alexandria J. Smith



4878-8731-9407

IN THE SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
Civil Division

| | |
|---|---|
| DEVELOPER RE1 LLC,<br>*Plaintiff*,<br>v.<br>DPA CAPITAL, LLC D/B/A WASHINGTON CAPITAL PARTNERS, ET AL.,<br>*Defendants*. | Case No. 2022 CAB 005935<br>Judge Ebony Scott |

## [PROPOSED] ORDER

Upon Consideration of Plaintiff's Opposed Emergency Motion for a Temporary Restraining Order to Stop an Imminent Foreclosure Sale ("Emergency Motion"), any opposition thereto, the facts and arguments presented at the hearing, and a review of the record of this case, this Court finds that the Plaintiff has met the standards required for the issuance of temporary injunctive relief. Accordingly, it is this _____ day of July, 2023, hereby

ORDERED that the Emergency Motion is GRANTED; and it is

FURTHER ORDERED that Defendants must immediately stop taking any action to foreclose on the Property located at 5501 1st Street, N.W., Lot 138, Square 3389 pending further order of this Court, and it is

FURTHER ORDERED, that this Order enjoining any foreclosure sale applies to SF NU, LLC, and the Defendants must immediately notify SF NU, LLC of the contents of this Order.

_______________________________
The Honorable Ebony Scott
Superior Court of the District of Columbia



4878-8731-9407

Copies (by EfileDC) to:

James D. Sadowski, Esq.
Alexandria J. Smith, Esq.
Maurice VerStandig, Esq.

# EXHIBIT A

Case 24-00262-ELG Doc 1-2 Filed 11/13/24 Entered 11/13/24 Page 25 of 169
Exhibit A - All Docket Entries with All Documents Page 58 of 207

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

# DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $3,579,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of December 23, 2021, by and between **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$3,579,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in

equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

## DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise

agreements, licenses, permits and certificates; (ix) tenements, hereditaments and appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

## ARTICLE II

## GRANT

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively,

"Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever

upon any of its property or assets, except as contemplated herein; and (b) the Note does, and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement

of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall, at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or

which the Beneficiary or the Trustee may be or become a party by reason of this Deed of Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

## ARTICLE V

## NEGATIVE COVENANTS

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge

or security interest, or conditional sale or other title retention agreement, with respect to the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs

and expenses actually and reasonably incurred by the Beneficiary in connection with the collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

## EVENTS OF DEFAULT

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

## ARTICLE VIII

## DEFAULT AND FORECLOSURE

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

5501 1st St NW Washington DC 20011


enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

Case 24-10023-ELG Doc 1-2 Filed 11/07/24 Entered 11/07/24 Page 40 of 169
Exhibit A - All Docket Entries (Part 1) Page 589 of 1716


# ARTICLE IX

## THE TRUSTEE

9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

9.5 Acts of Trustee.

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

## RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

## MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to: **1629 K Street NW Suite 300, Washington, DC 20006**

(b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

(c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3Successors and Assigns.

(a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

(b)Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

that any such assignment will give rise to a direct obligation of Grantor to the Transferee and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c)Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

Case 24-10023-ELG Doc 1-1 Filed 11/08/24 Entered 11/08/24 Page 44 of 169
Exhibit A - All Docket Entries (Part I) All Pages 5501 1st St NW Washington DC 20011


11.7 Applicable Law.

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

## ARTICLE XII

## STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

**GRANTOR:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability Company

_______________(SEAL)
By: Mel Melaku Negussie
Its: Managing Member

COUNTY OF District of Columbia ) SS:
STATE OF City of Washington

I hereby certify on this 24 day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_______________
NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: _______________

ROSA M. GREEN NOTARY PUBLIC DISTRICT OF COLUMBIA EXP. 9-30-24

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

**EXHIBIT A**

**LEGAL DESCRIPTION**

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

# EXHIBIT B

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

# COMMERCIAL DEED OF TRUST NOTE

**December 23, 2021** **$3,579,000.00**

## IMPORTANT NOTICE

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

## 1. BORROWER'S PROMISE TO PAY

FOR VALUE RECEIVED, the undersigned, **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC,** a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$3,579,000.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked. **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on the entire original principal balance of this Note from the date this Note is made,

until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$107,012.10** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$1,000.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

## 2. INTEREST

Interest shall accrue hereunder at the rate of **7.99%** per annum on the principal.

## 3. PAYMENTS

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **December 23, 2022** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

4. **BORROWER'S RIGHT TO PREPAY**

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

5. **BORROWER'S FAILURE TO PAY AS REQUIRED**

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

a. If default be made in any payment due under this Note;
b. If default be made in the performance of any other covenant contained in this Note;
c. If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
d. If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

## 6. OBLIGATIONS OF PERSONS UNDER THIS NOTE

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

5501 1st St NW Washington DC 20011


This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7. WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8. GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1629 K Street NW Suite 300, Washington, DC 20006; and to the Lender at the address stated in the first paragraph of this Note.

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

**9. <u>SUCCESSORS AND ASSIGNS</u>**

(a) Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent. Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b) Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c) Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "**Agent**"). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement. Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

**10. SEVERABILITY; RULES OF CONSTRUCTION**

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

**CONFESSION OF JUDGMENT**

**IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS**

**LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.**

**THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.**

**[SIGNATURE PAGE TO FOLLOW]**

5501 1st St NW Washington DC 20011
LOAN-006120
1st Trust

**BORROWER:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability Company

______________________(SEAL)
By: Mel Melaku Negussie
Its: Managing Member

______________________(SEAL)
By: Solomone Abebaw Desta
Its: Member

COUNTY OF District of Columbia ss:
STATE OF City of Washington

I hereby certify on this 24 day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

______________________
NOTARY PUBLIC

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

My commission expires: ______________________

ROSA M. GREEN NOTARY PUBLIC DISTRICT OF COLUMBIA EXP. 9-30-24

Case 24-10023-ELG-DLA Document 34-4 Filed 11/18/24 Page 623 of 169
Exhibit A - All Docket Entries with All Docket Entries Page 623 of 2207

# EXHIBIT C

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

# DEED OF TRUST

**THIS IS A HOME EQUITY CREDIT LINE DEED OF TRUST. DEFAULT ON PAYMENTS MAY RESULT IN THE LOSS OF YOUR HOME.** The noteholder and grantor have an agreement whereby the noteholder may make or contemplates making advances from time to time against the security described in this credit line deed of trust. The maximum aggregate amount of principal to be secured at any one time is $524,000.00. An explicit statement of the rights and obligations of the borrower (i.e., grantor) and the consequences of default are set forth herein.

**THIS DEED OF TRUST**, made effective as of December 23, 2021, by and between **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company, hereinafter referred to as the "Grantor" (index as Grantor), with an address of 1629 K Street NW Suite 300, Washington, DC 20006, and **Russell S. Drazin**, hereinafter referred to as the "Trustee" (index as Grantee), with an address of 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015.

WHEREAS, Grantor is justly indebted to **WCP Fund 1 LLC**, a Delaware Limited Liability Company, hereinafter referred to as the "Beneficiary," with an address of 2815 Hartland Road, Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement, for money borrowed in the amount of **$524,000.00** ("Loan Amount"), for which amount the said Grantor has made and delivered a certain Commercial Deed of Trust Note of even date herewith, in the original principal amount of the Loan Amount payable to the order of the Beneficiary (the "Note"); and

WHEREAS, the Grantor desires to secure the Beneficiary and any subsequent holder of the Note secured hereby the full and punctual payment of said debt, when and as the same shall become due and payable, as well as any and all renewals and extensions of said Note, or any part thereof, together with interest thereon, and the performance of the covenants and agreements herein and therein contained, and also to secure the reimbursement to the holder or holders of said Note or to the Trustee or substitute Trustee, and any purchaser or purchasers of said Note from the Beneficiary, or grantee or grantees under any sale or sales conducted by the Trustee or Substitute Trustee under the provisions of this Deed of Trust for all money which may be advanced as herein provided for, and for any and all costs and expenses incurred or paid on account of any litigation at law or in equity which may arise in respect to this Deed of Trust, or in respect to the indebtedness

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

or the property herein described, or in obtaining possession of the Mortgaged Property either before or after any sale which may be made as hereinafter provided for.

## ARTICLE I

## DEFINITIONS

1.0 Definitions.

Grantor, Trustee and Beneficiary agree that, unless the context otherwise specifies or requires, the following terms shall have the meaning herein specified, such definitions to be applicable equally to the singular and the plural forms of such terms and to all genders:

(a) Beneficiary - The party hereinabove designated as such, its successors and assigns.

(b) Event(s) of Default - Any of the happenings, events, circumstances or occurrences described in Article VII of this Deed of Trust.

(c) Grantor - The party hereinabove designated as such, and that party's heirs, survivors, administrators, executors, successors and assigns.

(d) Impositions - All (i) real estate taxes, and other taxes of every kind and character; and (ii) all water and sewer rents and charges; and (iii) all other public charges, taxes, homeowners association assessments, fees, governmental and non-governmental charges, to the extent any of the foregoing are imposed or assessed upon the Grantor or the Mortgaged Property or arising in respect of the occupancy, use or possession thereof.

(e) Improvements - Any and all buildings, structures, improvements, alterations or appurtenances now erected or at any time hereafter constructed, renovated, or placed upon the Mortgaged Property or any portion thereof and any replacements thereof.

(f) Indebtedness - The principal of and the interest on, and all other amounts, payments and premiums due on account of the Note and all other indebtedness of the Grantor to the Beneficiary payable pursuant to the Note.

(g) Land - The real estate described in "EXHIBIT A" attached hereto and by this reference made a part hereof.

(h) Leases - all leases, subleases, licenses, concessions, tenancies, occupancy agreements and other agreements entered into by or on behalf of Grantor demising, leasing or granting rights of possession or use of all or any portion of the Mortgaged Property, together with all modifications, extensions or renewals thereof now existing or hereafter executed.

(i) Mortgaged Property - The Land, the Improvements. , the Personal Property, all development rights transferred or appurtenant to the Land, all easements and other rights now or hereafter made appurtenant to the Land, all additions and accretions to the Land, all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Land in which Grantor has an interest, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements associated with the Land; and all proceeds of any of the foregoing.

(j) Note - The Commercial Deed of Trust Note made by the Grantor payable to the order of the Beneficiary of even date herewith, in the original principal amount of the Loan Amount, and all modifications, renewals, substitutions, and extensions of the aforesaid Note.

(k) Obligations - Any and all of the covenants, promises and other obligations (other than the Indebtedness) made or owing by the Grantor to the Beneficiary pursuant to or as otherwise set forth in this Deed of Trust.

(l) Person - shall mean any individual, corporation, partnership, joint venture, association, joint stock company, trust, trustee, estate, limited liability company, unincorporated organization, real estate investment trust, government or any agency or political subdivision thereof, or any other form of entity.

(m) Personal Property -- all "Accounts", "Cash proceeds", "Chattel paper", "Collateral", "Commercial tort claims", "Deposit accounts", "Documents", "Electronic chattel paper", "Equipment", "Fixtures", "General intangibles", "Goods", "Instruments", "Inventory", "Investment property", "Letter-of-credit rights", "Noncash proceeds", "Payment intangibles", "Proceeds", "Software", "Supporting Obligations", and "Tangible chattel paper", as defined in the Uniform Commercial Code, in which Grantor has any interest, whether currently owned or hereafter acquired, including but not limited to all such property relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the Land (whether or not subsequently removed from the Land), including, without limitation, all (i) machinery, tools, appliances, apparatus, equipment, and fittings; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers, and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) heating, lighting and plumbing fixtures, fire prevention and extinguishing apparatus, cooling and air-conditioning systems, elevators, escalators, fittings, plants, apparatus, stoves, ranges, refrigerators, laundry machines, tools, machinery, engines, dynamos, motors, boilers, incinerators, switchboards, conduits, compressors, vacuum cleaning systems, floor cleaning, waxing and polishing equipment, call systems, brackets, electrical signs, bulbs, bells, ash and fuel, conveyors, cabinets, lockers, shelving, spotlighting equipment, dishwashers, garbage disposals, washers and dryers; (viii) Leases, lease guarantees, contracts, contract rights, franchise agreements, licenses, permits and certificates; (ix) tenements, hereditaments and

appurtenances; (x) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xi) management agreements, service contracts, supply contracts or other contracts or agreements; (xii) warranties; (xiii) plans and specifications prepared for construction of Improvements on the Mortgaged Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Mortgaged Property, all environmental audits, studies and reports, approvals and agreements, and contracts and agreements of Grantor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of Improvements on the Mortgaged Property; (xiv) sales agreements, marketing studies, feasibility studies, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Mortgaged Property and other proceeds of the sale thereof; (xv) deposits made with or other security given to utility companies by Grantor with respect to the Mortgaged Property and/or Improvements; (xvi) advance payments of insurance premiums made by Grantor with respect to, and all claims or demands with respect to, insurance; (xvii) insurance proceeds (including insurance proceeds for insurance not required under the terms of this Security Instrument); (xviii) condemnation awards; and (xix) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Mortgaged Property and/or Improvements or for any loss or diminution in value of the Mortgaged Property and/or Improvements.

(n) Trustee - The parties hereinabove designated as such, their successors and substitutes.

## ARTICLE II

## GRANT

2.0 Grant.

NOW, THEREFORE, the Grantor, in consideration of the premises and of the sum of TEN and NO/100 DOLLARS ($10.00) lawful money of the United States of America, the receipt of which is hereby acknowledged by the Grantor, and in order to secure the payment of the Indebtedness and the Note and the performance and discharge of the Obligations, does by these presents, grant, give, bargain, sell, assign, convey, release, warrant, mortgage, transfer, hypothecate, pledge, set over and confirm unto the Trustee, their successors and assigns forever, in fee simple, the Mortgaged Property, TO HAVE AND TO HOLD the said Mortgaged Property unto the said Trustee, their successors and assigns, forever;

IN TRUST, to secure (a) the payment to the Beneficiary of the Indebtedness and all other sums due under the Note and/or this Deed of Trust, (b) the performance and discharge of the Obligations and of all covenants and agreements in the Note, (c) the performance and discharge of all covenants and agreements in all documents and/or instruments evidencing, securing, or otherwise relating to the Indebtedness (collectively, "Loan Documents") other than the Note and this Deed of Trust, (d) any and all future or

additional advances (whether or not obligatory) made by Beneficiary (i) to protect or preserve the Mortgaged Property or the lien or security interest created hereby on the Mortgaged Property, or (ii) for taxes, assessments, or insurance premiums as hereinafter provided, or (iii) for performance of any of Grantor's obligations hereunder or under the other Loan Documents, or (iv) for any other purpose provided herein or in the other Loan Documents (whether or not the original Grantor remains the owner of the Mortgaged Property at the time of such advances), together with interest thereon as provided for in the Note, and (e) any and all other indebtedness now owing or which may hereafter be owing by Grantor to Beneficiary, however and whenever incurred or evidenced, whether express or implied, direct or indirect, absolute or contingent, or due or to become due, and all renewals, modifications, amendments, restatements, consolidations, substitutions, replacements, and extensions thereof.

2.1 Possession.

Until the occurrence of an Event of Default, the Beneficiary shall promptly permit the Grantor to possess and enjoy the Mortgaged Property.

2.2 Condition of Grant.

The condition of these presents is such that if Grantor shall pay or cause to be paid the Indebtedness as and when the same shall become due and payable under the Note, and shall observe, perform and discharge the Obligations, then Beneficiary and the Trustee shall release and reconvey unto and at the cost of Grantor the Mortgaged Property whereupon this Deed of Trust shall cease and be void and the Mortgaged Property shall be released from the lien hereof at the cost of the Grantor.

## ARTICLE III

## REPRESENTATIONS AND WARRANTIES

3.0 Representations and Warranties.

Grantor hereby represents and warrants to Beneficiary that:

3.1 Validity of Loan Instruments.

(a) The execution, delivery and performance by Grantor of the Note and this Deed of Trust, (i) are within the legal powers of Grantor, and (ii) will not violate any provision of law, any order of any court or other agency of government, or any indenture, agreement or other instrument to which Grantor is a party or by which they or any of their property is bound or be in conflict with, result in a breach of or constitute (with due notice or lapse of time or both) a default under any such indenture, agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of its property or assets, except as contemplated herein; and (b) the Note does,

Case 24-00262-ELG Doc 1-1 Document 9/3/24 Filed 11/07/24 Page 62 of 169
Exhibit A - All Docket Entries With All Exhibits Page 66 of 169


and this Deed of Trust when executed and delivered by Grantor will, constitute the legal, valid and binding obligations of in accordance with their respective terms, subject to the limiting effect of applicable bankruptcy, insolvency, moratorium, reorganization or other similar laws of general applicability relating to creditor's rights, and the exercise of judicial discretion which may limit certain remedies therein provided.

3.2 Mortgaged Property and Other Property.

Grantor has good and marketable title in fee simple to the Mortgaged Property free and clear of any liens, charges, encumbrances, security interests and adverse claims whatsoever. This Deed of Trust is and will remain a valid and enforceable first lien on the Mortgaged Property. The Grantor has full power and lawful authority to subject the Mortgaged Property to the lien of this Deed of Trust in the manner and form herein contemplated. The Grantor will preserve such title, and will forever warrant and defend the same to the Trustee and will forever warrant and defend the validity and priority of the lien hereof against the claims of all persons and parties whomsoever.

