# FIRST AMENDED AND RESTATED OPERATING AGREEMENT
# OF
# DEVELOPER RE1 LLC

THIS FIRST AMENDED AND RESTATED OPERATING AGREEMENT (this "Agreement") is made and entered into effective for all purposes and in all respects as of this 31st day of December 2021 (the "Effective Date") by and among Mulugeta Tesfakiros ("Tesfakiros"), Solomone Abebaw Desta ("Desta") and Mel Negussie (Tesfakiros, Negussie and Desta, individually and collectively, as the context may require, the "Members").

WHEREAS, the original Operating Agreement was effective on December 1, 2021;

WHEREAS, the Members have executed the ASSIGNMENT, ASSUMPTION AND CONSENT OF MEMBERSHIP INTEREST of Developer RE1 LLC, a District of Columbia limited liability company prior to this Agreement;

WHEREAS, the parties hereto desire to set forth herein their agreements and understandings with respect to the formation of the limited liability company and their future dealings;

NOW, THEREFORE, in consideration of the foregoing, of the mutual promises herein contained and of other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending legally to be bound, hereby covenant and agree as follows:

## ARTICLE I
## DEFINITIONS

Section 1.1. Defined Terms. The terms used in this Agreement with their initial letters capitalized, shall, unless otherwise expressly provided herein, have the meanings specified in this Section 1.1. When used in this Agreement, the following terms shall have the meanings set forth below:

1.1.1. "Act" shall mean the District of Columbia Uniform Limited Liability Company Act of 2010, as the same may be amended from time to time.

1.1.2. "Affiliate" shall mean any individual or Entity, directly or indirectly, through one or more intermediaries, controlling, controlled by or under common control with a Member.

1.1.3. "Agreement" shall mean this Operating Agreement and all exhibits attached hereto, as originally executed and as amended from time to time in writing.



DS MN  DS SD  DS

1.1.4. "Managing Member(s)" shall, to the extent appointed by the Members, mean the one or more persons whose execution of documents on behalf of the Company shall bind the Company when authorized by action of the Company pursuant to Article VII of this Agreement.

1.1.5. "Available Cash" of the Company shall mean all cash funds of the Company on hand from time to time (other than cash funds obtained as contributions to the capital of the Company by the Members and cash funds obtained from loans (excluding excess refinancing proceeds) to the Company) after (i) payment of all operating expenses of the Company as of such time, (ii) provision for payment of all outstanding and unpaid current obligations of the Company as of such time, and (iii) provision for a reasonable working capital reserve for the Company.

1.1.6. "Bankruptcy" means, with respect to any Member: (i) an assignment for the benefit of creditors; (ii) a voluntary petition in bankruptcy; (iii) adjudication as a bankrupt or insolvent; (iv) the filing of a petition or answer seeking any reorganization, arrangement, , liquidation or similar relief under any statute, regulation or law; (v) the filing of an answer or other pleading admitting or failing to contest the material allegations of a petition filed against the Member in any proceeding of this nature; or (vi) seeking, consenting to, or acquiescing in the appointment of a trustee, receiver, or liquidator of such Member's properties or of all or any substantial part of the Member's properties.

1.1.7. "Capital Account" shall, with respect to each Member shall mean the Capital Contribution of a Member (as of any particular date) (i) increased by the Member's distributive share of profits, income and gain of the Company and (ii) decreased by the Member's distributive share of losses and deductions of the Company and distributions by the Company to such Member.

1.1.8. "Capital Contribution" or "Capital Contributions" shall mean and refer to the amount of cash, and/or the agreed fair market value of property (less the amount of indebtedness, if any, of such Member which is assumed by the Company and/or the amount of indebtedness, if any, to which such property is subject, as of the date of contribution), actually contributed by a Member to the capital of the Company, as well as any additional contributions actually made pursuant to this Agreement

1.1.9. "Code" shall mean the Internal Revenue Code of 1986, as amended. All references herein to Sections of the Code shall include any corresponding provision or provisions of succeeding law.

1.1.10. "Company" shall refer to Developer RE1 LLC, a District of Columbia limited liability company.

1.1.11. "Company Accounting Year" shall mean and refer to the accounting year of the Company, ending December 31 of each year.