## ARTICLE IV

## AFFIRMATIVE COVENANTS

4.0 Affirmative Covenants.

Until the entire Indebtedness shall have been paid in full, Grantor hereby covenants and agrees as follows:

4.1 Compliance with Laws.

Grantor will promptly, fully and faithfully comply with, conform to and obey all present and future laws, ordinances, rules, regulations, requirements which may be applicable to the manner of use, occupancy, possession, operation, maintenance, alteration, and repair of the Mortgaged Property.

4.2 Payment of Impositions.

Grantor will pay and discharge, or cause to be paid and discharged, not later than the due date thereof or the date any fine, penalty, interest or cost may be added thereto or imposed by or pursuant to law for the nonpayment thereof (whichever date shall first occur) or, at the direction of the Beneficiary, as soon as the same become liens, whether or not then due and payable, any Impositions upon or assessed against the Mortgaged Property or arising in respect of the occupancy, use or possession thereof. The Grantor will, upon the request of the Beneficiary, deliver to the Beneficiary from time to time receipts evidencing the payment of all such Impositions.

4.3 Repairs and Waste.

Grantor will at all times keep and maintain the Mortgaged Property in good order, condition and repair and will promptly make, from time to time, all repairs, renewals, replacements, additions and improvements, interior and exterior, structural and nonstructural, ordinary and extraordinary, foreseen and unforeseen, as may be necessary or desirable to accomplish the purposes of this Section. The Grantor will not commit any waste upon the Mortgaged Property or make or permit any change in the use of the Mortgaged Property which will in any way increase any ordinary fire or other hazard arising out of the operation thereof.

4.4. Insurance.

Grantor will keep the Improvements insured against loss by fire, casualty and such other hazards as may from time to time be required by the Beneficiary for the benefit of the Beneficiary. The Grantor shall maintain such public liability and indemnity insurance as may from time to time be reasonably required by the Beneficiary. All such insurance shall be written in forms, amounts and by companies satisfactory to the Beneficiary and losses thereunder, shall be payable to the Beneficiary pursuant to a standard mortgagee's endorsement. Duplicate originals of each such policy of insurance shall be delivered to the Beneficiary and the Grantor shall provide the Beneficiary with such evidence of the payment of premiums due on account of such insurance as may from time to time be required by the Beneficiary. All such policies shall provide that the same shall not be invalidated by any waiver of the right of subrogation by any insured and shall provide that the carrier shall have no right to be subrogated to the Beneficiary. All such policies shall provide for at least thirty (30) days' prior written notice to all insureds named thereon (including, without limitation, the Beneficiary) prior to any cancellation, surrender or modification thereof, including without limitation, cancellation for nonpayment of premium. The Grantor shall give the Beneficiary prompt notice of any loss covered by such insurance and the Beneficiary shall have the right to join the Grantor in adjusting any loss. Any funds received as payment for any loss under any such insurance shall be paid over to the Beneficiary and shall be applied by the Beneficiary, should there then exist any Event of Default hereunder that is continuing and not cured by Grantor, to the prepayment of the Indebtedness, without premium or penalty, or, should no Event of Default have occurred and be continuing uncured hereunder, then to the reimbursement of Grantor for expenses actually incurred by the Grantor in the restoration or replacement of the Improvements.

4.5 Restoration Following Casualty.

In the event of the happening of any casualty (including, without limitation, any casualty for which insurance was not obtained or obtainable) resulting in damage to or destruction of the Mortgaged Property or any part thereof, the Grantor shall give prompt written notice of the time, nature and extent thereto to the Beneficiary and, as long as no Event of Default exists hereunder that is continuing and not cured by Grantor, then the Beneficiary shall apply the proceeds of insurance to the restoration, repair or replacement of the Mortgaged Property or in the event the casualty was not insured, the Grantor shall,

at the sole cost and expense of the Grantor and whether or not the proceeds of insurance, if any, are sufficient for the purpose, promptly commence and diligently continue to restore, repair and replace the Mortgaged Property as nearly as possible to its condition immediately prior to such casualty.

4.6 Performance of Other Agreements.

Grantor will comply in a timely way, and otherwise abide by and perform, all of the terms, agreements, obligations, covenants, restrictions and warranties binding upon the Grantor under any easement, right-of-way, covenant, restriction, or other agreement with respect to or in any manner affecting the Mortgaged Property or any part thereof.

4.7 Further Assurances.

Grantor, at his/her/its sole cost and expense, will make, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignments, transfer and assurances as the Trustee or the Beneficiary shall from time to time reasonably require, for the better assuring, conveying, assigning, transferring and confirming unto the Trustee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Grantor may be or may hereafter become bound to convey or assign to the Trustee, or for carrying out the intention or facilitating the performance of the terms of this Deed of Trust or for filing, registering or recording this Deed of Trust.

4.8 Advances.

In the event the Grantor shall fail to perform any of the covenants contained herein then the Beneficiary, with or without notice to the Grantor, may, but shall not be required to, make advances to perform the same in its behalf, and all sums so advanced shall be a lien upon the Mortgaged Property and shall be secured hereby. Any advance so made shall be charged interest at the default rate provided herein.

4.9 Deposits for Taxes and Related Matters.

Beneficiary shall not require the Grantor to deposit with Beneficiary in escrow those amounts sufficient to discharge over time the Impositions and the premiums on the insurance required pursuant hereto unless an Event of Default has occurred.

4.10 Indemnity - Hold Harmless.

Grantor shall forever indemnify and save the Beneficiary and the Trustee harmless from all loss, liability, damage, costs and expenses, including, without limitation, reasonable attorneys' fees, and title and survey costs, incurred by reason of any action, suit, proceeding, hearing, motion or application before any Court or administrative body in or which the Beneficiary or the Trustee may be or become a party by reason of this Deed of

Trust, whether as holder of this Deed of Trust, as mortgagee-in-possession, as successor-in-interest to Grantor, by foreclosure deed or deed in lieu of foreclosure, including, without limitation, with respect to (a) any accident to, injury to or death of persons or loss of or damage to property occurring on or about the Mortgaged Property, (b)any failure on the part of the Grantor to perform or comply with any of the terms, covenants, conditions and agreements set forth in the this Deed of Trust, (c) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any other part thereof for construction or maintenance or otherwise, (d) any action brought against any party attacking the validity, priority or enforceability of this Deed of Trust, and/or (e) bankruptcy. All money paid or expended by Beneficiary or Trustee in connection with any of the foregoing, together with interest thereon from day of such payment at the default rate set forth in the Note, shall be so much additional indebtedness secured hereby and, except as otherwise provided herein, shall be immediately and without notice due and payable by Grantor. The obligations of the Grantor under this Section shall survive any foreclosure, deed in lieu of foreclosure, release, termination or satisfaction of this Deed of Trust.

4.11 Lockbox Access.

Grantor to install a combination lockbox on the subject Mortgaged Property and provide said lockbox combination to the Beneficiary. Lockbox is to remain located on property at all times during term of this Deed of Trust. Grantor irrevocably grants permission to Beneficiary and/or Trustee to enter into any improvement on the Mortgaged Property at any time and for any purpose consistent with ensuring Grantor's compliance with the terms and conditions of this Deed of Trust.

4.12 Sign Installation.

Grantor hereby allows Grantee to install a 18x24 sign in the yard of the Mortgaged Property during term of this Deed of Trust.

## ARTICLE V

## NEGATIVE COVENANTS

5.0 Negative Covenants

Until the Indebtedness shall have been paid in full, Grantor covenants and agrees as follows:

5.1 Other Liens - Transfers

Grantor will not, without the prior written consent of the Beneficiary, create or permit to be created or remain, any mortgage, pledge, lien, lease, encumbrance or charge or security interest, or conditional sale or other title retention agreement, with respect to

the Mortgaged Property or any part thereof or income therefrom, whether prior or subordinate to the lien of this Deed of Trust, except as otherwise consented to in writing by Beneficiary. Except for any grant, conveyance, sale, assignment or transfer of the Mortgaged Property which is conditioned upon the release of record of this Deed of Trust, the Grantor will not, without the prior written consent of the Beneficiary, make, create or consent to any grant, conveyance, sale, assignment or transfer of the Mortgaged Property or any part thereof, other than as consented to by Beneficiary.

5.2 Impairment of Security

Grantor will take no action which will in any manner impair the value of the Mortgaged Property or the security of this Deed of Trust.

5.3 Occupancy.

Unless otherwise agreed to in writing by the Beneficiary, Grantor shall not allow any person or persons to occupy the Mortgaged Property during the term of the Note.

## ARTICLE VI

## EMINENT DOMAIN – CONDEMNATION

6.0 Notice.

Grantor shall give the Trustee and the Beneficiary prompt written notice of the actual or threatened commencement of any proceedings under the power of condemnation or eminent domain affecting all or any part of the Mortgaged Property, and the Grantor will deliver to the Trustee and the Beneficiary true and complete copies of any and all documents and papers served upon the Grantor in connection with any such proceedings promptly following receipt thereof by the Grantor.

6.1 Assignment of Condemnation Awards.

Grantor hereby irrevocably assigns, transfers and sets over unto the Beneficiary all right, title, interest and estate of the Grantor in and to any award or payment made in respect of any proceeding under the power of condemnation or eminent domain relating to the Mortgaged Property and initiated subsequent to the recordation of this Deed of Trust.

6.2 Application of Proceeds.

All proceeds received by or for the account of the Beneficiary as a result of, or by agreement in anticipation or in lieu of, any exercise of the power of condemnation or eminent domain with respect to the Mortgaged Property, shall be applied by the Beneficiary in the following order of priority: (a) to reimburse the Beneficiary for all costs and expenses actually and reasonably incurred by the Beneficiary in connection with the

collection of such award or payment, including, without limiting the generality of the foregoing, reasonable attorney's fees; and (b) to the prepayment of the amount then due on account of the Indebtedness, without premium or penalty; and (c) to the Grantor. In the event, however, that in the opinion of the Beneficiary such taking will not materially affect the value of the Mortgaged Property, then the Beneficiary may disburse the entire proceeds of the taking to the Grantor; provided, however, that the Beneficiary shall then have the right to specify the manner in which such proceeds shall be disbursed by the Grantor; and, provided further, that the payment of the proceeds to the Grantor shall not affect the lien hereof or reduce the amount of Indebtedness.

## ARTICLE VII

## EVENTS OF DEFAULT

7.0 Events of Default.

The term "Event(s) of Default" shall mean the occurrence or happening, from time to time, of any one or more of the following or any other occurrences to/by the Grantor (both severally and/or jointly):

7.1 Payment of Indebtedness.

If the Grantor shall default in the payment of any portion of the Indebtedness when and as the same shall become due and payable under the Note.

7.2 Performance of Obligations.

If the Grantor shall default in the due observance or performance of any of the Obligations under the Note or this Deed of Trust.

7.3 Appointment by Receiver.

If by the order of a court of competent jurisdiction, a trustee, receiver or liquidator of the Mortgaged Property or any part thereof, or of the Grantor, shall be appointed and such order shall not be discharged or dismissed within ninety (90) calendar days after such appointment.

7.4 Voluntary Bankruptcy.

If the Grantor shall file a petition in bankruptcy or for an arrangement or for reorganization pursuant to the Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, or if, by decree of a court of competent jurisdiction, the Grantor shall be adjudicated a bankrupt, or be declared insolvent, or shall make an assignment for the benefit of creditors, or shall admit in writing his inability to pay his debts generally as they

5501 1st St NW Washington DC 20011


become due, or shall consent to the appointment of a receiver or receivers of all or any part of its property.

7.5 Involuntary Bankruptcy.

If any of the creditors of the Grantor shall file a petition in bankruptcy against the Grantor, pursuant to the Federal Bankruptcy Reform Act of 1978, as amended, or any similar law, federal or state, and if such petition shall not be discharged or dismissed within ninety (90) calendar days after the date on which such petition was filed.

7.6 Judgments.

If final judgment for the payment of money or the establishment of a mechanic's lien shall be rendered against the Grantor and the Grantor shall not discharge the same or cause it to be discharged within thirty (30) calendar days from the entry thereof, or shall not appeal therefrom or from the order, decree or process upon which or pursuant to which said judgment was granted, based or entered, and secure a stay of execution pending such appeal.

7.7 Transfer of Mortgaged Property.

With the exception of the sale of the Mortgaged Property, which sale is conditioned upon the release of the Mortgaged Property from the lien of this Deed of Trust, if Grantor shall transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein without, in any such case, the prior written consent of Beneficiary. NOTICE – THE INDEBTEDNESS SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY HEREIN CONVEYED IN TRUST.

7.8 Occupancy.

Grantor represents and covenants to Trustee and Beneficiary that, as of the effective date of this Deed of Trust (at the latest), the Mortgaged Property is vacant. Grantor further covenants to Trustee and Beneficiary that, so long as this Deed of Trust remains a lien against the Mortgaged Property, the Mortgaged Property will remain vacant and Grantor will not permit the Mortgaged Property to be occupied by anyone, including Grantor. Grantor further covenants that, to the extent that the Mortgaged Property was tenanted prior to the effective date of this Deed of Trust, Grantor properly adhered to all tenants rights laws with proper notices and procedures.

7.9 Other Indebtedness

Any default under or breach of any document or instrument evidencing or securing any indebtedness, obligation, or liability of any kind or nature – other than the Indebtedness

and the Obligations secured hereby – of Grantor or any guarantor of the Indebtedness, or any of their affiliates, to Beneficiary, whether now existing or hereafter created or arising, direct or indirect, material or immaterial, and whether absolute or contingent, joint, several or joint and severally and howsoever owned, held, or acquired.

7.10 Death or Incapacity

Upon the death or incapacity of the Grantor (if applicable) or of any guarantor of the Indebtedness (if applicable).

## ARTICLE VIII

## DEFAULT AND FORECLOSURE

8.0 Remedies.

If an Event of Default shall occur, then the Trustee or the Beneficiary may, at the option of the Beneficiary, exercise any or all of the following remedies:

(a) Foreclosure Sale. During the continuance of any such Event of Default, the Trustee personally or by its agents or attorneys, upon the instruction of the Beneficiary, may sell the Mortgaged Property, or any part or parts thereof, and all estate, right, title, interest, claims and demand therein, at public auction at such time and place and upon such terms and conditions as the Trustee may deem appropriate or as may be required or permitted by applicable law or rule of court, having first given, advertised, and published such notice of the time, place and terms of foreclosure/public auction by publication in at least one newspaper published or having a general circulation in the county, city or jurisdiction in which the Mortgaged Property is located, once a week for two successive weeks, or by such other methods, if any, as the Trustee or any title insurance company, insuring the lien hereof, may deem appropriate.

(b) Other Remedies. During the continuance of any Event of Default, the Trustee and the Beneficiary may take such other steps to protect and enforce their respective rights, whether by action, suit or proceeding in equity or at law, or in aid of any power granted in the Note or this Deed of Trust, or for the enforcement of any other appropriate legal or equitable remedy, or otherwise, as the Trustee or the Beneficiary may elect.

8.1 Adjournment of Sale.

The Trustee may adjourn from time to time any sale to be made under, or by virtue of this Deed of Trust by announcement at the time and place appointed for such sale or for such adjourned sale; and, except as otherwise provided by any rule of law, the Trustee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

8.2 Conveyance by Trustee.

Upon the completion of any sale or sales made by the Trustee under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Trustee or an officer of the court empowered so to do, shall execute and deliver to the purchaser or purchasers a good and sufficient instrument, or instruments, conveying, assigning and transferring all estate, right, title and interest in and to the Mortgaged Property and rights sold. The Trustee is hereby appointed the irrevocable true and lawful attorney of the Grantor in its name and stead to make all necessary conveyances, assignments, transfers and deliveries of the Mortgaged Property and rights so sold and for that purpose the Trustee may execute all necessary instruments of conveyance, assignment and transfer, and may substitute one or more persons with like power, the Grantor hereby ratifying and confirming all that its said attorney or such substitute or substitutes shall lawfully do by virtue hereof. Any such sale or sales made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of the Grantor in and to the properties and rights so sold, and shall be a perpetual bar, both at law and in equity, against the Grantor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under the Grantor.

8.3 Purchase by Beneficiary.

In the event of the sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, the Beneficiary shall be competent to bid for and acquire the Mortgaged Property or any part thereof.

8.4 Waiver of Redemption - Exemptions Waived.

Grantor will not at any time insist upon, or plead, or in any manner whatever claim or take any benefit or advantage of any stay or extension or moratorium law, any exemption from attachment, execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Deed of Trust, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; or after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted to redeem the property so sold or any part thereof, and the Grantor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any right, power or remedy herein granted or delegated to the Trustee or the Beneficiary, but to suffer and permit the execution of every power as though no such law or laws had been made or

enacted. The Grantor, for herself and all who claim under her, waives, to the extent that it lawfully may, the benefit of any homestead exemption and any and all right to have the Mortgaged Property marshaled upon any sale or foreclosure hereunder.

8.5 Remedies Cumulative and Concurrent.

No remedy conferred upon or reserved to the Trustee or the Beneficiary is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary shall be concurrent and may be pursued separately, successively or together against the Grantor; and every right, power and remedy given by this Deed of Trust to the Trustee or the Beneficiary may be exercised from time to time as often as may be deemed expedient by the Trustee or the Beneficiary.