DS MN DS SD DS

1.1.12. "Entity" shall mean any association, corporation, general partnership, limited partnership, limited liability company, joint venture, or any other business enterprise of every nature 'through which associates join together for the conduct of business.

1.1.13. "Interest" in the Company shall mean the entire ownership interest of a Member in the Company at any particular time.

1.1.14. "Member" or "Members" shall mean and refer to those persons and/or Entities designated as such on Exhibit A attached hereto, either individually or collectively.

1.1.15. "Membership Interest" of a Member shall mean the percentage participation in the Company of such Member as set forth opposite the name of such Member under the column "Membership Interest" in Exhibit A attached hereto, as such percentage may be adjusted from time to time pursuant to the terms hereof.

1.1.16. "Pro Rata Part" means the proportion that a Membership Interest of a Member bears to the aggregate Interests in the Company of all Members.

1.1.17. "Substitute Member" shall mean any person or Entity who or which is admitted as a Member of the Company pursuant to Article X hereof.

## ARTICLE II
## NAME, FORMATION, PURPOSE, RESIDENT AGENT AND TERM

Section 2.1. Name of Company. The name of the Company shall be Developer RE1 LLC.

Section 2.2. Formation of Company. Members acted as organizers and formed a limited liability company under the laws of the District of Columbia by the filing of Articles of Organization (the "Articles") for the Company pursuant to the Act on behalf of the Members, and any and all additional Members and/or Substitute Members.

This Agreement is subject to, and governed by, the Act and the Articles of the Company to be filed with the District of Columbia. In the event of a direct conflict between the provisions of this Agreement and either the mandatory provisions of the Act or the Articles of the Company, such provisions of the Act or the Articles of the Company, as the case may be, will be controlling.

Section 2.3. Company Purpose. The general purposes of the Company are as set forth in the Articles, including, but not limited to, the purchase, ownership, leasing, management, development and sale of real property in the District of Columbia, including but not limited to 67-71 Kennedy Street NW, 5501 1st Street NW, and 5505 1st Street NW, (the "Property"). The Company may exercise all powers reasonable or necessary to pursue the same. In addition, the



DS MN DS SD DS

Company may engage in and do any act concerning any or all lawful businesses for which limited liability companies may be organized according to the Act and to which the Members unanimously agree.

Section 2.4. Principal Office; Resident Agent. The principal office of the Company shall be located at 1629 K Street NW, Suite 300, Washington DC 20006. The Managing Members may change the principal office of the Company. The resident agent of the Company in the District of Columbia for service of process shall be OSI Management, Inc., or such other person or Entity as the Members may designate. The address of the resident agent is 1629 K Street, N.W., Suite 300, Washington DC 20006.

Section 2.5. Term. The term (the "Term") of the Company, which shall mean and refer to the period of time that the Company shall continue in existence, commencing as of the Effective Date and ending on December 31, 2099, unless sooner terminated in accordance with the provisions of Section 11.1 hereof.

## ARTICLE III
## CAPITAL CONTRIBUTIONS, LOANS, LIABILITIES AND SHARES

Section 3.1. Initial Contributions. Each Member shall contribute to the capital of the Company a capital contribution equal to the amount set forth next to his name in Exhibit A hereto. The parties acknowledge that such amounts represent the value of their respective interest in the Property based upon their prior ownership of the Property.

Section 3.2. Subsequent Contributions. No Member shall be required to make any Capital Contribution to the Company other than the initial Capital Contribution referenced in Section 3.1 hereof, except as may be agreed to buy such Member in writing. Additional capital may be contributed to the Company, but only upon the written consent of Members owning 2/3rds in interest of the Membership Interests.

Section 3.3. Member Loans or Services. Loans or services by any Member to the Company shall not be considered contributions to the capital of the Company and shall be upon such terms as the Member and the Company may negotiate.

Section 3.4. Capital Account. An individual Capital Account shall be established and maintained on behalf of each Member, including any Substitute Member or additional Member who shall hereafter receive an Interest in the Company.

Section 3.5. Interest on Contribution. No interest shall be paid on any Capital Contribution.

Section 3.6. Withdrawal of Contribution. No Member shall have the right to withdraw his or her Capital Contribution, or to demand and receive property of the Company or any



DS MN DS SD DS

distribution in return for his or her Capital Contribution, except as may be specifically provided in this Agreement or required by law.