8.6 Application of Proceeds.

The proceeds of any sale made under or by virtue of this Article, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, together with any other sums which may then be held by the Trustee or the Beneficiary pursuant to this Deed of Trust, shall be applied as follows:

(a) First, to the payment of the costs and expenses of such sale, including, without limitation, compensation to the Trustee and the Beneficiary, their respective agents and counsel, and of any judicial or other proceeding wherein the same may be made, and of all expenses, liabilities and advances made or incurred by the Trustee or the Beneficiary under this Deed of Trust, and all taxes and assessments due upon the Mortgaged Property at the time of such sale and to discharge any other lien prior to this Deed of Trust, except any taxes, assessments or other liens subject to which the Mortgaged Property shall have been sold.

(b) Second, to the payment of whatever may then remain unpaid on account of the Indebtedness, with interest thereon to the date of payment or as otherwise provided in the Note.

(c) Third, to the payment of any other sums required to be paid by the Grantor pursuant to any provision of the Note or this Deed of Trust, including, without limitation, all expenses, liabilities and advances made or incurred by the Beneficiary under this Deed of Trust or in connection with the enforcement thereof, together with interest on all such advances.

(d) Fourth, to the payment of the surplus, if any, to whomsoever may be lawfully entitled to receive the same upon the delivery and surrender of the Mortgaged Property sold and conveyed.

## ARTICLE IX

## THE TRUSTEE

9.0 Acceptance - Standard of Conduct

Trustee, by acceptance hereof, hereby covenants faithfully to perform and fulfill the trusts herein created; provided, however, that the Trustee shall be liable hereunder only for gross negligence, willful misconduct or bad faith. In any event, the Trustee shall be indemnified and forever held harmless by the Beneficiary for any action which the Trustee may take pursuant to and in reliance upon the written instructions of the Beneficiary.

9.1 Fees and Expenses.

Grantor shall pay all reasonable costs, fees and expenses of the Trustee, its agents and counsel, incurred in connection with the performance of the Trustee's duties hereunder. Nothing contained in this Deed of Trust shall be construed to require the Trustee to make any advances of funds for the benefit of either the Grantor or the Beneficiary for any reason or purpose.

9.2 Commissions on Sale.

In the event of any sale made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to retain as compensation a commission of 5.00% of the proceeds of such sale.

9.3 Commission on Advertisement.

Immediately upon the first publication of an advertisement of any sale to be made under or by virtue of Article VIII of this Deed of Trust, whether made under the power of sale therein granted or under or by virtue of judicial proceeding or of a judgment or decree of foreclosure and sale, Trustee shall be entitled to receive as compensation from the Grantor a commission of 2.50% of the total amount then due on account of the Indebtedness and, upon the first publication of any such advertisement, such commission shall be considered earned by the Trustee, payable by the Grantor, and a part of the Indebtedness. The commissions provided for in Sections 9.2 and 9.3 shall not be cumulative.

9.4 Resignation.

Trustee may resign at any time after thirty (30) calendar days' notice in writing to the Grantor and the Beneficiary.

9.5 Acts of Trustee.

In the event more than one person is designated as Trustee herein, then either or any of them may act without the other when the circumstances shall so require and the act of either or any of them shall be considered as the act of both or all.

9.6 Successor Trustee - Substitution.

The Beneficiary may remove the Trustee at any time or from time to time, with or without reason or cause. In the event of the death, removal, resignation, refusal to act or inability to act of the Trustee, or in the sole discretion of the Beneficiary for any reason, without notice to any party, and without application to any court, a successor or substitute Trustee may be appointed by the Beneficiary by a designation in writing of a successor Trustee by the filing for record in the office where this Deed of Trust is recorded of a Deed of Appointment. Such power of appointment may be exercised whenever and as often as the Beneficiary may consider it advisable and the exercise of such power of appointment, no matter how frequently, shall not be considered a termination thereof. Upon the recordation of any such Deed of Appointment, the successor or substitute trustee so appointed shall thereupon without further act or deed, become fully vested with the same title and estate in and to the Mortgaged Property as the Trustee, as aforesaid, and have all of the rights, powers, trusts, duties and authority of the Trustee. Whenever in the Note or this Deed of Trust reference is made to the Trustee, such reference shall be held and construed to mean the Trustee for the time being, whether original successor or substitute.

## ARTICLE X

## RELEASE

10.0 Release of Lien.

The lien of this Deed of Trust shall be released at the expense of the Grantor upon payment in full of the Indebtedness and satisfaction and discharge of the Obligations.

## ARTICLE XI

## MISCELLANEOUS

11.1 Notices.

All notices, demands, requests and other communications pursuant to the provisions of the Note and this Deed of Trust shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the respective addresses as follows:

(a) If to the Grantor, then to: **1629 K Street NW Suite 300, Washington, DC 20006**

(b) If to the Beneficiary, then to: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

(c) If to the Trustee, then to them at: **2815 Hartland Rd Suite 200, Falls Church, VA 22043, with a courtesy copy to Pardo & Drazin, LLC, Attn: Russell S. Drazin, Esquire, 4400 Jenifer Street, NW, Suite 2, Washington, DC 20015**

Any of the parties may designate a change of address by notice in writing to the other parties. Whenever in this Deed of Trust the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person or persons entitled to receive such notice.

11.2 Severability.

In the event any one or more of the provisions of this Deed of Trust shall for any reason be held to be invalid, illegal or unenforceable, in whole or in part or in any respect, or operates or would prospectively operate to invalidate this Deed of Trust, then and in either of those events, at the option of the Beneficiary, such provision or provisions only shall be held for naught and the remaining provisions of the Deed of Trust shall remain operative and in full force and effect and shall in no way be affected, prejudiced or disturbed thereby.

11.3Successors and Assigns.

(a) All of the grants, covenants, terms, provisions and conditions of the Note and this Deed of Trust shall run with and bind the Mortgaged Property and shall apply, bind and inure to the benefit of, the successors and assigns of the Grantor, the successors in trust of the Trustee, and all persons claiming under or through any of them.

(b)Notwithstanding anything to the contrary in this Deed of Trust, (i) there shall be no limitation or restriction on Beneficiary's ability to assign, pledge or otherwise transfer the Indebtedness or other Obligations, and (ii) Beneficiary may at any time assign all or a portion of the Indebtedness and other Obligations to one or more Persons (each a "Transferee") without providing notice to Grantor or obtaining Grantor's consent. Following any such assignment, (i) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Beneficiary hereunder, and (ii) the assigning Beneficiary shall have no further rights hereunder with respect to the assigned portion of Indebtedness and other Obligations. Grantor hereby acknowledges and agrees

that any such assignment will give rise to a direct obligation of Grantor to the Transferee and that the Transferee shall be considered to be a "Beneficiary" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, Note, Mortgaged Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(c)Any assignment pursuant to Section 11.3(b) above may be evidenced by a note, at the election of Beneficiary. Upon written notice from Beneficiary, Grantor shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Beneficiary may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Beneficiary and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(d) Beneficiary shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "Agent"). Grantor acknowledges that Agent shall have the sole and exclusive authority to execute and perform this Deed of Trust and each Loan Document on behalf of the Beneficiary, subject to the terms of any co-lending agreement. Grantor shall rely conclusively on the actions of Agent to bind the Beneficiary, notwithstanding that the particular action in question may, pursuant to this Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Beneficiary may resign or be replaced as Agent in accordance with the term of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

11.4 Modification - Waiver.

None of the terms or provisions of the Deed of Trust may be changed, waived, modified, discharged or terminated except by instrument in writing executed by the party or parties against which enforcement of the change, waiver, modification, discharge or termination is asserted.

11.5 Captions and Headings.

The captions and headings contained in this Deed of Trust are included herein for convenience of reference only and shall not be considered a part hereof and are not in any way intended to limit or enlarge the terms hereof.

11.6 Warranty.

The Grantor warrants generally the title to the Mortgaged Property.

11.7 Applicable Law.

This Deed of Trust shall be governed by and construed, interpreted and enforced in accordance with and pursuant to the laws of the jurisdiction in which the Mortgaged Property is located.

11.8 Time of Essence.

Time shall be of the essence of each and every provision of this Deed of Trust of which time is an element.

11.9 Business Purpose.

Grantor warrants that the proceeds of the Note and any and all other secured Indebtedness shall be used exclusively for the acquisition or conduct of a business or commercial enterprise and that the loan evidenced by the Note is a "commercial loan."

11.10 Tenant Leases and Rents.

(a) Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases, rents, issues, income and profits from the Mortgaged Property (collectively, "Income"). Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to collect, not more than one month in advance, and as trustee for the benefit of Beneficiary, the Income. Grantor shall apply the Income so collected first to payment of any and all amounts due under the Loan Documents and second to the funding of any escrows required under the Loan Documents. Thereafter, so long as no Event of Default exists, Grantor may use the Income in any manner not inconsistent with its obligations under the Loan Documents. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(b) Grantor shall not enter into any Lease without the express written consent of Beneficiary. Grantor does hereby absolutely and irrevocably assign, convey, transfer and set over to Beneficiary all of Grantor's right, title, estate and interest in and to all Leases. Such assignment shall not impose upon Beneficiary any duty to produce income from the Mortgaged Property. Beneficiary hereby grants to Grantor a license to operate and manage the Mortgaged Property under any and all Leases. The license granted hereby shall be revoked automatically upon the occurrence of an Event of Default hereunder.

(c) Grantor shall enforce all terms and conditions of all Leases and shall not permit any default by a tenant thereunder to continue longer than necessary to pursue its remedies. Grantor shall perform all of its obligations under and in respect of all Leases. In the event of a default by tenant under a Lease, Grantor shall diligently exercise all rights and

remedies available to Grantor therefor, including but not limited to termination, eviction and reletting.

(d) The foregoing subparagraphs (a), (b), and (c) shall not constitute, or be construed to be, Beneficiary's waiver of the requirement set forth herein and the other Loan Documents that the Mortgaged Property be and remain vacant and unoccupied during the term of the Note and so long as this Deed of Trust remains a lien upon the Mortgaged Property. Waiver of said requirement must be express and in writing separate and apart from foregoing subparagraphs (a), (b), and (c).

11.11 All Obligations.

This Deed of Trust is given to secure certain present and future Indebtedness and Obligations, including future advances, as provided in the Note. This Deed of Trust and the liens created hereby shall secure any and all Indebtedness and Obligations of Grantor to Beneficiary of every nature whatsoever, whether created heretofore or hereafter.

11.12 Assignment of Contracts

Grantor hereby irrevocably and unconditionally assigns its right, title, and interest in and to all contracts executed in connection with the Mortgaged Property and all contract rights arising therefrom. So long as no default or Event of Default exist under this Deed of Trust, the Note or any other Loan Documents, Beneficiary grants a license to Grantor to use the contracts and contract rights for the benefit of the Mortgaged Property. However, upon a default or Event of Default Deed of Trust, Grantor's license shall immediately and automatically be revoked, and Beneficiary, at its option, may assume the contracts; provided, however, Beneficiary shall not be liable for any amounts due under the contracts prior to the effective date of such assumption. Such assignment shall not impose upon Beneficiary any duty to assume or otherwise perform under such contracts.

11.13 Security Agreement.

For the purpose of securing the Indebtedness and Obligations, this Deed of Trust shall constitute a security agreement creating a security interest in (a) all Personal Property of Grantor included within or located on or to be delivered to the Mortgaged Property, including all such items of personal property hereafter acquired, and the proceeds thereof, and (b) all other Personal Property of Grantor relating in any way to the Indebtedness, Obligations, and/or the Loan Documents. Grantor hereby authorizes and agrees to execute and/or authorize such further agreements, instruments, financing statements, continuation statements, and other documents as may be necessary or appropriate to perfect and maintain the security interest herein granted to Beneficiary. Upon the occurrence of an Event of Default hereunder, Beneficiary shall have the remedies of a secured party under the Uniform Commercial Code for the jurisdiction in which the Mortgaged Property is located, including, without limitation, the right to take immediate possession of any

collateral. Any sale of such collateral may be held as a part of and in conjunction with a sale by Trustee of the Mortgaged Property.

ARTICLE XII

STATUTORY PROVISIONS

12.1 Statutory Provisions.

This Deed of Trust is made under and pursuant to the provisions of the statutes and regulations of the jurisdiction in which the Mortgaged Property is located, as amended, and shall be construed to impose and confer upon the parties hereto and Beneficiary all the rights, duties, and obligations prescribed by said statutes and regulations, as amended, except as herein otherwise restricted, expanded, or changed.

**IN WITNESS WHEREOF**, the said Grantor has executed these presents on the year and day first above written.

**[Signature Page to Follow]**

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

**GRANTOR:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability Company

_________________(SEAL)
By: Mel Melaku Negussie
Its: Managing Member

COUNTY OF District of Columbia ) SS:
STATE OF City of Washington

I hereby certify on this 24 day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

_________________
NOTARY PUBLIC

My commission expires: _________________

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

ROSA M. GREEN
NOTARY PUBLIC DISTRICT OF COLUMBIA
My Commission Expires September 30, 2024

ROSA M. GREEN NOTARY PUBLIC DISTRICT OF COLUMBIA EXP. 9-30-24

5505 1st St NW Washington DC 20011

5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

**EXHIBIT A**

**LEGAL DESCRIPTION**

5501 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Rev 5.2016

Case 24-10023-ELG Doc 1-2 Filed 11/04/24 Entered 11/04/24 Page 86 of 169
Exhibit A - All Docket Entries with All Pages Page 649 of 2207

**EXHIBIT "A"**
**Property Description**

**Closing Date:** **December 23, 2021**

**Borrower(s):** **Developer RE1 LLC**

**Property Address:** **5501 1st Street Northwest, Washington, DC 20011**

PROPERTY DESCRIPTION:

Property 1:
Lot 137 in Square 3389, in a subdivision made by 71 Kennedy ST Holdings LLC and 5505 1st ST Holdings LLC, as per plat recorded in Liber 215 at folio 65 among the Land Records of the Office of the Surveyor of the District of Columbia

Property 2:
Lots 71 and 72 in square numbered 3389, in the subdivision made by The Washington Land and Mortgage Company of part of a tract of land called 'CHILLUM CASTLE MANOR", now known as "CHILLUM CASTLE HEIGHTS", as per plat recorded in Liber 42 at folio 14 of the Records of the Office of the Surveyor for the District of Columbia.

NOTE: At the date hereof the above described land is designated on the Records of the Assessor for the District of Columbia for assessment and taxation purposes as part of Lot numbered 817 in Square numbered 3389.

Doc #: 2022000482
Filed & Recorded
01/03/2022 12:42 PM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS

| | |
|---|---|
| RECORDING FEES | $150.00 |
| SURCHARGE | $6.50 |
| RECORDATION TAX FEES | $13,100.00 |
| TOTAL: | $13,256.50 |

# EXHIBIT D

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

Prepared by and return to:
Washington Capital Partners
2815 Hartland Road, Suite 200
Falls Church, VA 22043
Attn: Victoria Junkins, Esq.

**COMMERCIAL DEED OF TRUST NOTE**

**December 23, 2021** **$524,000.00**

**IMPORTANT NOTICE**

**THIS INSTRUMENT CONTAINS A CONFESSION OF JUDGMENT PROVISION WHICH CONSTITUTES A WAIVER OF IMPORTANT RIGHTS YOU MAY HAVE AS A DEBTOR AND ALLOWS THE CREDITOR TO OBTAIN A JUDGMENT AGAINST YOU WITHOUT ANY FURTHER NOTICE.**

**1. BORROWER'S PROMISE TO PAY**

FOR VALUE RECEIVED, the undersigned, **DEVELOPER RE1 LLC**, a District of Columbia Limited Liability Company (the "Borrower"), promises to pay to the order of **WCP Fund 1 LLC,** a Delaware limited liability company, at 2815 Hartland Rd Suite 200, Falls Church, VA 22043, in its capacity as Agent (as hereinafter defined) under any co-lending agreement (together with its successors and assigns, the "Lender"), at such address and place, or at such other place or places as the Lender may from time to time designate in writing, the principal sum of **$524,000.00** (the "Loan Amount"), together with interest at the rate hereinafter provided, from the date of this Note (as set forth above) until paid. All amounts due under this Note are secured by a Deed of Trust of even date herewith ("Deed of Trust") on the real property referenced in the Deed of Trust ("Property"). Capitalized terms used in this Commercial Deed of Trust Note (this "Note") and not otherwise defined herein shall retain the meaning ascribed to such term in the Deed of Trust.

Borrower hereby assigns its right, title, and interest in and to all contracts and contract rights in connection with the Property. So long as no default or Event of Default exist under this Note or the related Deed of Trust, Lender grants a license to Borrower to use the contracts and contract rights to increase the value of the Property. However, upon a default or Event of Default under this Note or the related Deed of Trust, Borrower's license shall immediately and automatically be revoked. **[ASSIGNMENT OF CONTRACTS]**

Borrower expressly and specifically agrees that the entire original principal balance of this Note, or any part thereof, may be withheld from Borrower at the closing on the loan Amount memorialized by this Note and may be funded, if at all, in Lender's sole and absolute discretion. Borrower further expressly and specifically agrees that interest shall accrue on the entire original principal balance of this Note from the date this Note is made,

until repaid. If the loan Amount memorialized by this Note is not funded in whole or in part, so much of it as is unfunded shall be deemed repaid at the Maturity Date (defined below), applied in accordance with this Note. **[FUNDING]**

Borrower agrees to pay before or at the closing on the loan Amount memorialized by this Note **$15,667.60** to Lender as a loan Amount origination fee, **$0.00** to DP Capital LLC for a broker price opinion, and **$0.00** to Lender as processing fees and document prep fees. **[POINTS, FEES, AND COSTS]**

The final version of the loan Amount commitment between Borrower and Lender is incorporated herein by reference. In the event of any conflict between the aforementioned loan Amount commitment and this Note, the terms and conditions of this Note shall control. **[LOAN COMMITMENT]**

## 2. INTEREST

Interest shall accrue hereunder at the rate of **11.99%** per annum on the principal.