Section 3.7. Restoration of Negative Capital Account. Except as is specifically provided otherwise in this Agreement or in the Act, no Member shall have any liability or obligation to restore a negative or deficit balance in such Member's Capital Account.

Section 3.8. Liability to Creditors. No Member (in his or her capacity as a Member) shall be personally liable for losses, costs, expenses, liabilities or obligations of the Company in excess of his or her Capital Contributions, without such Member's express prior written consent.

## ARTICLE IV
## PROFIT AND LOSSES

Section 4.1. Allocation of Profit and Losses.

4.1.1. "Profit" and "Loss" shall, for purposes of this Article IV, mean, for each fiscal year of the Company or other period, an amount equal to the Company's taxable income, gain, loss or deduction for such year or period.

4.1.2. The distributive shares of each item of Profit, Loss, deduction, credit or basis of the Company for any Company Accounting Year or other period shall be allocated to the Members pro rata, in proportion to their respective Membership Interests.

## ARTICLE V
## DISTRIBUTIONS

Section 5.1. Timing of Distribution. The Available Cash shall to the extent deemed available, be distributed on an annual basis (or more or less frequently if the Members unanimously agree in writing) in accordance with the provisions of this Article V.

Section 5.2. Proration of Distribution. Except to the extent that Available Cash shall be distributed upon termination of the Company pursuant to the terms hereof, the Available Cash generated during a Company Accounting Year shall be distributed during such Company Accounting Year to the Members, in proportion to their respective Membership Interests, provided no distributions shall be made to the Members until such time as all members have received a return of their Capital Contributions, which shall be made on a pro-rata basis..

## ARTICLE VI
## LEGAL TITLE TO COMPANY ASSETS



DS MN DS SD DS

Legal title to the Company Assets shall be held in the name of the Company, or in any other manner which the Members determine to be in the best interest of the Company. Without limiting the foregoing grant of authority, the Members, by unanimous written consent, may take and hold title, or arrange to have title taken and held in the name of others, as trustees or nominees for and or behalf of the Company.

ARTICLE VII
MANAGEMENT AND CONTROL OF BUSINESS

Section 7.1. General. The Members shall use their best efforts to carry out the business of the Company and shall devote to the management of the business and affairs of the Company such time as it reasonably deems to be necessary. Notwithstanding anything herein to the contrary, all decisions relating to the business of the Company, except for those matters set forth in Section 7.3 ("Major Acts"), shall be made by the Managing Members, subject, however, to the provisions of this Article VII.

Section 7.2. Rights of Managing Member. The Managing Member shall be responsible for implementing the decisions of the Company and for conducting the ordinary and usual business and affairs of the Company. The acts of the Managing Member will bind the Company when within the scope of the Managing Member's authority. Except as otherwise specified in Section 7.4 below, in no event shall the Managing Member take any Major Acts or expend any money as a result of a Major Act, unless approved in writing by Members owning in total 51% of all the Membership Interests. The Managing Member shall at all times conform to policies and programs established and approved by the Members in accordance herewith. The Managing Member shall keep the other Members informed as to all matters of concern to the Company.

Section 7.3. Limitation on Authority of the Managing Member.

(A) Notwithstanding anything in this Agreement to the contrary, but subject to the provision of Section 7.4 below, the Managing Member shall not, without the prior written consent of owners of 51% or more of the Membership Interests, take any action outside of conducting the specified business of the Company (as more fully identified in Section 2.3 above) in accordance with the terms of this Agreement including, without limitation, the following Major Acts:

(1) The borrowing of any funds by the Company (and the selection of any lender), or the execution of any promissory note, bond, security agreement, mortgage, deed of trust, guarantee, or other document or instrument evidencing any indebtedness of the Company or pledging, granting a security interest in, placing a lien on or otherwise encumbering any of the Company's assets or the making of any loans or the extension of any credit by the Company or the binding of the Company as guarantor or surety for the Members on behalf of any Person;

(2) Causing or permitting the Company to sell, exchange, transfer or otherwise dispose of, or approve any offer to sell or exchange, the Project, or any material Company asset;



DS MN DS SD DS

Case 25-10037-ELG Document 40-13 Filed 10/12/26 Page 190 of 265

(3) The confession by the Company of a judgment against itself, the Company's assets, or any portion thereof, or the assignment of Company assets in trust for creditors.