## 3. PAYMENTS

Payments of interest only shall be due and payable on the first day of each calendar month during the term of the loan evidenced by this Note.

If not sooner paid, the entire balance of the principal of this Note remaining unpaid, plus interest accrued thereon at the aforesaid rate not previously paid, and fees and costs, if any, shall be due and payable by Borrower in full by **December 23, 2022** (the "Maturity Date").

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year applied to the actual number of days funds are outstanding. Payments made on account hereof shall be applied first to the payment of late charges or other fees and costs owed to the Lender, next to the payment of any accrued and unpaid interest, and then to principal, or in such other order or proportion as the Lender, in its sole discretion, may elect from time to time.

The Borrower agrees to pay on demand any expenditures made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, condominium assessments, insurance premiums, and the cost of maintenance and preservation of the properties described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at the rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

All payments due hereunder shall be made in immediately available funds and constitute payment only when collected and/or the cash is actually received by the Lender.

## 4. BORROWER'S RIGHT TO PREPAY

The Borrower is permitted to prepay the principal indebtedness evidenced hereby in whole or in part prior to the Maturity Date without premium or penalty.

## 5. BORROWER'S FAILURE TO PAY AS REQUIRED

Before the Maturity Date, the entire principal sum outstanding, together with accrued interest thereon (as herein provided), fees and costs, if any, shall at once become due and payable at the option of the Lender without further notice, if any of the following occurs:

a. If default be made in any payment due under this Note;
b. If default be made in the performance of any other covenant contained in this Note;
c. If the legal or equitable title to any part or all of the Property becomes vested in anyone other than the Borrower without the Lender's prior written approval;
d. If default be made in the performance of any covenant under the Deed of Trust (the terms and provisions of which are incorporated herein by this reference as though fully set forth) which shall continue and remain uncured after any applicable grace period specified therein or in a written notice of default from the Lender to the Borrower.

Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity.

Upon a default in the payment of an amount due under this Note, after the expiration of any applicable grace period, or upon the occurrence of an "Event of Default", as that term is defined in the Deed of Trust, under the Deed of Trust, the holder of this Note may, in the holder's sole discretion and without notice or demand, in addition to any other remedy the holder of this Note may exercise, charge interest to the Borrower which shall accrue on the entire face value of this Note at the rate of **24%** per annum (the "Default Rate"). If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, fees and costs) shall bear interest at such Default Rate as of the date of entry of judgment.

Lender reserves the right at its sole discretion, to extend this Note on any date the loan evidenced hereby becomes due in full, either by maturity or by default, without giving notice to junior lienholders. The foregoing shall not imply any consent to any junior liens.

In the event any payment due under this Note, including the final payment, is paid more than five (5) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to **10.00%** of such installment. In the event the payment due is the balloon payment of this Note at its maturity, then the Lender shall be entitled to collect a late charge in an amount equal to **10.00%** of the original principal amount of this Note.

In the event it shall become necessary to employ counsel to collect this obligation or to protect the security hereof, the Borrower agrees to pay reasonable attorneys' fees, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust, and the enforcement of any guaranty.

## 6. OBLIGATIONS OF PERSONS UNDER THIS NOTE

**BORROWER HEREBY CERTIFIES THAT THIS LOAN IS FOR BUSINESS OR INVESTMENT PURPOSES ONLY AND SHALL NOT BE UTILIZED FOR THE PURCHASE OF AN OWNER OCCUPIED PRINCIPAL RESIDENCE.**

**BORROWER FURTHER CERTIFIES THAT THIS PROPERTY SHALL NOT BE RENTED TO OTHERS OR OCCUPIED IN ANY WAY DURING THE TERM OF THIS LOAN. OCCUPANCY OF THE PROPERTY IS STRICTLY PROHIBITED AND WILL RESULT IN IMMEDIATE DEFAULT.**

**BORROWER ATTESTS THAT IN THE EVENT OF ANY TENANCY PRIOR TO THE CLOSING OF THIS LOAN, THAT HE/SHE/IT PROPERLY ADHERED TO ALL TENANTS RIGHTS LAWS WITH PROPER NOTICES AND PROCEDURES. ANY ACTION TAKEN TO REMEDY SUCH RIGHTS DURING THE COURSE OF THIS LOAN WILL BE THE FULL RESPONSIBILITY OF BORROWER, AND IN THE EVENT LENDER NEEDS TO EMPLOY COUNSEL TO REMEDY SUCH ACTIONS, LENDER HAS FULL AUTHORITY TO COLLECT ALL REASONABLE ATTORNEYS' FEES AND ADDITIONAL COSTS FROM BORROWER.**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Lender may enforce its rights under this Note against each person individually or against all of such persons together. This means that any one of the Borrowers, guarantors, sureties or endorsers may be required to pay all of the amounts owed under this Note.

This Note shall be the obligation of the makers hereof and shall apply to and bind their respective successors, personal representatives, executors, survivors, heirs, and assigns.

## 7. WAIVERS

The Borrower and any endorsers, guarantors and sureties jointly and severally waive the rights of Presentment, Notice of Dishonor, demand for performance, notice of nonperformance, protests, notice of protest, notice of default, demands, notice of demands, notice of non-payment and other notice and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof. "Presentment" means the right to require the Lender to demand payment of amounts due. "Notice of Dishonor" means the right to require the Lender to give notice to other persons that amounts due have not been paid.

The Borrower and any other person who has obligations under this Note waive the benefit of the homestead exemption as to the Property described herein and in the Deed of Trust.

The Borrower hereby (i) covenants and agrees not to elect a trial by jury of any issue triable of right by a jury, and (ii) waives any right to trial by jury fully to the extent that any such right shall now or hereafter exist. This waiver of right to trial by jury is separately given, knowingly and voluntarily, by the Borrower, and this waiver is intended to encompass individually each instance and each issue as to which the right to a jury trial would otherwise accrue. The Lender is hereby authorized and requested to submit this Note to any court having jurisdiction over the subject matter and the parties hereto, so as to serve as conclusive evidence of the Borrower's waiver of the right to jury trial. Further, the Borrower hereby certifies that no representative or agent of the Lender (including the Lender's counsel) has represented, expressly or otherwise, to the Borrower that the Lender will not seek to enforce this waiver of right to jury trial provision.

## 8. GIVING OF NOTICES

All notices, demands, requests and other communications required pursuant to the provisions of this Note shall be in writing and shall be deemed to have been properly given or served for all purposes when presented personally, or one business day after having been sent by a nationally recognized overnight delivery service or a local courier service, charges prepaid, or three (3) calendar days after having been sent by United States Registered or Certified Mail - Return Receipt Requested, postage prepaid, to the Borrower at:1629 K Street NW Suite 300, Washington, DC 20006; and to the Lender at the address stated in the first paragraph of this Note.

The Lender and Borrower may designate a change of address by notice in writing to the other party. Whenever in this Note the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice.

## 9. SUCCESSORS AND ASSIGNS

(a) Notwithstanding anything to the contrary in this Note, (i) there shall be no limitation or restriction on Lender's ability to assign, pledge or otherwise transfer its rights and obligations under this Note, and (ii) Lender may at any time assign all or a portion of this Note to one or more Persons (each a "Transferee") without providing notice to Borrower or obtaining Borrower's consent. Following any such assignment, (1) the Transferee thereunder shall be a party hereto and, have the same rights, benefits and obligations as the Lender hereunder, and (2) the assigning Lender shall have no further rights hereunder with respect to the assigned portion of this Note. Borrower hereby acknowledges and agrees that any such assignment will give rise to a direct obligation of Borrower to the Transferee and that the Transferee shall be considered to be a "Lender" hereunder. Each Transferee shall have all of the rights, obligations and benefits with respect to the Indebtedness, Obligations, this Note, Property and/or Loan Documents held by it as fully as if the original holder thereof. Agent (as hereinafter defined) may disclose to any Transferee all information, reports, financial statements, certificates and documents obtained under any provision of any Loan Document.

(b) Any assignment pursuant to Section 9(a) above may be evidenced by a replacement note at the election of Lender. Upon written notice from Lender, Borrower shall promptly (and in any event within three (3) business days after any such request) execute and deliver to Agent any such documents as Lender may require to confirm such assignment, evidence the Indebtedness, and/or to otherwise effectuate such assignment including, without limitation, original replacement notes in form and substance satisfactory to Agent and payable to the order of Lender and/or a Transferee in an aggregate principal amount equal to the stated principal amount of the Loan.

(c) Lender shall act as initial administrative noteholder for itself and any Transferee (together with any successor administrative noteholder, the "**Agent**"). Borrower acknowledges that Agent shall have the sole and exclusive authority under this Note and each Loan Document on behalf of the Lender, subject to the terms of any co-lending agreement. Borrower shall rely conclusively on the actions of Agent to bind the Lender, notwithstanding that the particular action in question may, pursuant to the Deed of Trust or any co-lending agreement be subject to the consent or direction of another Person. Lender may resign or be replaced as Agent in accordance with the terms of any co-lending agreement and upon such removal or resignation, a successor Agent shall be appointed in accordance with the terms of any co-lending agreement.

5505 1st St NW Washington DC 20011


**10. SEVERABILITY; RULES OF CONSTRUCTION**

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the affected provision) of this Note; but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

Time is of the essence as to all provisions of this Note.

**CONFESSION OF JUDGMENT**

**IF ANY AMOUNT PAYABLE UNDER THIS NOTE IS NOT PAID WHEN AND AS DUE, OR IF BORROWER SHALL OTHERWISE BE IN DEFAULT UNDER THIS NOTE OR UNDER ANY OF THE DOCUMENTS EVIDENCING OR SECURING THIS NOTE OR THE LOAN EVIDENCED HEREBY, BORROWER AND ANY ENDORSERS HEREOF HEREBY IRREVOCABLY APPOINT RUSSELL S. DRAZIN OR ANY OTHER ATTORNEY AUTHORIZED TO PRACTICE LAW IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED TO APPEAR FOR BORROWER, AND IN BORROWER'S NAME TO CONFESS JUDGMENT AGAINST BORROWER, IN ANY FEDERAL OR STATE COURT OF COMPETENT JURISDICTION IN THE JURISDICTION WHERE THE PROPERTY IS LOCATED OR OF ANY OTHER STATE, TERRITORY OR JURISDICTION OF THE UNITED STATES, OR IN ANY COURT OF COMPETENT JURISDICTION,FOR ALL PRINCIPAL, INTEREST AND OTHER AMOUNTS DUE UNDER THIS NOTE, TOGETHER WITH ALL COSTS, EXPENSES AND ACTUAL ATTORNEYS FEES AS SPECIFIED HEREIN. WITH RESPECT TO SUCH APPEARANCES, BORROWER EXPRESSLY WAIVES SUMMONS AND ALL OTHER PROCESS. THE EXEMPTION OF PERSONAL PROPERTY FROM LEVY AND SALE IS HEREBY EXPRESSLY WAIVED BY THE BORROWER AND NO BENEFIT OF EXEMPTION SHALL BE CLAIMED BY THE BORROWER UNDER ANY EXEMPTION LAW NOW IN FORCE OR WHICH MAY BE HEREAFTER ADOPTED, INCLUDING BUT NOT LIMITED TO THE BENEFIT OF ANY AND ALL HOMESTEAD EXEMPTIONS WHICH ARE HEREBY WAIVED. BORROWER WAIVES THE BENEFIT OF ANY AND EVERY STATUTE, ORDINANCE OR RULE OF COURT WHICH MAY BE LAWFULLY WAIVED CONFERRING UPON THE BORROWER ANY RIGHT OR PRIVILEGE, OR EXEMPTION, STAY OF EXECUTION, APPEAL OR SUPPLEMENTARY PROCEEDINGS, OR OTHER RELIEF FROM THE ENFORCEMENT, OR IMMEDIATE ENFORCEMENT OF A CONFESSED JUDGMENT OR RELATED PROCEEDINGS ON A JUDGMENT. BORROWER CONSENTS TO VENUE IN THE JURISDICTION WHERE THE PROPERTY IS**

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

**LOCATED, WITH RESPECT TO THE INSTITUTION OF AN ACTION CONFESSING JUDGMENT HEREON, REGARDLESS OF WHERE VENUE WOULD OTHERWISE BE PROPER. ANY JUDGMENT ENTERED AGAINST BORROWER, WHETHER BY CONFESSION OR OTHERWISE, SHALL BEAR INTEREST AT A RATE WHICH IS THE HIGHEST RATE OF INTEREST BEING PAID BY BORROWER HEREUNDER ON THE DATE OF JUDGMENT. THE AUTHORITY AND POWER TO APPEAR FOR AND ENTER JUDGMENT AGAINST BORROWER SHALL NOT BE EXHAUSTED BY ONE OR MORE EXERCISES THEREOF, OR BY ANY IMPERFECT EXERCISE THEREOF, AND SHALL NOT BE EXTINGUISHED BY ANY JUDGMENT ENTERED PURSUANT THERETO; SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS AS OFTEN AS THE LENDER OR ITS ASSIGNS SHALL DEEM NECESSARY OR ADVISABLE UNTIL ALL SUMS DUE HEREUNDER HAVE BEEN PAID IN FULL.**

**THE VALIDITY AND CONSTRUCTION OF THIS NOTE AND ALL MATTERS PERTAINING THERETO ARE TO BE DETERMINED ACCORDING TO THE LAWS OF THE JURISDICTION WHERE THE PROPERTY IS LOCATED WITHOUT REGARD TO ITS CONFLICTS OF LAW PRINCIPLES.**

**[SIGNATURE PAGE TO FOLLOW]**

5505 1st St NW Washington DC 20011
5501 1st St NW Washington DC 20011
LOAN-006182
2nd Trust

**BORROWER:**

**DEVELOPER RE1 LLC,**
a District of Columbia Limited Liability Company

________________________(SEAL)
By: Mel Melaku Negussie
Its: Managing Member

COUNTY OF City of Washington ) SS:
STATE OF District of Columbia )

I hereby certify on this 24 day of December, 2021, before me in the jurisdiction aforesaid, did personally appear Mel Melaku Negussie, known or satisfactorily proven to be the person(s) whose name(s) is set forth in the within instrument, and executed the within instrument and acknowledged the same instrument to be his/her act and deed for the purposes herein contained and in the capacity herein stated.

________________________
NOTARY PUBLIC

My commission expires: ROSA M. GREEN NOTARY PUBLIC DISTRICT OF COLUMBIA My Commission Expires September 30, 2024



# EXHIBIT E

**Subject:** Payoff status of 5505 1st and Kennedy project
**Date:** Thursday, November 3, 2022 at 2:53:28 PM Eastern Daylight Time
**From:** Daniel Huertas
**To:** mel negussie
**CC:** Christina Araujo

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

5505 1st matures late December and it is only fair to ask the current status of your process.

Looking forward to your response.

Regards,

Daniel

# EXHIBIT F

**Subject:** RE: Payoff status of 5505 1st and Kennedy project
**Date:** Tuesday, November 15, 2022 at 2:32:40 PM Eastern Standard Time
**From:** Daniel Huertas
**To:** mel negussie
**CC:** Christina Araujo

Hi Mel,

I hope all is well. Just following up on the refinance progress on both projects.

As you know we are unable to release any more draws.

Looking forward to your response.

Regards,

Daniel

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Thursday, November 3, 2022 3:04 PM
**To:** Daniel Huertas <daniel@wcp.team>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Re: Payoff status of 5505 1st and Kennedy project

Hi Daniel,

I am sorry I missed your call.

We are working to refinance out 5505 1st street and 423 Kennedy.

I will keep you posted as we make progress.

Thanks,
Mel

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Thursday, November 3, 2022 at 2:53 PM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Payoff status of 5505 1st and Kennedy project

Mel –

I hope all is well. I just tried calling you regarding the status of the payoffs of both loans. As you understand, we will not be working with you after the maturity of 5505 and also any draws regarding Kennedy.

# EXHIBIT G

**Subject:** Re: Payoff status of 5505 1st and Kennedy project
**Date:** Thursday, November 17, 2022 at 10:36:32 AM Eastern Standard Time
**From:** mel negussie
**To:** Daniel Huertas
**CC:** Christina Araujo

We are planning to refinance both with MainStreet Bank.

I will be asking for updated payoffs for 423 Kennedy shortly.

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Thursday, November 17, 2022 at 10:35 AM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>
**Subject:** Re: Payoff status of 5505 1st and Kennedy project

Mel -

Can you please provide detail information including lender information please ?