(4) The taking of any action by which the business of the Company shall be materially endangered or prejudiced, or the result of which would be to prevent the Company from continuing to carry on the Company's ordinary business.

(5) Admitting any additional person as a Member to the Company, except as otherwise permitted in this Agreement.

(6) Dissolution or liquidation of the Company other than in accordance with the terms of this Agreement.

(7) Any other item pursuant to this Agreement which requires the approval or consent of Members owning a stated percentage of the total Membership Interests.

(B) If the Managing Member desires the undertaking of a Major Act, he shall either (i) submit the proposal to the other Members in writing or (ii) request a meeting in accordance with Section 8.2. The failure of such other Members to consent in writing to a proposal within fifteen (15) business days of the receipt of the proposal shall be deemed a disapproval.

Section 7.4. Designation of Managing Member. Although Negussie and Desta were designated as the initial Managing Members of the Company, Tesfakiros is now likewise designated as a Managing Member as well. Subject to the following sentence, any Managing Member may be replaced by the affirmative vote of Members owning 51% of the Membership Interests. Additionally, and notwithstanding anything in this Agreement to the contrary, each Managing Member, acting jointly or alone, shall have full authority to make all decisions on behalf of the Company and to execute all documents required to be executed by the Company in connection with its business, including, but not limited to, all leases, financing documents, deeds, contracts, deeds of trusts and all other types of documents and instruments.

Section 7.5. Dispute Resolution. If any question, disagreement, difference or controversy shall arise among the Members concerning the affairs, transactions or business of the Company, the meaning or interpretation of this Agreement or the duties, or obligations of the Members, any Member may cause such question, disagreement, difference or controversy to be submitted to and determined by arbitration in accordance with the Rules of Commercial Arbitration of the American Arbitration Association in effect at the time such matter is submitted for arbitration (and the other Members hereby consent to such submission and determination), it being agreed and understood that any dispute among the Members under this Agreement shall be resolved by arbitration rather than litigation. The arbitration shall be conducted in Washington, D.C. by a single arbitrator using the expedited procedures provisions of the American Arbitration Association and shall be subject to, and the arbitrators shall have the powers and rights afforded by, the arbitration statute(s) then in effect in the District of Columbia. Costs of arbitration shall be borne by the non-prevailing party, unless the arbitrator determines it would be unjust to do so under all the facts and circumstances. A judgment



DS MN DS SD DS

upon the award rendered by the arbitrator may be entered in any court having jurisdiction over the parties.

Section 7.6. Compensation of Managing Members. Except as expressly provided herein, the Managing Members shall not receive any compensation from the Company for services rendered in its capacity as a Managing Member of the Company.

Section 7.7. Company Expenses; Reimbursement. The Company shall bear all costs and expenses incurred in connection with the management and operation of the business and affairs of the Company (including costs to obtain financing), or in carrying out the business, purposes, and objectives of the Company. If the Managing Member at any time or from time to time advances his own funds to pay any such costs or expenses, he shall be entitled to reimbursement of such funds from the Company promptly upon demand (to the extent funds are available), provided, that the Managing Member is permitted to make such expenditures on behalf of the Company pursuant to the terms of this Agreement and he submits evidence of such expenditures such as cancelled checks or paid invoices to the other Members, if so requested.

Section 7.8. Other Activities of Members.

A. The Company is formed solely for the purposes set forth herein and this Agreement shall not be deemed to create any type of partnership or venture between or among the Members with respect to any activities whatsoever other than the activities within the purposes of the Company as hereinabove specified. No Member shall have the power to bind the Company or any other Member except as specifically provided in this Agreement. Neither any Member nor the Company shall be responsible or liable for any indebtedness or obligation of the other Member incurred either before or after the execution of this Agreement, except as to those joint responsibilities, liabilities, indebtedness or obligations incurred pursuant to and as limited by the terms of this Agreement.