What you just sent does not help us.
Thanks

Sent from my iPhone

> On Nov 17, 2022, at 10:33 AM, mel negussie <mel@ntconstruction.net> wrote:
>
> HI Daniel,
>
> My apologies for the delayed response.
>
> Yes, we are working and making progress to refinance both projects out of WCP.
>
> Regards,
> Mel

---

# EXHIBIT H

**Subject:** 71 Kennedy (5505 1st Street)
**Date:** Wednesday, November 30, 2022 at 11:58:47 AM Eastern Standard Time
**From:** mel negussie
**To:** Cara Farley, Leslie Calderas
**CC:** Darralyn Brown
**Priority:** High

HI Leslie/Cara,

Can you please send the payoffs for 5505 1st Street as soon as you are able?

Thanks,
Mel

# EXHIBIT I

**Subject:** Re: 71 Kennedy (5505 1st Street)
**Date:** Wednesday, November 30, 2022 at 2:05:19 PM Eastern Standard Time
**From:** Cara Farley
**To:** mel negussie
**CC:** Leslie Calderas, Hailey Thomas, Darralyn Brown

Requests received. We will send it once approved.

Thanks!

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Wednesday, November 30, 2022 1:45 PM
**To:** Cara Farley <cfarley@wcp.team>
**Cc:** Leslie Calderas <lcalderas@wcp.team>; Hailey Thomas <hailey@wcp.team>; Darralyn Brown <darralyn@districttitle.com>
**Subject:** Re: 71 Kennedy (5505 1st Street)

December 23. Thanks

Mel Negussie
(202) 775-0457 w
(202) 271-5046 c

On Nov 30, 2022, at 1:38 PM, Cara Farley <cfarley@wcp.team> wrote:

Hi Mel,

Payoff requests received. What good through date would you like?

Thanks!

---

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Wednesday, November 30, 2022 11:58 AM
**To:** Cara Farley <cfarley@wcp.team>; Leslie Calderas <lcalderas@wcp.team>
**Cc:** Darralyn Brown <darralyn@districttitle.com>
**Subject:** 71 Kennedy (5505 1st Street)

HI Leslie/Cara,

Can you please send the payoffs for 5505 1st Street as soon as you are able?

Thanks,
Mel

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

# EXHIBIT J

**Subject:** Demand for Payoffs: 419-423 Kennedy St & 5505 1st St
**Date:** Thursday, December 8, 2022 at 6:56:23 PM Eastern Standard Time
**From:** Leslie Calderas
**To:** mel negussie
**CC:** Christina Araujo, Daniel Huertas, Cara Farley, Hailey Thomas
**Attachments:** image001.png, Notice of Default 5505 1st St NW.pdf, Payoff Statement -- 5505 1st St NW Washington DC 20011 2nd.pdf, Payoff Statement -- 5505 1st St NW Washington DC 20011 (1st).pdf, Payoff Statement -- 419-423 Kennedy St NW Washington DC 20011 2nd.pdf, Payoff Statement -- 419-423 Kennedy St NW Washington DC 1st (3).pdf, Notice of Default 419 Kennedy St NW # 423.pdf

Hello Mel,

Attached please find payoff statements and notice of default letters for both properties in reference. Let us know if you have any questions.

Best,

**Wire fraud is on the rise, so always call to confirm wiring instructions before sending.

**Please allow at least 5 business days for payoffs to be processed. There is a $50 fee for every payoff request. If you need a payoff within 5 business days, you can request expedited processing which is an additional $200 fee.

Leslie Calderas I Servicing Manager
Washington Capital Partners
www.washingtoncapitalpartners.com
8401 Greensboro Dr Suite 960
McLean, VA 22102
(703) 940-5190

WASHINGTON
CAPITAL PARTNERS

*This message, including any attachments, may contain confidential, proprietary, privileged, and/or private information from Washington Capital Partners. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.*

# EXHIBIT K

WASHINGTON
CAPITAL PARTNERS
8401 Greensboro Dr, Suite 960
McLean, Virginia 22102
www.wcp.team

12/08/2022

**VIA EMAIL <mel@ntconstruction.net>**

Mel Negussie
1629 K Street NW Suite 300
Washintong DC 20006

Attn: Mel Negussie

Re: **NOTICE OF DEFAULT**

5505 1st St NW Washington, DC 20011

Dear Sir or Madam:

I am the Vice President of Finance for Washington Capital Partners. I'm writing to inform you that your business entity is presently in default for the Loan regarding the above captioned property, secured by that certain Deed of Trust, a copy of the first page of which is enclosed hereto as **Exhibit A.** Additionally, you signed a Guaranty for the Loan.

This is your last notice before our legal counsel commences foreclosure proceedings. Immediate payment is required to avoid foreclosure. Please contact me within 48 hours to obtain either a Payoff Statement or an amount to bring the loan current. Late fees at 10.00% have been assessed and the default interest at 24.00% per annum is accruing.

Furthermore, if you do not cure the a default or pay the Loan off immediately we will commence foreclosure proceedings for this Loan. All payoff requests must be made in writing.

As your lender, we will exercise all rights and remedies available at law and equity. My contact information is below, and should I not hear from you as noted above, and payment is not made immediately, then, as noted above, our legal counsel will commence foreclosure proceedings.

Best,
Washington Capital Partners

**Washington Capital Partners**
**Servicing Department**
**8401 Greensboro Dr Suite 960**
**McLean, VA 22102**
**Office - (703)-348-0549 ext. 924**
**Email - servicing@wcp.team**

# EXHIBIT L

8401 Greensboro Dr, Suite 960
McLean, Virginia 22102
www.wcp.team

12/08/2022

**VIA EMAIL <mel@ntconstruction.net>**

Mel Negussie
1140 3rd St NE 2nd Floor
Washintong DC 20002

Attn: Mel Negussie

Re: **NOTICE OF DEFAULT**

419 Kennedy St NW # 423 Washington DC 20011

Dear Sir or Madam:

I am the Vice President of Finance for Washington Capital Partners. I'm writing to inform you that your business entity is presently in default for the Loan regarding the above captioned property, secured by that certain Deed of Trust, a copy of the first page of which is enclosed hereto as **Exhibit A.** Additionally, you signed a Guaranty for the Loan.

This is your last notice before our legal counsel commences foreclosure proceedings. Immediate payment is required to avoid foreclosure. Please contact me within 48 hours to obtain either a Payoff Statement or an amount to bring the loan current. Late fees at 10.00% have been assessed and the default interest at 24.00% per annum is accruing.

Furthermore, if you do not cure the a default or pay the Loan off immediately we will commence foreclosure proceedings for this Loan. All payoff requests must be made in writing.

As your lender, we will exercise all rights and remedies available at law and equity. My contact information is below, and should I not hear from you as noted above, and payment is not made immediately, then, as noted above, our legal counsel will commence foreclosure proceedings.

Best,
Washington Capital Partners

**Washington Capital Partners**
**Servicing Department**
**8401 Greensboro Dr Suite 960**
**McLean, VA 22102**
**Office - (703)-348-0549 ext. 924**
**Email - servicing@wcp.team**

# EXHIBIT M

WASHINGTON CAPITAL PARTNERS

GREAT SERVICE
BETTER RATES
FASTER CLOSINGS

# Payoff Statement

12/08/2022

DEVELOPER RE1 LLC
1629 K Street NW
Washington, DC 20006

**Property Address: 5505 1st St NW Washington DC 20011**

Amount Due: $4,139,852.46 as of 12/23/2022.

| | |
|---|---|
| Loan Principal: | $3,579,000.00 |
| Interest Owed (as of 8/30/22): | $198,584.79 |
| Default Interest Owed (as of payoff date): | $276,776.00 |
| Interest Paid: | ($272,458.33) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $50.00 |
| Default Penalty: | $357,900.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$4,139,852.46** |

**Payoff good through 12/23/2022. Per diem $2,386.00.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT postclosing@wcp.team.**

**Payable to:** **WCP Servicing LLC**
**8401 Greensboro Dr Suite 960**
**McLean, VA 22102**

**Bank Name: United Bank**
**Routing Number:** [redacted]
**Account Number:** [redacted]

When sending the wire please reference our loan number, LOAN-006120 and borrower DEVELOPER RE1 LLC.

Sincerely,
Leslie Calderas
Leslie Calderas

# EXHIBIT N

WASHINGTON CAPITAL PARTNERS

GREAT SERVICE
BETTER RATES
FASTER CLOSINGS

# Payoff Statement

12/08/2022

DEVELOPER RE1 LLC
1629 K Street NW
Washington, DC 20006

**Property Address: 5505 1st St NW Washington DC 20011**

Amount Due: $599,947.92 as of 12/23/2022.

| | |
|---|---|
| Loan Principal: | $524,000.00 |
| Interest Owed (as of 8/30/22): | $43,630.28 |
| Default Interest Owed (as of payoff date): | $40,522.67 |
| Interest Paid: | ($60,655.03) |
| Unpaid Late Fees: | $0.00 |
| Construction Draw Balance: | ($0.00) |
| Payoff Fee: | $50.00 |
| Default Penalty: | $52,400.00 |
| Pre-Paid Interest Balance: | ($0.00) |
| **Amount Due:** | **$599,947.92** |

**Payoff good through 12/23/2022. Per diem $349.33.**

**YOU MUST COLLECT ALL FEES AND COSTS ASSOCIATED WITH RECORDING THE CERTIFICATE OF SATISFACTION ON THE HUD-1. ONCE THE CERTIFICATE OF SATISFACTION HAS BEEN RECORDED BY YOUR OFFICE, PLEASE EMAIL US A COPY FOR OUR RECORDS AT postclosing@wcp.team.**

**Payable to:** **WCP Servicing LLC**
**8401 Greensboro Dr Suite 960**
**McLean, VA 22102**

**Bank Name: United Bank**
**Routing Number:** [redacted]
**Account Number:** [redacted]

When sending the wire please reference our loan number, LOAN-006182 and borrower DEVELOPER RE1 LLC.

Sincerely,

Leslie Calderas

Leslie Calderas

# EXHIBIT O

**James D. Sadowski**

**From:** Russell S. Drazin <rdrazin@pardodrazin.com>
**Sent:** Friday, December 9, 2022 4:59 PM
**To:** James D. Sadowski
**Subject:** RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

**Importance:** High

Jim –

I represent WCP Fund I LLC, the noteholder and/or servicer in connection with the loans (collectively, the "Loans") encumbering the Properties (as defined in your below email).

This email amplifies and supersedes the Notices of Default issued yesterday (December 8, 2022).

----------------------------------------

**5501 1st Street, NW (Lot 138 in Square 3389) (formerly 67-71 Kennedy Street, NW (Lot 137 in Square 3389) and 5505 1st Street, NW (Lot 817 in Square 3389))**

There is a massive Water/Sewer balance due and owing to DC Water ($44,857.93). DC Water recorded an actual lien in the Land Records (Certificate of Delinquent Water/Sewer Charges dated August 29, 2022 and recorded on August 30, 2022 as Instrument No. 2022090397). The delinquent Water/Sewer balance is a lien superior to the liens of the Deeds of Trust encumbering 5501 1st Street, NW.

Second-Half 2022 Real Estate Taxes were due and payable no later than September 15, 2022. DEVELOPER RE1 LLC did not timely pay those Taxes. Payment was not made until October 16 and 19, 2022.

In the Notes and Deeds of Trust, DEVELOPER RE1 LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (*i.e.*, acceleration) in the event that DEVELOPER RE1 LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide DEVELOPER RE1 LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any other loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default.

**423 Kennedy Street, NW (Lot 0056 in Square 3260)**

The District recorded a Certificate of Delinquent Fines dated November 17, 2022 and recorded on November 17, 2022 as Instrument No. 2022114185.

In the Notes and Deeds of Trust, 423 KENNEDY ST HOLDINGS LLC agreed that any unpaid principal, accrued interest, and other charges would become immediately due and payable prior to the maturity date (*i.e.*, acceleration) in the event that 423 KENNEDY ST HOLDINGS LLC defaulted under the Notes or Deeds of Trust prior to the maturity date. The Loans being commercial mortgage loans, neither District of Columbia law nor the Notes or Deeds of Trust provide 423 KENNEDY ST HOLDINGS LLC with any right to notice of default and acceleration or any right to cure a default.

There is no right to cure. There is no right to deceleration. There is no right to reinstatement.

The Loans are in default and are accelerated.

Section 7.9 of the Deeds of Trust states that any default or breach of any loans, obligations, etc. of Borrower *or Borrower's affiliates* is an Event of Default.

---------------------------------------

This is without waiver of or prejudice to any other Events of Default under the Loans.

---------------------------------------

Payment in full of the defaulted Loans (with all default interest, default penalties, etc.) is demanded.

---------------------------------------

I am adding you to my "notice list" for the notices of foreclosure sale.

---------------------------------------

Thank you.

Enjoy your weekend.

Russell

Russell S. Drazin
**pardo | drazin** LLC
4400 Jenifer Street, NW, Suite 2
Washington, DC 20015
(202) 223-7900 (main)
(202) 223-7901 (facsimile)
(202) 683-1562 (direct)
rdrazin@pardodrazin.com
www.pardodrazin.com

Privileged and Confidential Communication

This email may contain privileged and/or confidential information. If the reader of this email is not an intended recipient, you are

hereby notified that you have received this email in error and that any review, dissemination, or copying is strictly prohibited. If you have received this email in error, please notify me immediately and delete the email. Except in instances in which I have made direct reference above to redlining or "track changes" that are expressly conveyed for review, it is my intent to remove all metadata from the attachments to this email, and any metadata that may be found therein has been produced inadvertently and should not be reviewed.

---

**From:** James D. Sadowski [mailto:JDS@gdllaw.com]
**Sent:** Friday, December 9, 2022 1:50 PM
**To:** Russell S. Drazin <rdrazin@pardodrazin.com>
**Cc:** mel negussie <mel@ntconstruction.net>
**Subject:** RE: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mr. Drazin:

This law firm represents Developer RE1, LLC and 423 Kennedy St Holdings, LLC, the respective owners of 423 Kennedy Street, N,W., and 5501 1st Street, N.W., in Washington DC (the "Properties").

I have reviewed what purports to be a "Notice of Default" for each property, neither of which cites the basis for the alleged "default" under any Deed of Trust or other document. Copies of the "Notice of Default" that I have reviewed (for each property) are attached to this email.

According to our clients, there are no defaults of any kind under any of the loan documents for either of the Properties.

Please identify the factual basis for the alleged "defaults", which should include the reason that Washington Capital Partners ("WCP") has claimed that there is a "default". Your reply should include a citation to the provision(s) in the Deed of Trust (or any other loan document) that the WCP claims has been breached by our clients.

As you also know, the debt on the Properties is in the process of being refinanced, and the alleged "default" notices that were sent have already put those refinance transactions in jeopardy. As a result, our clients fully reserve any and all rights that they have to the extent that it is determined that the WCP has manufactured "defaults" under the loan documents to put either financial pressure, or any other, improper pressure, on our clients.

Please respond immediately, but not later than 4:00 pm today. I look forward to your prompt response.

Thanks.

Jim

James D. Sadowski, Esq.
Greenstein DeLorme & Luchs, P.C.
801 17th Street, N.W.
Suite 1000
Washington, D.C. 20006
Phone: 202.452.1400, x5407
Fax: 202.452.1410
E-mail: jds@gdllaw.com

THE INFORMATION CONTAINED IN THIS COMMUNICATION IS CONFIDENTIAL, MAY BE ATTORNEY-CLIENT PRIVILEGED, MAY CONSTITUTE INSIDE INFORMATION, AND IS ONLY INTENDED FOR THE USE OF THE ADDRESSEE. UNAUTHORIZED USE, DISCLOSURE, OR COPYING IS STRICTLY PROHIBITED, AND MAY BE UNLAWFUL. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE IMMEDIATELY NOTIFY US AT THE FOLLOWING: administrator@gdllaw.com. THANK YOU. FOR MESSAGES TO CONSUMER DEBTORS: THIS MESSAGE, AND ALL OTHERS FROM THIS OFFICE, IS A COMMUNICATION FROM A DEBT COLLECTOR IN AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.

**From:** mel negussie <mel@ntconstruction.net>
**Sent:** Friday, December 9, 2022 1:08 PM
**To:** James D. Sadowski <JDS@gdllaw.com>
**Subject:** FW: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

---

**From:** Daniel Huertas <daniel@wcp.team>
**Date:** Friday, December 9, 2022 at 9:15 AM
**To:** mel negussie <mel@ntconstruction.net>
**Cc:** Christina Araujo <christina@wcp.team>, Leslie Calderas <lcalderas@wcp.team>, Russel Drazin <rdrazin@pardodrazin.com>
**Subject:** Fwd: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St

Mel -

In this email I cc Russell Drazin, WCP's legal counsel. Please direct all questions related to your default to him. If you have legal representation please forward this email with his information.

Thank you

Daniel

Sent from my iPhone

Begin forwarded message:

> **From:** mel negussie <mel@ntconstruction.net>
> **Date:** December 8, 2022 at 9:11:40 PM EST
> **To:** Leslie Calderas <lcalderas@wcp.team>
> **Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
> **Subject: Re: Demand for Payoffs: 419-423 Kennedy St & 5505 1st St**
>
> Dear Christina and Leslie,
>
> Can you please provide me the basis for the Notice of Default for both loans we have with WCP?
>
> Regards,
> Mel Negussie
>
> ---
>
> **From:** Leslie Calderas <lcalderas@wcp.team>
> **Date:** Thursday, December 8, 2022 at 6:57 PM
> **To:** mel negussie <mel@ntconstruction.net>
> **Cc:** Christina Araujo <christina@wcp.team>, Daniel Huertas <daniel@wcp.team>, Cara Farley <cfarley@wcp.team>, Hailey Thomas <hailey@wcp.team>
> **Subject:** Demand for Payoffs: 419-423 Kennedy St & 5505 1st St
>
> Hello Mel,

Attached please find payoff statements and notice of default letters for both properties in reference. Let us know if you have any questions.