B. Except as set forth in this Section 7.8, each Member may have other business interests or may engage in other business ventures of any nature or description whatsoever including owning or operating real estate projects which compete with the Company's projects, and neither the Company nor the other Members shall have any right to participate in such other business ventures or to receive or share in any income or profits derived therefrom.

## ARTICLE VIII
## MEMBERS, INTERESTS, MEETINGS

Section 8.1. Names and Addresses of Members. The names of Members, their respective addresses, their initial Capital Contributions to the Company, and their respective Membership Interests in the Company are set forth on Exhibit A attached hereto and made a part hereof. A Member need not be an individual.



DS MN DS SD DS [signature]

Section 8.2. Meetings of the Members.

8.2.1. The annual meeting of the Members shall be held at a reasonable hour on the second Tuesday of the second month of each Company Accounting Year, or at such other time as the Members may unanimously agree. Special meetings of Members may be called by any Member. Meetings of the Members shall be held at the principal office of the Company, or at such other place as the Members may mutually determine

8.2.2. Notice of meeting shall be delivered in accordance with applicable law. The Company shall deliver or mail written notice stating the date, time and place of any meeting. A Member may waive notice of any meeting, before or after the date of the meeting, by delivering a signed waiver to the Company for inclusion in the minutes of the Company.

8.2.3. At any meeting of Members, each Member entitled to vote shall have a number of votes equal his or her Membership Interest as set forth on Exhibit A hereto, as the same may be amended from time to time, multiplied by (ii) one hundred (100). At any meeting of Members, the presence of Members entitled to cast more than fifty-one percent (51%) of the total votes of all Members entitled to vote at such meeting constitutes a quorum; provided, however, that, so long as there shall be two (2) Members, a quorum shall require attendance by both Members. Action on a matter is approved if it receives the approval of 51% of the total Membership Interests of the Members entitled to vote at such meeting

8.2.4. Any action required or permitted to be taken at a meeting of the Members may be taken without a meeting if the action is taken by all of the Members entitled to vote on the action. The action must be evidenced by one or more written consents describing the action to be taken, signed by all the Members entitled to vote on the action, and delivered to the Company for inclusion in the minutes.

8.2.5. Any or all Members may participate in any Company meeting of Members by, or through the use of, any means of communication by which all Members participating may simultaneously hear each other during the meeting. A Member so participating is deemed to be present in person at the meeting.

## ARTICLE IX
## ACCOUNTING AND RECORDS

Section 9.1. Records and Accounting. The books and records of the Company shall be kept, and the financial condition and the results of its operations recorded, in accordance with the accounting methods elected to be followed by the Company for Federal income tax purposes. The books and records of the Company shall reflect all Company transactions and shall be appropriate and adequate for the Company's business. The fiscal year of the Company for financial reporting and for Federal income tax purposes shall be the calendar year.



DS MN DS SD DS

Section 9.2. Annual and Tax Information. The Members shall use their best efforts to cause the Company to deliver to each Member within sixty (60) days after the end of each calendar year all information necessary for the preparation of such Member's Federal income tax return. The Members agree to report on their returns such of the Company operations as are attributable to them and not to take reporting positions contrary to the Company's reporting positions.

Section 9.3. Accounting Decisions. All decisions as to accounting matters, except as otherwise specifically set forth herein, shall be made by Negussie in accordance with generally accepted accounting principles. Negussie may rely upon the advice of the Company's Accountants.

## ARTICLE X
## ASSIGNABILITY

Section 10.1. Restriction on Transfer. No Member shall, without the written consent of the other Members, which may be granted or denied in each Member's sole and unreviewable discretion, transfer, sell, encumber or dispose of his Membership Interest now owned or hereafter acquired. Additionally, no additional Members shall be admitted to the Company without the express consent of all the Members, except as otherwise expressly provided herein.

Section 10.2. Transfer to Related Entity. Notwithstanding Section 10.1 above, a transfer by a Member to a spouse, lineal descendant or to a trust created by a Member for tax planning purposes shall be permitted without the consent of any other Member.