Best,

**Wire fraud is on the rise, so always call to confirm wiring instructions before sending.**

**Please allow at least 5 business days for payoffs to be processed. There is a $50 fee for every payoff request. If you need a payoff within 5 business days, you can request expedited processing which is an additional $200 fee.**

**Leslie Calderas | Servicing Manager**

Washington Capital Partners
https://link.edgepilot.com/s/5491bd5f/BM5MUgnupE2wAw98b1FkKg?u=http://www.washingtoncapitalpartners.com/
8401 Greensboro Dr Suite 960
McLean, VA 22102
(703) 940-5190

WASHINGTON
CAPITAL PARTNERS

*This message, including any attachments, may contain confidential, proprietary, privileged, and/or private information from Washington Capital Partners. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying, or storage of this message or its attachments is strictly prohibited.*

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

# EXHIBIT P

**Subject:** PETITION FOR ADMINISTRATIVE HEARING - 5501 First St NW - Account #2002583-9 - Account Dispute
**Date:** Thursday, September 22, 2022 at 2:35:02 PM Eastern Daylight Time
**From:** mel negussie
**To:** Administrative.Hearings@dcwater.com
**BCC:** Chapman Paret
**Priority:** High
**Attachments:** 5501 First St - Administrative Hearing Petition[2].pdf, February-June 2022 Water Bills 5501 First St NW.pdf, Plumbers Report 5501 First St NW VR Electric[5].pdf

Dear Administrative Hearing Officer,
Attached are the following:

1. Petition for Administrative Hearing.
2. Invoices from February to June 2022.
3. Plumber's Report.

We respectfully request that the DC Water decision be reversed as to the dispute being untimely because we never got the invoices until very recently as fully explained in the Petition.
Thank you.

Mel Negussie
(202)271-5046 cell

dc water is life®

David L. Gadis, Chief Executive Officer

DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY | 1385 CANAL STREET, SE | WASHINGTON, DC 20003

September 22, 2022

Good Day,

DC Water values you as a customer and we are grateful for the opportunity to be of service. We are writing to inform you that we recently received the following dispute.

| | | | |
|---|---|---|---|
| Case Number: | 22-594546 | | |
| Account Name: | 2002583-9 | Account Number: | 2002583-9 |
| Service Address: | 5501 1st St NW | Bill Class: | Commercial |
| Dispute Date: | 09/22/22 | CCF: | 2,156.99 |
| Bill Period (Start): | 01/20/22 | Bill Period (End): | 06/16/22 |
| Meter Size: | 1" | Read Type: | Act |
| Bill Date(s): | 02/23/22, 03/18/22, 04/19/22, 05/18/22, 06/16/22 | | |

We regret to inform you that the dispute deadline date for these charges has expired; however, if you are still experiencing unusual water usage, please contact our Customer Service Department on (202) 354-3600 so that one of our Customer Care Associates may review your usage history and provide you with the most appropriate options to investigate your water consumption.

If you disagree with DC Water's decision and would like to present evidence that your dispute was received within the dispute deadline date, or other evidence to further your case, please complete the Petition for Administrative Hearing section below to request a hearing, and return a copy of this letter to Administrative.Hearings@dcwater.com.

Please note that your request for a hearing must be filed within 15 calendar days of the date of this notice. Additionally, submission of your request for a hearing does not constitute a continuous dispute of subsequent charges. **Future bills must be paid or disputed by their respective due dates**.

Best Regards,
Escalations Team

**PETITION FOR ADMINISTRATIVE HEARING**

**Indicate your relationship to the property:** Owner__ Legal/Rep__ Tenant__ 3rd Party/Non-Occupant__ Mgt Company_
**Indicate the property occupancy status during the dispute period:** Vacant__ Occupied__(Number of Occupants ______)
**Daytime/Best Contact Phone Number:** 202-271-5046 **Email:** mel@ntconstruction.net

Please provide a statement of facts concerning the disputed charges. Include supporting data, facts, or evidence upon which you, the petitioner, rely as justification for challenging the charges. Please attach a copy of all documents (i.e., plumber's report, invoices, etc.) that are pertinent to the investigation.

We disagree with DC Water's decision that this dispute is untimely because: We never got the February to June 2022 invoices, including the last one dated June 16, 2022 (see attached invoices for this period).
We recently became aware that there is a large outstanding amount owed, and we quickly contacted DC Water Customer Service to address the matter. We purchased the property at the located at 5501 First St NW at the end of December 2021. Right after we purchased this property, we inspected the premises, and found no water leak. The building has not been occupied since the purchase. From the time of purchase up until recently, we never received an invoice. We discovered there was a leak in June 2022, and as soon as we discovered it, we had the water shut off at the property by a licensed plumber. Attached is the plumber's report/letter regarding discovery of the leak.
We respectfully request that the DC Water decision that the dispute is untimely be reversed because we never received the attached invoices until recently.

:om

Signature *Mel Negussie* Date 09/22/22

# EXHIBIT Q

Please review the payment request information below for your payment to the District of Columbia Office of Tax and Revenue.

Your payment request confirmation number is **0-005-421-688**

| | |
|---|---|
| SSL: | 3389- -0138 |
| Amount Paid: | $16,522.89 |
| Submitted Date: | 16-Oct-2022 |

This is only the payment request. Please review you bank statement to confirm that this transaction was successful.

**OOPS?** If you want to make a change, it is not too late. While a payment is still pending, you can return to your account, cancel the payment, and make a new one.

Payments pending in MyTax.DC.gov can be cancelled before 7pm Eastern Standard Time of the payment date entered. Payments that have a status of *In Process* or *Completed* cannot be cancelled.

Contact Us:
(202) 759-1946
e-services.otr@dc.gov

# EXHIBIT R

**Subject:** Payment request submitted
**Date:** Wednesday, October 19, 2022 at 8:55:38 PM Eastern Daylight Time
**From:** DoNotReply_MyTax@dc.gov
**To:** mel negussie

Please review the payment request information below for your payment to the District of Columbia Office of Tax and Revenue.

Your payment request confirmation number is: **0-005-473-466**
Your request confirmation code is: **dmgcxd**

| | |
|---|---|
| Payment Amount: | $222.28 |
| Payment Date: | 19-Oct-2022 |
| Submitted Date: | 19-Oct-2022 |

This is only the payment request. Please review your bank statement to confirm that this transaction was successful.

Contact Us:
(202) 759-1946
e-services.otr@dc.gov

To subscribe to real property tax bill notifications, click here.

*Please do not reply to this email. If you have specific questions about your tax account(s), please log in to MyTax.DC.gov and send a secure message to the Office of Tax and Revenue's (OTR) e-Services Unit. To safeguard your identity and tax information, OTR will never ask for password information.*

# EXHIBIT S

**Property: 5501 1st St NW Washington DC 20011-5207**

**Interest Payments**

| Date | DOT1 | DOT2 |
|---|---|---|
| 12/23/2021 | $ 7,149.05 | $ 1,570.69 |
| 2/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 3/1/2022 | $ 22,241.50 | $ 4,886.59 |
| 4/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 5/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 6/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 7/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 8/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 9/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 10/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 11/1/2022 | $ 24,624.51 | $ 5,410.15 |
| 12/1/2022 | $ 23,830.18 | $ 5,235.63 |
| 1/1/2023 | $ 24,624.51 | $ 5,410.15 |
| **TOTAL** | **$ 297,082.84** | **$ 65,270.85** |

| | |
|---|---|
| **GRAND TOTAL** | **$ 362,353.69** |

WASHINGTON
CAPITAL PARTNERS

| 1 Information<br>View payment information | 2 Payment Method<br>Select payment method | 3 Account Information<br>Select/Add bank account | 4 Confirm Payment |
|---|---|---|---|

**Borrower Information**

DEVELOPER RE1 LLC
Mel Negussie
1629 K Street NW Suite 300 Washington, DC 20006

**Loan Information**

5505 1st St NW Washington, DC - District of Columbia 20011

| | |
|---|---|
| Loan Name: | LOAN-006182 |
| Loan Amount: | $524,000.00 |
| Interest Rate: | 11.99% |
| Current Construction Balance: | $0.00 |
| Construction Disbursed To Date: | $0.00 |
| Pre-paid Interest Balance: | $0.00 |
| Maturity Date: | 12/23/2022 |
| Loan Servicer: | WCP Servicing |

Auto pay is off

**Payment Information**

Payment Due Date: 07/10/2023

**Current Status: Paid**
This payment was already marked scheduled.

Need to update your Borrower Information displayed here or do you have questions? Call us at (703) 940-5190 or email us at servicing@wcp.team.

https://payment-link.azurewebsites.net/p/hqbhzxi4xrsu3mcfdstuv25sem

5505 1st St NW Washington DC 20011-5207 — Paid
Payment Amount: $1,570.69, Due Date: 12/23/2021

WASHINGTON CAPITAL PARTNERS

| | | | |
|---|---|---|---|
| 1 Information<br>View payment information | 2 Payment Method<br>Select payment method | 3 Account Information<br>Select/Add bank account | 4 Confirm Payment |

## Borrower Information

**DEVELOPER RE1 LLC**
Mel Negussie
1629 K Street NW Suite 300 Washington, DC 20006

## Loan Information

**5505 1st St NW Washington, DC - District of Columbia 20011**

| | |
|---|---|
| Loan Name: | LOAN-006120 |
| Loan Amount: | $3,579,000.00 |
| Interest Rate: | 7.99% |
| Current Construction Balance: | $0.00 |
| Construction Disbursed To Date: | $0.00 |
| Pre-paid Interest Balance: | $0.00 |
| Maturity Date: | 12/23/2022 |
| Loan Servicer: | WCP Servicing |

Auto pay is off

### Payment Information

**Payment Due Date: 07/10/2023**

**Current Status: Paid**
This payment was already marked scheduled.

Need to update your Borrower Information displayed here or do you have questions? Call us at (703) 940-5190 or email us at servicing@wcp.team.

https://payment-link.azurewebsites.net/p/wemncil6kzuufc2oho5fnlwrca

5505 1st St NW Washington DC 20011-5207 — Paid
Payment Amount: $7,149.05, Due Date: 12/23/2021


WASHINGTON CAPITAL PARTNERS

1 Information — View payment information
2 Payment Method — Select payment method
3 Account Information — Select/Add bank account
4 Confirm Payment

**Borrower Information**

DEVELOPER RE1 LLC
Mel Negussie
1629 K Street NW Suite 300 Washington, DC 20006

**Loan Information**

5505 1st St NW Washington, DC - District of Columbia 20011

| | |
|---|---|
| Loan Name: | LOAN-006182 |
| Loan Amount: | $524,000.00 |
| Interest Rate: | 11.99% |
| Current Construction Balance: | $0.00 |
| Construction Disbursed To Date: | $0.00 |
| Pre-paid Interest Balance: | $0.00 |
| Maturity Date: | 12/23/2022 |
| Loan Servicer: | WCP Servicing |

Auto pay is off

**Payment Information**

Payment Due Date: 07/10/2023

Current Status: Paid
This payment was already marked scheduled.

Need to update your Borrower Information displayed here or do you have questions? Call us at (703) 940-5190 or email us at servicing@wcp.team.

https://payment-link.azurewebsites.net/p/f2q5h2herzzexmcuhjyifqmxly


5505 1st St NW Washington DC 20011-5207 — Paid
Payment Amount: $5,410.15, Due Date: 02/01/2022




https://payment-link.azurewebsites.net/p/ksvjeak4y55e7cxwx7xoozkb64



WASHINGTON CAPITAL PARTNERS

1 **Information** View payment information | 2 Payment Method Select payment method | 3 Account Information Select/Add bank account | 4 Confirm Payment

## Borrower Information

**DEVELOPER RE1 LLC**
Mel Negussie
1629 K Street NW Suite 300 Washington, DC 20006

## Loan Information

**5505 1st St NW Washington, DC - District of Columbia 20011**

| | |
|---|---|
| Loan Name: | LOAN-006120 |
| Loan Amount: | $3,579,000.00 |
| Interest Rate: | 7.99% |
| Current Construction Balance: | $0.00 |
| Construction Disbursed To Date: | $0.00 |
| Pre-paid Interest Balance: | $0.00 |
| Maturity Date: | 12/23/2022 |
| Loan Servicer: | WCP Servicing |

Auto pay is off

## Payment Information

**Payment Due Date: 07/10/2023**

**Current Status: Paid**
This payment was already marked scheduled.

Need to update your Borrower Information displayed here or do you have questions? Call us at (703) 940-5190 or email us at servicing@wcp.team.

https://payment-link.azurewebsites.net/p/gmzjptk7siauppgvqo47vxew5i

5505 1st St NW Washington DC 20011-5207 — Paid
Payment Amount: $22,241.50, Due Date: 03/01/2022

Case 24-00180-ELG Document 702 Filed 11/18/24 Page 139 of 169
Exhibit A - Affidavit of Page 702 of 2207

WASHINGTON CAPITAL PARTNERS

| 1 Information | 2 Payment Method | 3 Account Information | 4 Confirm Payment |
|---|---|---|---|
| View payment information | Select payment method | Select/Add bank account | |

**Borrower Information**

DEVELOPER RE1 LLC
Mel Negussie
1629 K Street NW Suite 300 Washington, DC 20006

**Loan Information**

5505 1st St NW Washington, DC - District of Columbia 20011

| | |
|---|---|
| Loan Name: | LOAN-006182 |
| Loan Amount: | $524,000.00 |
| Interest Rate: | 11.99% |
| Current Construction Balance: | $0.00 |
| Construction Disbursed To Date: | $0.00 |
| Pre-paid Interest Balance: | $0.00 |
| Maturity Date: | 12/23/2022 |
| Loan Servicer: | WCP Servicing |

Auto pay is off

**Payment Information**

Payment Due Date: 07/10/2023

**Current Status: Paid**
This payment was already marked scheduled.

Need to update your Borrower Information displayed here or do you have questions? Call us at (703) 940-5190 or email us at servicing@wcp.team.

https://payment-link.azurewebsites.net/p/lzgl67px4liufgacedaflcdkdu

5505 1st St NW Washington DC 20011-5207 — Paid
Payment Amount: $4,886.59, Due Date: 03/01/2022

WASHINGTON CAPITAL PARTNERS

1 Information — View payment information
2 Payment Method — Select payment method
3 Account Information — Select/Add bank account
4 Confirm Payment

## Borrower Information

**DEVELOPER RE1 LLC**
Mel Negussie
1629 K Street NW Suite 300 Washington, DC 20006

## Loan Information

**5505 1st St NW Washington, DC - District of Columbia 20011**

| | |
|---|---|
| Loan Name: | LOAN-006120 |
| Loan Amount: | $3,579,000.00 |
| Interest Rate: | 7.99% |
| Current Construction Balance: | $0.00 |
| Construction Disbursed To Date: | $0.00 |
| Pre-paid Interest Balance: | $0.00 |
| Maturity Date: | 12/23/2022 |
| Loan Servicer: | WCP Servicing |

Auto pay is off

## Payment Information

**Payment Due Date: 07/10/2023**

**Current Status: Paid**
This payment was already marked scheduled.

Need to update your Borrower Information displayed here or do you have questions? Call us at (703) 940-5190 or email us at servicing@wcp.team.

https://payment-link.azurewebsites.net/p/yzpa3n44h5zejfqrsleyyhmrym

5505 1st St NW Washington DC 20011-5207 — Paid
Payment Amount: $24,624.51, Due Date: 04/01/2022

Case 24-10023-ELG Doc 1-2 Filed 11/18/24 Entered 11/18/24 Page 141 of 169

WASHINGTON CAPITAL PARTNERS

1 Information — View payment information | 2 Payment Method — Select payment method | 3 Account Information — Select/Add bank account | 4 Confirm Payment

**Borrower Information**

DEVELOPER RE1 LLC
Mel Negussie
1629 K Street NW Suite 300 Washington, DC 20006

**Loan Information**

5505 1st St NW Washington, DC - District of Columbia 20011

| | |
|---|---|
| Loan Name: | LOAN-006182 |
| Loan Amount: | $524,000.00 |
| Interest Rate: | 11.99% |
| Current Construction Balance: | $0.00 |
| Construction Disbursed To Date: | $0.00 |
| Pre-paid Interest Balance: | $0.00 |
| Maturity Date: | 12/23/2022 |
| Loan Servicer: | WCP Servicing |

Auto pay is off

**Payment Information**

Payment Due Date: 07/10/2023

**Current Status: Paid**
This payment was already marked scheduled.

Need to update your Borrower Information displayed here or do you have questions? Call us at (703) 940-5190 or email us at servicing@wcp.team.

https://payment-link.azurewebsites.net/p/d3w2fql27mfunejlkvllizumfm

5505 1st St NW Washington DC 20011-5207 — Paid
Payment Amount: $5,410.15, Due Date: 04/01/2022

WASHINGTON CAPITAL PARTNERS

1 **Information** View payment information | 2 Payment Method Select payment method | 3 Account Information Select/Add bank account | 4 Confirm Payment