Section 10.3. Right of First Refusal. Notwithstanding the provisions of Section 10.1, at any time after two years after the effective date of this Agreement, a Member may transfer, sell or dispose of his Membership Interest now owned or hereafter acquired by him provided he first offers to transfer or dispose of his Company Interest to the other Members. The purchase price shall be agreed upon between the parties; provided, however, that in the event they are unable to agree upon a price, the parties shall each select one qualified appraiser who shall jointly select a third appraiser. Each appraiser shall appraise the value of the properties then owned by the Company, and the average of the three appraisals shall be the value of such properties. The actual purchase price for the interest of the Member desiring to sell shall be determined in accord with the provisions of Section 10.5 below, using the appraised value of the properties as the basis for such determination.

Section 10.4. Sale to Third-Party. In the event that none of the non-selling Members wish to exercise the right of first refusal set forth in Section 10.3 above to purchase all the Membership Interests of the selling Member, then the selling Member may sell such Interest (or portion thereof if part of the Interest is purchased by the other Members) to a third-party at a price and upon such terms no less favorable than that offered to the other Members in accord with Section 10.3. If the terms of sale to a third-party are more favorable than the terms previously rejected by the non-selling Member, the selling Member shall afford the non-selling Member an additional fifteen (15) day



DS MN DS SD DS

period within which to purchase the Interest being sold at the reduced price or more favorable terms, as the case may be.

Section 10.5. Sale of Property, Valuation of Company Interests. In connection with the purchase of a Membership Interest pursuant to the exercise of a right of first refusal, the value of the properties agreed upon or determined by appraisal shall be reduced by ordinary settlement costs which would be payable in connection with the actual sale of the properties and the amount of any encumbrances on the properties to determine, as nearly as possible, the net proceeds which would have been payable to the Company upon the sale of the properties. Additionally, the purchase price for the Member's Interest shall be further adjusted to reflect loans payable or due to the Company by the Members, the Membership Interest owned by the Members, and the capital accounts of each selling Member, so that the price actually paid for the Membership Interest being sold shall to the extent possible reflect the amount which such Member would have received upon the sale of the properties to a third-party followed by dissolution of the Company in accord with this Agreement, and distribution of available proceeds.

All amounts to be paid hereunder for the purchase of a Membership Interest shall be payable within sixty (60) days of an election by the purchasing Members to exercise their right of first refusal, provided any appraisals, if necessary, have been completed.

## ARTICLE XI
## DISSOLUTION, LIQUIDATION AND TERMINATION

Section 11.1 Events of Dissolution. The Company shall be dissolved and shall commence winding up its affairs upon the first to occur of the following: (a) the time fixed in the Articles as the expiration of the term of the Company; (b) the vote of Members holding 80% or more of the Membership Interests; (c) any event which makes it unlawful or impossible to carry on the Company's business; (d) the sale, disposition or abandonment of all or substantially all of the Company's property; (e) the entry of a decree of judicial dissolution under the Act; or (f) the death, retirement, resignation, expulsion, dissolution or bankruptcy of a Member, or any other event which terminates the membership of a Member in the Company, unless within ninety (90) days after such event a majority in interest of the remaining Members agree in writing to continue the business of the Company.

Section 11.2. Settling of Accounts. In settling accounts of the Company after its dissolution, the liabilities of the Company shall be paid in the following order, unless otherwise required by the Act: (i) to creditors, in the order of priority as provided by law, except Members of the Company on account of their Capital Contributions or Capital Accounts; and (ii) to Members of the Company in respect of their Capital Accounts.

## ARTICLE XII
## INDEMNIFICATION

Section 12.1. Indemnification of Organizers or Members.



DS MN DS SD DS

12.1.1. To the greatest extent not inconsistent with the laws and public policies of the District of Columbia, the Company shall indemnify any organizer of the Company and Member (any such organizer or Member who is a person, and any responsible officers, partners, shareholders, directors, or manager of such organizer or Member which is an Entity, hereinafter being referred to in this Article as an "individual") made a party to any proceeding because such individual is or was a Member or organizer, as a matter of right, against all liability incurred by such individual in connection with any proceeding.

12.1.2. The Company shall have the power, but not the obligation, to indemnify any individual who is or was an employee or agent of the Company to the same extent as if such individual was a Member or organizer of the Company.