## Borrower Information

**DEVELOPER RE1 LLC**
Mel Negussie
1629 K Street NW Suite 300 Washington, DC 20006

## Loan Information

**5505 1st St NW Washington, DC - District of Columbia 20011**

| | |
|---|---|
| Loan Name: | LOAN-006120 |
| Loan Amount: | $3,579,000.00 |
| Interest Rate: | 7.99% |
| Current Construction Balance: | $0.00 |
| Construction Disbursed To Date: | $0.00 |
| Pre-paid Interest Balance: | $0.00 |
| Maturity Date: | 12/23/2022 |
| Loan Servicer: | WCP Servicing |

Auto pay is off

## Payment Information

**Payment Due Date: 07/10/2023**

**Current Status: Paid**
This payment was already marked scheduled.

Need to update your Borrower Information displayed here or do you have questions? Call us at (703) 940-5190 or email us at servicing@wcp.team.

https://payment-link.azurewebsites.net/p/r6erh7x535yezhylap6ou3otiy

5505 1st St NW Washington DC 20011-5207 — Paid
Payment Amount: $23,830.18, Due Date: 05/01/2022

WASHINGTON CAPITAL PARTNERS

| 1 Information<br>View payment information | 2 Payment Method<br>Select payment method | 3 Account Information<br>Select/Add bank account | 4 Confirm Payment |
|---|---|---|---|

**Borrower Information**

DEVELOPER RE1 LLC
Mel Negussie
1629 K Street NW Suite 300 Washington, DC 20006

**Loan Information**

5505 1st St NW Washington, DC - District of Columbia 20011

| | |
|---|---|
| Loan Name: | LOAN-006182 |
| Loan Amount: | $524,000.00 |
| Interest Rate: | 11.99% |
| Current Construction Balance: | $0.00 |
| Construction Disbursed To Date: | $0.00 |
| Pre-paid Interest Balance: | $0.00 |
| Maturity Date: | 12/23/2022 |
| Loan Servicer: | WCP Servicing |

Auto pay is off

**Payment Information**

Payment Due Date: 07/10/2023

**Current Status: Paid**
This payment was already marked scheduled.

Need to update your Borrower Information displayed here or do you have questions? Call us at (703) 940-5190 or email us at servicing@wcp.team.

https://payment-link.azurewebsites.net/p/d2pcoslb46gutkikkqyxzbyvca

5505 1st St NW Washington DC 20011-5207 — Paid
Payment Amount: $5,235.63, Due Date: 05/01/2022

WASHINGTON CAPITAL PARTNERS

1 Information — View payment information | 2 Payment Method — Select payment method | 3 Account Information — Select/Add bank account | 4 Confirm Payment

**Borrower Information**

DEVELOPER RE1 LLC
Mel Negussie
1629 K Street NW Suite 300 Washington, DC 20006

**Loan Information**

5505 1st St NW Washington, DC - District of Columbia 20011

| | |
|---|---|
| Loan Name: | LOAN-006182 |
| Loan Amount: | $524,000.00 |
| Interest Rate: | 11.99% |
| Current Construction Balance: | $0.00 |
| Construction Disbursed To Date: | $0.00 |
| Pre-paid Interest Balance: | $0.00 |
| Maturity Date: | 12/23/2022 |
| Loan Servicer: | WCP Servicing |

Auto pay is off

**Payment Information**

Payment Due Date: 07/10/2023

**Current Status: Paid**
This payment was already marked scheduled.

Need to update your Borrower Information displayed here or do you have questions? Call us at (703) 940-5190 or email us at servicing@wcp.team.

https://payment-link.azurewebsites.net/p/y34iwxninxauporpzmnk2brfqm

5505 1st St NW Washington DC 20011-5207 — Paid
Payment Amount: $5,410.15, Due Date: 06/01/2022

WASHINGTON CAPITAL PARTNERS

| 1 Information<br>View payment information | 2 Payment Method<br>Select payment method | 3 Account Information<br>Select/Add bank account | 4 Confirm Payment |
|---|---|---|---|

**Borrower Information**

DEVELOPER RE1 LLC
Mel Negussie
1629 K Street NW Suite 300 Washington, DC 20006

**Loan Information**

5505 1st St NW Washington, DC - District of Columbia 20011

| | |
|---|---|
| Loan Name: | LOAN-006120 |
| Loan Amount: | $3,579,000.00 |
| Interest Rate: | 7.99% |
| Current Construction Balance: | $0.00 |
| Construction Disbursed To Date: | $0.00 |
| Pre-paid Interest Balance: | $0.00 |
| Maturity Date: | 12/23/2022 |
| Loan Servicer: | WCP Servicing |

Auto pay is off

**Payment Information**

Payment Due Date: 07/10/2023

**Current Status: Paid**
This payment was already marked scheduled.

Need to update your Borrower Information displayed here or do you have questions? Call us at (703) 940-5190 or email us at servicing@wcp.team.

https://payment-link.azurewebsites.net/p/4xvy3ths7e7uxec57jkuh2544e

5505 1st St NW Washington DC 20011-5207 — Paid
Payment Amount: $24,624.51, Due Date: 06/01/2022

WASHINGTON
CAPITAL PARTNERS

1 **Information** View payment information | 2 Payment Method Select payment method | 3 Account Information Select/Add bank account | 4 Confirm Payment

**Borrower Information**

**DEVELOPER RE1 LLC**
Mel Negussie
1629 K Street NW Suite 300 Washington, DC 20006

**Loan Information**

**5505 1st St NW Washington, DC - District of Columbia 20011**

| | |
|---|---|
| Loan Name: | LOAN-006182 |
| Loan Amount: | $524,000.00 |
| Interest Rate: | 11.99% |
| Current Construction Balance: | $0.00 |
| Construction Disbursed To Date: | $0.00 |
| Pre-paid Interest Balance: | $0.00 |
| Maturity Date: | 12/23/2022 |
| Loan Servicer: | WCP Servicing |

Auto pay is off

**Payment Information**

**Payment Due Date: 07/10/2023**

**Current Status: Paid**
This payment was already marked scheduled.

Need to update your Borrower Information displayed here or do you have questions? Call us at (703) 940-5190 or email us at servicing@wcp.team.

https://payment-link.azurewebsites.net/p/e63qan2urxeehbykh6raialk44

5505 1st St NW Washington DC 20011-5207 Paid
Payment Amount: $23,830.18, Due Date: 07/01/2022




https://payment-link.azurewebsites.net/p/kofddh4iisoelpiz7jgfpa2xim



WASHINGTON CAPITAL PARTNERS

**1** Information — View payment information | **2** Payment Method — Select payment method | **3** Account Information — Select/Add bank account | **4** Confirm Payment

## Borrower Information

DEVELOPER RE1 LLC
Mel Negussie
1629 K Street NW Suite 300 Washington, DC 20006

## Loan Information

5505 1st St NW Washington, DC - District of Columbia 20011

| | |
|---|---|
| Loan Name: | LOAN-006182 |
| Loan Amount: | $524,000.00 |
| Interest Rate: | 11.99% |
| Current Construction Balance: | $0.00 |
| Construction Disbursed To Date: | $0.00 |
| Pre-paid Interest Balance: | $0.00 |
| Maturity Date: | 12/23/2022 |
| Loan Servicer: | WCP Servicing |

Auto pay is off

## Payment Information

Payment Due Date: 07/10/2023

**Current Status: Paid**
This payment was already marked scheduled.

Need to update your Borrower Information displayed here or do you have questions? Call us at (703) 940-5190 or email us at servicing@wcp.team.

https://payment-link.azurewebsites.net/p/kofddh4iisoelpiz7jgfpa2xim

5505 1st St NW Washington DC 20011-5207 — Paid
Payment Amount: $5,410.15, Due Date: 08/01/2022

**WASHINGTON CAPITAL PARTNERS**

| | | | |
|---|---|---|---|
| **1** Information — View payment information | **2** Payment Method — Select payment method | **3** Account Information — Select/Add bank account | **4** Confirm Payment |

## Borrower Information

**DEVELOPER RE1 LLC**
Mel Negussie
1629 K Street NW Suite 300 Washington, DC 20006

## Loan Information

**5505 1st St NW Washington, DC - District of Columbia 20011**

| | |
|---|---|
| Loan Name: | LOAN-006120 |
| Loan Amount: | $3,579,000.00 |
| Interest Rate: | 7.99% |
| Current Construction Balance: | $0.00 |
| Construction Disbursed To Date: | $0.00 |
| Pre-paid Interest Balance: | $0.00 |
| Maturity Date: | 12/23/2022 |
| Loan Servicer: | WCP Servicing |

Auto pay is off

## Payment Information

**Payment Due Date: 07/10/2023**

**Current Status: Paid**
This payment was already marked scheduled.

Need to update your Borrower Information displayed here or do you have questions? Call us at (703) 940-5190 or email us at servicing@wcp.team.

https://payment-link.azurewebsites.net/p/pr5kz57aym4enmaunbtelaaoay

**5505 1st St NW Washington DC 20011-5207** Paid
Payment Amount: $24,624.51, Due Date: 08/01/2022

WASHINGTON CAPITAL PARTNERS

1 Information — View payment information | 2 Payment Method — Select payment method | 3 Account Information — Select/Add bank account | 4 Confirm Payment

**Borrower Information**

**DEVELOPER RE1 LLC**
Mel Negussie
1629 K Street NW Suite 300 Washington, DC 20006

**Loan Information**

**5505 1st St NW Washington, DC - District of Columbia 20011**

| | |
|---|---|
| Loan Name: | LOAN-006120 |
| Loan Amount: | $3,579,000.00 |
| Interest Rate: | 7.99% |
| Current Construction Balance: | $0.00 |
| Construction Disbursed To Date: | $0.00 |
| Pre-paid Interest Balance: | $0.00 |
| Maturity Date: | 12/23/2022 |
| Loan Servicer: | WCP Servicing |

Auto pay is off

**Payment Information**

**Payment Due Date: 07/10/2023**

**Current Status: Paid**
This payment was already marked scheduled.

Need to update your Borrower Information displayed here or do you have questions? Call us at (703) 940-5190 or email us at servicing@wcp.team.

https://payment-link.azurewebsites.net/p/72zj23dwy3befj2t3zmubm5q5y

5505 1st St NW Washington DC 20011-5207 — Paid
Payment Amount: $24,624.51, Due Date: 09/01/2022

WASHINGTON CAPITAL PARTNERS

1 **Information** View payment information | 2 Payment Method Select payment method | 3 Account Information Select/Add bank account | 4 Confirm Payment

## Borrower Information

**DEVELOPER RE1 LLC**
Mel Negussie
1629 K Street NW Suite 300 Washington, DC 20006

## Loan Information

**5505 1st St NW Washington, DC - District of Columbia 20011**

| | |
|---|---|
| Loan Name: | LOAN-006182 |
| Loan Amount: | $524,000.00 |
| Interest Rate: | 11.99% |
| Current Construction Balance: | $0.00 |
| Construction Disbursed To Date: | $0.00 |
| Pre-paid Interest Balance: | $0.00 |
| Maturity Date: | 12/23/2022 |
| Loan Servicer: | WCP Servicing |

Auto pay is off

## Payment Information

**Payment Due Date: 07/10/2023**

**Current Status: Paid**
This payment was already marked scheduled.

Need to update your Borrower Information displayed here or do you have questions? Call us at (703) 940-5190 or email us at servicing@wcp.team.

https://payment-link.azurewebsites.net/p/lfj6ok6ibw4ebdueuaf25oq3pm

5505 1st St NW Washington DC 20011-5207 — Paid
Payment Amount: $5,410.15, Due Date: 09/01/2022

WASHINGTON CAPITAL PARTNERS

1 Information — View payment information | 2 Payment Method — Select payment method | 3 Account Information — Select/Add bank account | 4 Confirm Payment

**Borrower Information**

DEVELOPER RE1 LLC
Mel Negussie
1629 K Street NW Suite 300 Washington, DC 20006

**Loan Information**

5505 1st St NW Washington, DC - District of Columbia 20011

| | |
|---|---|
| Loan Name: | LOAN-006120 |
| Loan Amount: | $3,579,000.00 |
| Interest Rate: | 7.99% |
| Current Construction Balance: | $0.00 |
| Construction Disbursed To Date: | $0.00 |
| Pre-paid Interest Balance: | $0.00 |
| Maturity Date: | 12/23/2022 |
| Loan Servicer: | WCP Servicing |

Auto pay is off

**Payment Information**

Payment Due Date: 07/10/2023

**Current Status: Paid**
This payment was already marked scheduled.

Need to update your Borrower Information displayed here or do you have questions? Call us at (703) 940-5190 or email us at servicing@wcp.team.

https://payment-link.azurewebsites.net/p/gbn36foeqtbena46chwbddcc4u

5505 1st St NW Washington DC 20011-5207 — Paid
Payment Amount: $23,830.18, Due Date: 10/01/2022




https://payment-link.azurewebsites.net/p/s3ojgka3odoubalqsvnfbazha4



WASHINGTON CAPITAL PARTNERS

1 Information View payment information | 2 Payment Method Select payment method | 3 Account Information Select/Add bank account | 4 Confirm Payment

**Borrower Information**

DEVELOPER RE1 LLC
Mel Negussie
1629 K Street NW Suite 300 Washington, DC 20006

**Loan Information**

5505 1st St NW Washington, DC - District of Columbia 20011

| | |
|---|---|
| Loan Name: | LOAN-006182 |
| Loan Amount: | $524,000.00 |
| Interest Rate: | 11.99% |
| Current Construction Balance: | $0.00 |
| Construction Disbursed To Date: | $0.00 |
| Pre-paid Interest Balance: | $0.00 |
| Maturity Date: | 12/23/2022 |
| Loan Servicer: | WCP Servicing |

Auto pay is off

**Payment Information**

Payment Due Date: 07/10/2023

Current Status: Paid
This payment was already marked scheduled.

Need to update your Borrower Information displayed here or do you have questions? Call us at (703) 940-5190 or email us at servicing@wcp.team.

https://payment-link.azurewebsites.net/p/g4vp4rd6blvutaqdul7uqcrtu4

5505 1st St NW Washington DC 20011-5207 Paid
Payment Amount: $5,410.15, Due Date: 11/01/2022

WASHINGTON CAPITAL PARTNERS

1 Information — View payment information | 2 Payment Method — Select payment method | 3 Account Information — Select/Add bank account | 4 Confirm Payment

**Borrower Information**

DEVELOPER RE1 LLC
Mel Negussie
1629 K Street NW Suite 300 Washington, DC 20006

**Loan Information**

5505 1st St NW Washington, DC - District of Columbia 20011

| | |
|---|---|
| Loan Name: | LOAN-006120 |
| Loan Amount: | $3,579,000.00 |
| Interest Rate: | 7.99% |
| Current Construction Balance: | $0.00 |
| Construction Disbursed To Date: | $0.00 |
| Pre-paid Interest Balance: | $0.00 |
| Maturity Date: | 12/23/2022 |
| Loan Servicer: | WCP Servicing |

Auto pay is off

**Payment Information**

Payment Due Date: 07/10/2023

**Current Status: Paid**
This payment was already marked scheduled.

Need to update your Borrower Information displayed here or do you have questions? Call us at (703) 940-5190 or email us at servicing@wcp.team.

https://payment-link.azurewebsites.net/p/5meblfjkux6exb2vetchavxs44

5505 1st St NW Washington DC 20011-5207 — Paid
Payment Amount: $24,624.51, Due Date: 11/01/2022

WASHINGTON CAPITAL PARTNERS

1 Information — View payment information | 2 Payment Method — Select payment method | 3 Account Information — Select/Add bank account | 4 Confirm Payment

**Borrower Information**

DEVELOPER RE1 LLC
Mel Negussie
1629 K Street NW Suite 300 Washington, DC 20006

**Loan Information**

5505 1st St NW Washington, DC - District of Columbia 20011

| | |
|---|---|
| Loan Name: | LOAN-006120 |
| Loan Amount: | $3,579,000.00 |
| Interest Rate: | 7.99% |
| Current Construction Balance: | $0.00 |
| Construction Disbursed To Date: | $0.00 |
| Pre-paid Interest Balance: | $0.00 |
| Maturity Date: | 12/23/2022 |
| Loan Servicer: | WCP Servicing |

Auto pay is off

**Payment Information**

Payment Due Date: 07/10/2023

**Current Status: Paid**
This payment was already marked scheduled.

Need to update your Borrower Information displayed here or do you have questions? Call us at (703) 940-5190 or email us at servicing@wcp.team.

https://payment-link.azurewebsites.net/p/5tztzp34yqbupnd4zml3jkvvkm

5505 1st St NW Washington DC 20011-5207 — Paid
Payment Amount: $23,830.18, Due Date: 12/01/2022

WASHINGTON CAPITAL PARTNERS

1 Information — View payment information
2 Payment Method — Select payment method
3 Account Information — Select/Add bank account
4 Confirm Payment

**Borrower Information**

DEVELOPER RE1 LLC
Mel Negussie
1629 K Street NW Suite 300 Washington, DC 20006

**Loan Information**

5505 1st St NW Washington, DC - District of Columbia 20011

| | |
|---|---|
| Loan Name: | LOAN-006182 |
| Loan Amount: | $524,000.00 |
| Interest Rate: | 11.99% |
| Current Construction Balance: | $0.00 |
| Construction Disbursed To Date: | $0.00 |
| Pre-paid Interest Balance: | $0.00 |
| Maturity Date: | 12/23/2022 |
| Loan Servicer: | WCP Servicing |