12.1.3. Indemnification of an individual is permissible under this Section 12.1 only if:

(i) such individual conducted himself, herself or itself in good faith, and such individual reasonably believed that his, her or its conduct was in, or at least not opposed to, the Company's best interest;

(ii) in the case of any criminal proceeding, such individual had no reasonable cause to believe his or her conduct was unlawful; and

(iii) such individual is not adjudged in any such proceeding to be liable for gross negligence or willful misconduct in the performance of his or her duty. The termination of a proceeding by judgment, order, settlement, conviction or upon a plea of nolo contendere or its equivalent is not, in and of itself, determinative that the individual did not meet the standards of conduct described in this Section 12.1.3.

12.1.4. A determination as to whether indemnification or advancement of expenses is permissible shall be made by any one of the following procedures:

(i) By the Members by a majority vote consisting of Members not at the time parties to the proceeding; or

(ii) By special independent legal counsel selected by the Managing Member.

12.1.5. Nothing contained in this Section shall limit or preclude the exercise or be deemed exclusive of any right under the law, by contract or otherwise, relating to indemnification of or advancement of expenses to any individual who is or was a Member or organizer of the Company or is or was serving at the Company's request as a director, officer or partner, or serving as the Company manager, trustee, employee, or agent of a foreign or domestic partnership, association, limited liability company, company, corporation, joint venture, trust, employee benefit plan or other enterprise, whether for profit or not. Nothing contained in this Section shall limit the ability of the Company otherwise to indemnify or advance expenses to any



DS MN DS SD DS

individual. It is the intent of this Section to provide indemnification to Members and organizers of the Company to the fullest extent now or hereafter permitted by the law consistent with the terms and conditions of this Section.

## ARTICLE XIII
## GENERAL PROVISIONS

Section 13.1. Notifications. Any notice, demand, consent, election, offer, approval, request, or other communication (collectively a "notice") required or permitted under this Agreement must be in writing and either delivered personally or sent by certified or registered mail, postage prepaid, return receipt requested. Any notice to be given hereunder by the Company shall be given by the Members. A notice must be addressed to a Member at the Member's last known address on the records of the Company. A notice to the Company must be addressed to the Company's principal office. A notice that is sent by mail will be deemed given two (2) business days after it is mailed. Any party may designate, by notice to all of the others, substitute addresses or addressees for notices; and, thereafter, notices are to be directed to those substitute addresses or addressees.

Section 13.2. Complete Agreement. This Agreement constitutes the complete and exclusive statement of the agreement among the Members. It supersedes all prior written and oral statements, including any prior representation, statement, condition, or warranty. Except as expressly provided otherwise herein, this Agreement may not be amended without the written consent of all of the Members.

Section 13.3. Applicable Law. All questions concerning the construction, validity, and interpretation of this Agreement and the performance of the obligations imposed by this Agreement shall be governed by the internal law, not the law of conflicts, of the District of Columbia.

Section 13.4. Binding Provisions. This Agreement is binding upon, and inures to the benefit of, the parties hereto and their respective heirs, executors, administrators, personal and legal representatives, successors, and permitted assigns.

Section 13.5. Counterparts. This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original and all of which, when taken together, constitute one and the same document. The signature of any party to any counterpart shall be deemed a signature to, and may be appended to, any other counterpart.

[SIGNATURE ON FOLLOWING PAGE]



DS MN DS SD DS

In Witness Whereof, the parties have executed, or caused this Agreement to be executed, under seal, as of the date set forth hereinabove.

MEMBERS:

DocuSigned by:
Solomone Desta
A941E3A3E5E24F1...

Solomone Abebaw Desta

DocuSigned by:
Mel Negussie
9A547C0DAF424F5...

Mel Negussie

DocuSigned by:
E43F3C21E382426...

Mulugeta Tesfakiros

EXHIBIT A

DEVELOPER RE1 LLC
AMENDED SCHEDULE OF MEMBERSHIP INTERESTS

| MEMBERS NAME AND ADDRESS | MEMBERSHIP INTEREST |
|---|---|
| Solomone Abebaw Desta<br>8922 Tonbridge Terrace<br>Hyattsville, Maryland 20783 | 45.00% |
| Mel Negussie<br>1629 K Street, N.W., Suite 300<br>Washington, DC 20006 | 10.00% |
| Mulugeta Tesfakiros<br>925 H Street, N.W., Suite 801<br>Washington, DC 20001 | 45.00% |



DS MN DS SD DS