Auto pay is off

**Payment Information**

Payment Due Date: 07/10/2023

**Current Status: Paid**
This payment was already marked scheduled.

Need to update your Borrower Information displayed here or do you have questions? Call us at (703) 940-5190 or email us at servicing@wcp.team.

https://payment-link.azurewebsites.net/p/sxtrel2sudcuteqpdscyz4wj4m

5505 1st St NW Washington DC 20011-5207 — Paid
Payment Amount: $5,235.63, Due Date: 12/01/2022

WASHINGTON CAPITAL PARTNERS

| | | | |
|---|---|---|---|
| **1** Information — View payment information | 2 Payment Method — Select payment method | 3 Account Information — Select/Add bank account | 4 Confirm Payment |

**Borrower Information**

DEVELOPER RE1 LLC
Mel Negussie
1629 K Street NW Suite 300 Washington, DC 20006

**Loan Information**

5505 1st St NW Washington, DC - District of Columbia 20011

| | |
|---|---|
| Loan Name: | LOAN-006120 |
| Loan Amount: | $3,579,000.00 |
| Interest Rate: | 7.99% |
| Current Construction Balance: | $0.00 |
| Construction Disbursed To Date: | $0.00 |
| Pre-paid Interest Balance: | $0.00 |
| Maturity Date: | 12/23/2022 |
| Loan Servicer: | WCP Servicing |

Auto pay is off

**Payment Information**

Payment Due Date: 07/10/2023

**Current Status: Paid**
This payment was already marked scheduled.

Need to update your Borrower Information displayed here or do you have questions? Call us at (703) 940-5190 or email us at servicing@wcp.team.

https://payment-link.azurewebsites.net/p/xk23at4ou5gedgfy7zmsatcely

5505 1st St NW Washington DC 20011-5207 — Paid
Payment Amount: $24,624.51, Due Date: 01/01/2023

Case 24-00180-ELG Doc 73-4 Filed 11/18/24 Entered 11/18/24 Page 159 of 169
Exhibit A - All Docket Entries Page 72 of 207

WASHINGTON
CAPITAL PARTNERS

1 Information — View payment information
2 Payment Method — Select payment method
3 Account Information — Select/Add bank account
4 Confirm Payment

**Borrower Information**

DEVELOPER RE1 LLC
Mel Negussie
1629 K Street NW Suite 300 Washington, DC 20006

**Loan Information**

5505 1st St NW Washington, DC - District of Columbia 20011

| | |
|---|---|
| Loan Name: | LOAN-006182 |
| Loan Amount: | $524,000.00 |
| Interest Rate: | 11.99% |
| Current Construction Balance: | $0.00 |
| Construction Disbursed To Date: | $0.00 |
| Pre-paid Interest Balance: | $0.00 |
| Maturity Date: | 12/23/2022 |
| Loan Servicer: | WCP Servicing |

Auto pay is off

**Payment Information**

Payment Due Date: 07/10/2023

**Current Status: Paid**
This payment was already marked scheduled.

Need to update your Borrower Information displayed here or do you have questions? Call us at (703) 940-5190 or email us at servicing@wcp.team.

https://payment-link.azurewebsites.net/p/o2wbn2jv7ktu5bujqmkfcihl6e

5505 1st St NW Washington DC 20011-5207 Paid
Payment Amount: $5,410.15, Due Date: 01/01/2023

# EXHIBIT T

Doc #: 2023048713
Filed & Recorded
06/12/2023 08:51 AM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS

dc water is life

Customer Service 202-354-3750

**DISTRICT OF COLUMBIA WATER AND SEWER AUTHORITY | 1385 Canal Street, SE | Washington, DC 20003**

**DELINQUENT ACCOUNTS SECTION**

DC Water and Sewer Authority
vs.
DEVELOPER RE1 LLC
1629 K ST NW, STE 300
WASHINGTON, DC 20006

Date: 06/12/2023

Account No.: 2002583-9
Service Address: 5501 1ST ST NW
Square: 3389 Suffix: Lot: 0138

**RE: Document No: 2022090397**
**Date: August 29, 2022**

**RELEASE OF LIEN**

This release of lien is filed pursuant to Title 34, Chapter 24, Section 2407.02, of the District of Columbia Code. (2001 ed.). The above referenced lien has been released for the reason listed below. Accordingly, the Recorder of Deeds of the District of Columbia may record this release of lien.

Reason for Release: **PAID IN FULL**

**Recommended By:**

Denise Page

Supervisor, Credit & Collections Department of Customer Service, DC Water & Sewer Authority

**Approved By:**

[signature]

Manager, Credit & Collections Department of Customer Service, DC Water & Sewer Authority

**Acknowledged By:**

**Recorder of Deeds Government of the District of Columbia**

DEVELOPER RE1 LLC
C/O
1629 K ST NW, STE 300
WASHINGTON, DC 20006

# EXHIBIT U

Case 24-10023-ELG Doc 1-2 Filed 11/19/24 Entered 11/19/24 Page 163 of 169
Exhibit A - All Docket Entries (Part I) Page 726 of 1207

Government of the District of Columbia
Office of Tax and Revenue
Recorder of Deeds
1101 4th Street, SW
Washington, DC 20024
Phone (202)727-5374

# NOTICE OF FORECLOSURE SALE OF REAL PROPERTY OR CONDOMINIUM UNIT

(Pursuant to Public Low 90-566, approved October 12, 1968)

Square 3389 Suffix Lot 0138

List Name and adress of each owner of the real property encumbered by said deed of trust, mortgage, or security instrument.)

TO: Developer RE1 LLC
See Exhibit A

FROM: SF NU, LLC PHONE: (703) 727-5464

YOU ARE HEREBY NOTIFIED THAT IN ORDER TO SATISFY THE DEBT SECURED BY THE DEED OF TRUST, MORTGAGE, OR OTHER SECURITY INSTRUMENT, THE REAL PROPERTY OR CONDOMINIUM UNIT HEREIN DESCRIBED WILL BE SOLD AT A FORECLOSURE SALE TO BE HELD ON July 25, 20 23, AT THE OFFICE OF Harvey West Auctioneers, Inc. 5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015 2:00 P.M. THIS SALE DATE IS SUBJECT TO POSTPONEMENT FOR A PERIOD NOT TO EXCED THIRTY (30) CALENDAR DAYS FROM THE ORIGINAL DATE OF FORECLOSURE SALE, AFTER WHICH THIS NOTICE OF FORECLOSURE SHALL EXPIRE.

Affidavit of Non-Residential Mortgage Foreclosure recorded on June 22, 2023 as Instrument No. 2023052259

Security Instrument recorded in the land records of the District of Columbia at the Recorder of Deed on January 3, 20 22.

Liber: Folio: Instrument No: 2022000482

Maker(s) of the Note secured by the instrument: Developer RE1 LLC

See Exhibit A (Phone) See Exhibit A (Last Known Address)

Description of Property: commercial building
(two-story brick, dwelling, apartment building, vacant lot condominium unit, etc.)

Address: 5501 1st Street, NW, Washington, DC 20011

Square: 3389 Lot: 0138 or Parcel No:

Holder of the Note (Name): SF NU, LLC
Phone: (703) 727-5464 Address: 8401 Greensboro Drive, Suite 960, McLean, VA 22102

Balance owed on the Note: $ 678,554.78 *

Minimum balance required to cure default obligation pursuant to D.C. Law 5-82 ìRight to Cure a Residential Mortgage Foreclosure DefaultAct of 1984.î
$ N/A commercial loan

Name of person to contact to stop foreclosure sale: Russell S. Drazin
Address: 4400 Jenifer Street, N.W., Suite 2, Washington DC 20015 Phone: (202) 223-7900

** as of June 23, 2023

# NOTICE OF FORECLOSURE SALE OF REAL PROPERTY OR CONDOMINIUM UNIT

**Government of the District of Columbia**
Office of Tax and Revenue
Recorder of Deeds
**1101 4th Street, SW**
**Washington, DC 20024**
**Phone (202)727-5374**

Square 3389 Suffix Lot 0138

I hereby certify that a Notice of Foreclosure Sale was sent to the present owner(s) of the real property encumbered by the said deed of trust, mortgage, or other security instrument described above, by certified mail, return receipt required on June 23 ,20 23 ; and I further certify that I understand that Public Law 90-566 prohibits any foreclosure sale under a power of sale provision contained in any deed of trust, mortgage, or other security instrument until after the owner(s) of the real property encumbered by the said deed of trust, mortgage, or security instrument has been given written notice of such sale, and the Recorder of Deeds, D.C. has received a copy of such notice at least 30 days in advance of such sale.

06/23/2023
Date

[signature]
(Signature of Noteholder or his agent)

I, Deborah A. Stewart , a Notary Public in and for the District of Columbia ,
DO HEREBY CERTIFY THAT Russell S. Drazin
who is personally well known to me as a party(ies) to this Notice of Foreclosure Sale bearing on the 23rd day of June , 20 23 , personally appeared before me and executed the said Notice of Foreclosure Sale and acknowledged the same to be his act and deed.

Given under my hand and seal this 23rd day of June , 20 23 .

[signature]
Notary Public

My Commission Expires: 09/30/2025
mmddyyyy

DEBORAH A. STEWART
NOTARY PUBLIC
MY COMMISSION EXPIRES 9.30.2025
DISTRICT OF COLUMBIA

Case 1:26-cv-01920-AHA Document 1-2 Filed 11/18/24 Page 165 of 169
Exhibit A - All Docket Entries (Part I) Page 725 of 2207

**EXHIBIT A**

Borrower, Grantor, Record Owner:

**Developer RE1 LLC**, a District of Columbia limited liability company

5501 1st Street, NW, Washington, DC 20011

1629 K Street, NW, Suite 300, Washington, DC 20006

3631 Upton Street, NW, Washington, DC 20008

4600 S. Four Mile Run Drive, Apt. 227, Arlington, VA 22204

8922 Tonbridge Terrace, Hyattsville, MD 20783

c/o Mel Negussie, Registered Agent, 1629 K Street, NW, Suite 300, Washington, DC 20006

c/o James D. Sadowski, attorney, Greenstein DeLorme & Luchs, P.C., 801 17th Street, NW, Suite 1000, Washington, DC 20006

(202) 775-0457
(202) 244-4245
(571) 481-0289

# Pardo & Drazin, LLC

**Russell S. Drazin, Attorney**
**4400 Jenifer Street, NW, Suite 2**
**Washington, DC 20015**
**202-223-7900**

## TRUSTEE'S SALE OF REAL PROPERTY

5501 1st Street, NW
Washington, DC 20011

Lot 0138 in Square 3389

Under a power of sale contained in a certain Deed of Trust ("Deed of Trust") dated December 23, 2021 and recorded on January 3, 2022 as Instrument No. 2022000482 from Developer RE1 LLC, as grantor, to Russell S. Drazin ("Trustee"), as trustee, for the benefit of WCP Fund I LLC, as beneficiary, securing that certain Commercial Deed of Trust Note dated December 23, 2021 in the principal amount of $524,000.00, default having occurred under the terms thereof, and following the mailing and recordation of an Affidavit of Non-Residential Mortgage Foreclosure and a Notice of Foreclosure Sale of Real Property or Condominium Unit, at the request of the current noteholder, Trustee will sell at public auction at the office of Harvey West Auctioneers, Inc., 5335 Wisconsin Avenue, NW, Suite 440, Washington, DC 20015, on

**JULY 25, 2023 AT 2:00 PM**

ALL THAT LOT OF GROUND AND THE IMPROVEMENTS THEREON (if any) situated in the City of Washington, District of Columbia, known as 5501 1st Street, NW, Washington, DC 20011 (Lot 0138 in Square 3389), and more fully described in the Deed of Trust.

The property will be sold in an "AS IS" condition, with no warranty of any kind, and subject to conditions, restrictions, agreements, liens, and encumbrances of record affecting the same – except those encumbrances of record that are extinguished by operation of District of Columbia law by virtue of the foreclosure of the Deed of Trust. Without limitation, the property will be sold subject to that certain Deed of Trust dated December 23, 2021 and recorded on January 3, 2022 as Instrument No. 2022000481 from Developer RE1 LLC, as grantor, to Russell S. Drazin, as trustee, for the benefit of WCP Fund I LLC, as beneficiary, securing that certain Commercial Deed of Trust Note dated December 23, 2021 in the principal amount of $3,579,000.00.

Purchaser will take title to the property subject to all taxes, water and sewer charges, and other utility charges, if any. Purchaser assumes the risk of loss or damage to the property from the date of sale forward. Purchaser shall be responsible for obtaining physical possession of the property.

TERMS OF SALE: A deposit of $60,000.00 by cashier's check will be required of purchaser at the time and place of sale. Purchaser shall settle within thirty (30) days of sale. TIME SHALL BE OF THE ESSENCE WITH RESPECT TO SETTLEMENT BY PURCHASER. Balance of the purchase price to be paid in cash or certified funds at settlement. Interest to be paid on the unpaid purchase money from the date of sale to the date of settlement at

Case 24-10023-ELG Doc 1-2 Filed 01/18/24 Entered 01/18/24 Page 167 of 169

the applicable interest rate set forth in the debt instrument secured by the Deed of Trust. Purchaser shall be responsible for payment of all settlement costs.

The noteholder and its affiliates, if a bidder, shall not be required to post a deposit or to pay interest.

In the event that purchaser does not settle as required for any reason, purchaser shall be in default. Upon such default, the deposit shall be forfeited to Trustee and all of the expenses of this sale (including legal fees and costs, and full commission on the gross sale price) shall be charged against and paid out of the forfeited deposit. Trustee may resell the property at the risk and expense of the defaulting purchaser. The defaulting purchaser shall not be entitled to any surplus proceeds or profits resulting from any resale of the property. Defaulting purchaser shall be liable to Trustee for legal fees and costs incurred by Trustee in connection with such default.

If Trustee is unable to settle as set forth herein, purchaser's sole remedy at law and in equity shall be limited to a refund of the deposit and the sale shall be considered null and void and of no effect whatsoever.

Trustee reserves the right, in Trustee's sole discretion, to reject any and all bids, to withdraw the property from sale at any time before or at the auction, to extend the time to receive bids, to waive or modify the deposit requirement, to waive or modify the requirement that interest be paid on the unpaid purchase money, and/or to extend the period of time for settlement.

Additional terms may be announced at the sale. The successful bidder will be required to execute and deliver to Trustee a memorandum or contract of the sale at the conclusion of bidding.

Russell S. Drazin, Trustee

---

JULY 11, 13, 17, 19, & 21, 2023
(THE WASHINGTON POST)

# AFFIDAVIT OF NON-RESIDENTIAL MORTGAGE FORECLOSURE

**Government of the District of Columbia**
Office of Tax and Revenue
Recorder of Deeds
**1101 4th Street, SW**
**Washington, DC 20024**
**Phone (202) 727-5374**

Developer RE1 LLC
Property Owner's Last Name

Property Owner's First Name

Defaulted Borrower(s) Name
(If Different From Property Owner's Above)

0138/3389
Lot/Square Number:

I, Christina Araujo [name], Vice President of Finance [title]

of WCP Fund I LLC, as servicer to SF NU, LLC
[name of institution] ("Lender"), make oath and say that:

1. I have personal knowledge of the matters referred to herein.

2. The subject property is located at

5501 1st Street, NW, Washington, DC 20011

3. SF NU, LLC is the holder of the mortgage recorded as Instrument Number 2022000482 in the District of Columbia Recorder of Deeds ("Mortgage").

4. The subject property identified above is not secured by a residential mortgage as defined by D.C. Official Code § 42-815.01(a).

5. For the reason(s) set forth above, foreclosure of the Mortgage is not subject to mandatory mediation and, therefore, does not require a Mediation Certificate issued by the Mediation Administrator.

I declare and affirm under penalty of perjury that the statements made herein are true and correct to the best of my knowledge, information and belief.

SSL:
3389/0138

Signature: [signature]
Printed Name: Christina Araujo
Title: Vice President of Finance
Date: June 21, 2023
State of Virginia
County of Fairfax

Recording requested by:
Russell S. Drazin
Pardo & Drazin LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

When recorded mail to:
Russell S. Drazin
Pardo & Drazin, LLC
4400 Jenifer Street, NW
Suite 2
Washington, DC 20015

This Affidavit of Non-Residential Mortgage Foreclosure was acknowledged before me on this 21st day of June, 20 23

by Christina Araujo (name of person) as

Vice President of Finance (type of authority, e.g. officer, trustee, etc.) of WCP Fund I LLC, as servicer to SF NU, LLC
(name of party on behalf of whom instrument was executed).

Notary Public [signature]

My Commission Expires:

MUHAMMAD T BILAL
NOTARY PUBLIC
REG. #7637841
MY COMMISSION EXPIRES
JUNE 30, 2023
COMMONWEALTH OF VIRGINIA

Doc #: 2023052259
Filed & Recorded
06/22/2023 09:01 AM
IDA WILLIAMS
RECORDER OF DEEDS
WASH DC RECORDER OF DEEDS

| | |
|---|---|
| RECORDING FEES | $25.00 |
| SURCHARGE | $6.50 |
| TOTAL: | $31.50 |