UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DEVELOPER RE1, LLC. ET AL.,<br>*Plaintiffs,*<br>v.<br>DP CAPITAL, LLC, ET AL.,<br>*Defendants*. | Adv. Proc. No. 25-10037-ELG |

# PLAINTIFFS' SUPPLEMENTAL MEMORANDUM ON THE BURDEN OF PROOF FOR A MOTION TO DISSOLVE INJUNCTION AND THEIR OPPOSITION TO THE PRELIMINARY INJUNCTION HEARING

Developer RE1 LLC ("RE1") and 423 Kennedy St Holdings LLC ("423 Kennedy", and together with RE1, "Plaintiffs"), respectfully submit this supplemental memorandum to provide additional authority ahead of the hearing on the Motion to Dissolve Injunction and the related preliminary injunction hearing.

1. Pursuant to 28 U.S.C. § 1450, when a case is removed, all prior injunctions and orders issued in the state court remain in effect until modified or dissolved. Section 1450 provides in relevant part that:

> Whenever any action is removed from a State court to a district court of the United States . . . All bonds, undertakings, or security given by either party in such action prior to its removal shall remain valid and effectual notwithstanding such removal. *All <u>injunctions, orders,</u> and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court.*

28 U.S.C. § 1450 (italic and underlined emphasis added).

2. On July 21, 2023, the parties appeared for a hearing before D.C. Superior Court Judge Milton Lee on 423 Kennedy's motion for a temporary restraining order concerning the

property located at 423 Kennedy Street. The Court conducted a contested hearing on this issue, with both parties presenting testimony and evidence. The Court granted 423 Kennedy's request to stop Defendants from foreclosing on the property.

3. On July 24, 2023, Judge Lee issued an Order in which he granted an *injunction* (emphasis added), which prohibited Defendants from conducting a foreclosure sale on the property located at 423 Kennedy Street until further notice of the court or at any time before the conclusion of the litigation in the pending matter.

4. On July 26, 2023, the parties appeared for a hearing before D.C. Superior Court Judge Ebony Scott on RE1's motion for a temporary restraining order concerning the property located at 5501 1st Street, N.W. The Court conducted a contested hearing on this issue, with both parties presenting testimony and evidence. The Court granted RE1's request and enjoined the Defendants from foreclosing on the property.

5. On August 15, 2023, Judge Scott issued an Order prohibiting Defendants from taking any action to foreclose on the property "until further order from the court." Although Judge Scott did not use the word "injunction" as Judge Lee did, Judge Scott nevertheless conducted a contested hearing on the merits and did not set her Order to expire on a date certain.

6. Federal law provides that a temporary restraining order that lasts beyond a set term is really a preliminary injunction regardless of how the order may be titled. *See e.g., Sampson v. Murray*, 415 U.S. 61, 86-88 (1974) ("In this case, where an adversary hearing has been held, and the court's basis for issuing the order strongly challenged, classification of the potentially unlimited order as a temporary restraining order seems particularly unjustified. Therefore we view the order at issue here as a preliminary injunction."); *see also Turner v. Epps*, 460 F. App'x 322, 326 (5th Cir. 2012) ("Given that the district court took evidence in the form of

affidavits, received written submissions from counsel, and heard oral arguments on this matter, as well as the fact that the district court's TRO would delay Turner's execution beyond its scheduled date, we conclude that the district court's order is a preliminary injunction, rather than a TRO.").

7. Since Judge Lee and Judge Scott have already issued preliminary injunctions, their preliminary injunction orders remain in effect until dissolved or modified by this Court. *See* 28 U.S.C. § 1450.

8. On April 23, 2026, the WCP Defendants filed a Motion to Dissolve Injunction based on an alleged deterioration of one of the properties. The WCP Defendants also contend that federal law now applies.

9. The D.C. Ciruict Court of Appeals has clearly held that the party seeking to dissolve an injunction bears the burden of proof. *Doe v. Shanahan*, 755 F. App'x 19, 22 (D.C. Cir. 2019). A copy of *Doe* is attached for the Court's reference. Under *Doe,* a party seeking to dissolve an injunction has the burden of showing either a "significant change either in factual conditions or in law" such that continued enforcement of the injunction would be "detrimental to the public interest". *Id.* at 22 (quoting *Horne v. Flores*, 557 U.S. 443, 447 (2009) (latter quoting *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367, 384 (1992)). In addition, hardship alone will not itself constitute a "changed circumstance". *SEC v. Vision Communs.*, Civil Action No. 94-0615 (CRR), 1995 U.S. Dist. LEXIS 2868, at *4 (Mar. 6, 1995).

10. *Doe* also held that the party seeking to dissolve the injunction cannot challenge the propriety of the underlying orders. *Doe*, 755 F. App'x at 23 (quoting *Sharp v. Weston*, 233 F.3d 1166, 1169-70 (9th Cir. 2000)) ("In reviewing denials of motions to dissolve injunctions,



8161\0002\4910-5647-1258.v1

we do not consider the propriety of the underlying order, but limit our review to the new material presented with respect to the motion to dissolve.”).

11. As the Plaintiffs have previously argued, the WCP Defendants are attempting here to use this Court as an appellate court to challenge the prior decisions of the D.C. Superior Court. That attempt runs afoul of the *Rooker-Feldman* doctrine, which generally bars a federal court from acting as an appellate court over state court decisions. *See, e.g. T. M. V. University of Maryland Medical System Corp.* (No. 25-97) (U.S. Supreme Court June 18, 2026) (discussing the history of the *Rooker-Feldman* doctrine). Under either *Doe* and/or the *Rooker-Feldman* doctrine, the WCP Defendants are not permitted to seek review of legal and factual findings of underlying the preliminary injunctions regardless of whether this Court possesses the ability to modify or dissolve the injunctions.

12. The proper remedy for the WCP Defendants to challenge the factual and legal findings in the preliminary injunctions issued by Judge Lee and Judge Scott was to timely note an appeal of those decisions to the D.C. Court of Appeals, which they failed to do – either within thirty days of the date of those orders or at any time before removal. *See* D.C. Code § 11-721(a)(2) (permitting an appeal from interlocutory orders of the Superior Court “granting, continuing, modifying, refusing, or dissolving or refusing to dissolve or modify injunctions”).

WHEREFORE, the Plaintiffs request that the Court determine, prior to the start of today’s hearing, that: (a) the Motion to Dissolve be heard first; (b) that under *Doe*, the WCP Defendants bear the burden of proving a change in facts or a change in law in order to dissolve or modify the injunctions; (c) that the WCP Defendants may not challenge the facts and legal basis underlying Judge Lee’s and Judge Scott’s preliminary injunction decisions under *Doe*

and/or the *Rooker-Feldman* doctrine[1]; and (d) no preliminary injunction or other hearing be held that requires the Plaintiffs to bear the burden of re-proving their entitlement to injunctive relief.

Respectfully submitted,

GREENSTEIN DELORME & LUCHS, P.C.

Dated: October 19, 2026

/s/ Alexandria J. Smith

James D. Sadowski (DC Bar #446635)
Alexandria J. Smith (DC Bar #1781067)
801 17th Street, N.W., Suite 1000
Washington, D.C. 20006
Phone: (202) 452-1400; Fax: (202) 452-1410
Emails: jds@gdllaw.com; ajs@gdllaw.com
*Counsel for Plaintiffs Developer RE1 LLC and 423 Kennedy St Holdings LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of October, 2026, a true copy of the foregoing Memorandum was filed electronically and a Notice of Electronic Filing should be sent to all persons receiving notices via the Court's CM/ECF system.

/s/ Alexandria J. Smith
Alexandria J. Smith

[1] For example, the Defendants should not be able to challenge the previous findings regarding the injunctive relief factors (irreparable harm, inadequate remedy at law, likelihood of success on the merits, public and private interest factors, etc.).

# EXHIBIT A

# *Doe v. Shanahan*

United States Court of Appeals for the District of Columbia Circuit

January 4, 2019, Filed

No. 18-5257

**Reporter**

755 Fed. Appx. 19 *; 2019 U.S. App. LEXIS 307 **; 2019 WL 102309

JANE DOE 2, ET AL., APPELLEES v. PATRICK M. SHANAHAN, IN HIS OFFICIAL CAPACITY AS ACTING SECRETARY OF DEFENSE, ET AL., APPELLANTS

**Notice:** PLEASE REFER TO *FEDERAL RULES OF APPELLATE PROCEDURE RULE 32.1* GOVERNING THE CITATION TO UNPUBLISHED OPINIONS.

**Subsequent History:** US Supreme Court certiorari denied by *Trump v. Doe, 139 S. Ct. 946, 203 L. Ed. 2d 140, 2019 U.S. LEXIS 776, 2019 WL 272026 (U.S., Jan. 22, 2019)*

Stay denied by *Trump v. Doe, 2019 U.S. LEXIS 7690 (U.S., Jan. 22, 2019)*

Later proceeding at *Doe v. Shanahan, 2019 U.S. App. LEXIS 3214 (D.C. Cir., Jan. 31, 2019)*

Concurring Opinion at *Doe v. Shanahan, 917 F.3d 694, 440 U.S. App. D.C. 1, 2019 U.S. App. LEXIS 22729 (Mar. 8, 2019)*

**Prior History:** **[**1]** Appeal from the United States District Court for the District of Columbia. (No. 1:17-cv-01597).

*Doe v. Trump, 315 F. Supp. 3d 474, 2018 U.S. Dist. LEXIS 131207 (D.D.C., Aug. 6, 2018)*

**Counsel:** For Jane Doe 2, Jane Doe 3, Jane Doe 4, Jane Doe 5, Dylan Kohere, Regan V. Kibby, John Doe 1, Jane Doe 6, Jane Doe 7, John Doe 2, Plaintiff - Appellees: John Thomas Byrnes, III, Kevin Matthew Lamb, Paul Reinherz Quitma Wolfson, Wilmer Cutler Pickering Hale and Dorr LLP, Washington, DC; Jennifer Levi Levi, GLBTQ Advocates & Defenders, Boston, MA; Matthew Miller, Foley Hoag LLP, Boston, MA; Shannon Minter, Christopher Stoll, National Center for Lesbian Rights, San Francisco, CA; Alan Evan Schoenfeld, Wilmer Cutler Pickering Hale and Dorr LLP, New York, NY.

For Donald J. Trump, in his official capacity as President of the United States, James Mattis, in his official capacity as Secretary of Defense, Joseph F. Dunford, Jr., in his official capacity as Chairman of the Joint Chiefs of Staff, United States Department of the Army, United States Department of the Air Force, Heather A. Wilson, in her official capacity as Secretary of the Air Force, United States Coast Guard, United States of America, United States Department of the Navy, Defense Health Agency, Richard V. Spencer, in his official capacity **[**2]** as Secretary of the Navy, Raquel C. Bono, in her official capacity as Director of the Defense Health Agency, Mark T. Esper, In his Official Capacity as Secretary of the Army, Kirstjen M. Nielsen, In her official capacity as Secretary of Homeland Security, Defendant - Appellants: Marleigh D. Dover, Assistant Director, Tara S. Morrissey, Esquire, Attorney, U.S. Department of Justice, Washington, DC; Brinton Lucas, Counsel, U.S. Department of Justice, Civil Division, Washington, DC; Hashim M. Mooppan, Esquire, Attorney, U.S. Department of Justice, Civil Division, Appellate Staff, Washington, DC.

For Service Women's Action Network, High Ground Veterans Advocacy, Iraq and Afghanistan Veterans of America, National Law School Veterans Clinic Consortium, National Veterans Legal Services Program, New York City Veterans Alliance, Protect Our Defenders, Amicus Curiae for Appellees: Steven G. Thomson Reed, Steptoe & Johnson LLP, Washington, DC.

For Constitutional Accountability Center, Amicus Curiae for Appellee: Ashwin Pradyumna Phatak, Elizabeth B. Wydra, Chief Counsel, Constitutional Accountability Center, Washington, DC.

For Ricardo Aponte, Brigadier General, USAF (Ret.), Paul D. Eaton, Major **[**3]** General, USA (Ret.), Michael R. Carpenter, Deputy Assistant Secretary of Defense for Russia, Ukraine, Eurasia from 2015 to 2017, Derek Chollet, Assistant Secretary of Defense for International Security Affairs from 2012 to 2015, Evelyn Foote, Brigadier General, USA (Ret.), Jay A. DeLoach, Rear Admiral, USN (Ret.), Stephen A. Cheney, Brigadier General, USMC (Ret.), Kevin P. Green, Vice Admiral (Ret.), USN, Michael Hayden, General, USAF (Ret.), served as Director of the Central Intelligence Agency from 2006 to 2009, and Director of the National Security Agency from 1995 to 2005, Chuck Hagel, Secretary of Defense from 2013 to 2015. From 1997 to 2009, he served as U.S. Senator for Nebraska, Kathleen Hicks, Principal Deputy Under Secretary of Policy from 2012 to 2013, David R. Irvine, Brigadier General (Ret.), USA, Arlen D. Jameson, Lieutenant General (Ret.), USA, served as the Deputy Commander of U.S. Strategic Command, John H. Johns, Brigadier General (Ret.), USA, Colin H. Kahl, served as Deputy Assistant to the President and National Security Advisor to the Vice President. Previously, he served as Deputy Assistant Secretary of Defense for the Middle East from 2009 to 2011, Claudia Kennedy, **[**4]** Lieutenant General (Ret.), USA, Dennis Laich, Major General (Ret.), USA, Randy Manner, Major General (Ret.), USA, Carlos E. Martinez, Brigadier General (Ret.), USAF, Stanley A. McChrystal, General (Ret.), USA, served as Commander of Joint Special Operations Command from 2003 to 2008, and Commander of the International Security Assistance Force and Commander, U.S. Forces Afghanistan from 2009 to 2010, Kelly E. Magsamen, Principal Deputy Assistant Secretary of Defense for Asian and Pacific Security Affairs from 2014 to 2017, Leon E. Panetta, Secretary of Defense from 2011 to 2013. From 2009 to 2011, he served as Director of the Central Intelligence Agency, Harold Robinson, Rear Admiral (Ret.), USN, John M. Schuster, Brigadier General (Ret.), USA, Michael E. Smith, Rear Admiral (Ret.), USN, Paul Gregory Smith, Brigadier General (Ret.), USA, Julianne Smith, served as Deputy National Security Advisor to the Vice President of the United States from 2012 to 2013. Previously, she served as the Principal Director for European and NATO Policy in the Office of the Secretary of Defense in the Pentagon, James Stavridis, Admiral (Ret.), USN, served as the 16th Supreme Allied Commander at NATO, Marianne **[**5]** Watson, Brigadier General (Ret.), USA, William Wechsler, served as Deputy Assistant Secretary for Special Operations and Combating Terrorism at the U.S. Department of Defense from 2012 to 2015, Christine E. Wormuth, served as Under Secretary of Defense for Policy from 2014 to 2016, Amicus Curiae for Appellees: Harold Hongju Koh, Counsel, Yale Law School, New Haven, CT; Phillip Louis Spector, Paul, Weiss, Rifkind, Wharton & Garrison LLP, Washington, DC.

For NAACP Legal Defense & Educational Fund, Inc., Amicus Curiae for Appellee: Daniel Scott Harawa, NAACP Legal Defense and Educational Fund, Inc., Washington, DC; Sherrilyn Ann Ifill, Janai Sherrylynn Nelson, Esquire, NAACP Legal Defense & Educational Fund, Inc., New York, NY.

For American Veterans Alliance, American Veterans for Equal Rights, Jewish War Veterans of the USA, Minority Veterans of America, Swords to Plowshares, Transgender American Veterans Association, Truman Center for National Policy, US & Latin Veterans' Support Embassy, VoteVets.org, Amicus Curiae for Appellees: Craig Aaron Benson, Paul, Weiss, Rifkind, Wharton & Garrison LLP, Washington, DC; Andrew J. Ehrlich, Eric Felleman, Paul, Weiss, Rifkind, Wharton & Garrison **[**6]** LLP, New York, NY.

For Commonwealth of Massachusetts, State of California, State of Connecticut, State of Delaware, State of Hawaii, State of Illinois, State of Iowa, State of Maine, State of Maryland, State of Minnesota, State of New Jersey, State of New Mexico, State of North Carolina, State of Oregon, State of Pennsylvania, State of Rhode Island, State of Vermont, State of Virginia,, Amicus Curiae for Appellees: Robert E. Toone, Jr., Attorney, Massachusetts Office of the Attorney General, Boston, MA.

For State of New York, Amicus Curiae for Appellee: Robert E. Toone, Jr., Attorney, Massachusetts Office of the Attorney General, Boston, MA; Barbara D. Underwood, Solicitor General, Office of the Attorney General, State of New York, Division of Appeals & Opinions, New York, NY.

For Donald C. Arthur, Vice Admiral U.S. Navy (Ret.), a former Surgeon General of the U.S. Navy, Gale S. Pollock, Major General U.S. Army (Ret.), a former Acting Surgeon General of the U.S. Army, Amicus Curiae for Appellees: Harold Hongju Koh, Counsel, Yale Law School, New Haven, CT; Susan Baker Manning, Morgan Lewis & Bockius,

LLP, Washington, DC; Stephanie Schuster, Esquire, Morgan Lewis & Bockius, LLP, Washington, **[**7]** DC; Phillip Louis Spector, Paul, Weiss, Rifkind, Wharton & Garrison LLP, Washington, DC.

For Alan M. Steinman, Rear Admiral U.S. Public Health Service/U.S. Coast Guard (Ret.), a former Director of Health and Safety of the U.S. Coast Guard, Amicus Curiae for Appellee: Susan Baker Manning, Morgan Lewis & Bockius, LLP, Washington, DC; Stephanie Schuster, Esquire, Morgan Lewis & Bockius, LLP, Washington, DC.

For District of Columbia, Amicus Curiae for Appellee: Robert E. Toone, Jr., Attorney, Massachusetts Office of the Attorney General, Boston, MA; Karl A. Racine, Office of the Attorney General, District of Columbia, Office of the Solicitor General, Washington, DC.

For American Medical Association, American College of Physicians, American Academy of Nursing, American Medical Women's Association, American Nurses Association, Endocrine Society, GLMA: Health Professionals Advancing LGBT Equality, Mental Health America, Amicus Curiae for Appellees: Devi M. Rao, Scott Block Wilkens, Jenner & Block LLP, Washington, DC.

For National Organization for Women Foundation, National Women's Law Center, California Women Lawyers, Center for Reproductive Rights, Columbia Law School Sexuality & Gender Law **[**8]** Clinic, Connecticut Women's Education and Legal Fund, Legal Voice, National Association of Women Lawyers, National Partnership for Women & Families, Women's Bar Association of the District of Columbia, Amicus Curiae for Appellees: Suzanne Goldberg, Columbia Law School, New York, NY; Cynthia Cook Robertson, Counsel, Pillsbury Winthrop Shaw Pittman LLP, Washington, DC.

For Equal Rights Advocates, Amicus Curiae for Appellee: Suzanne Goldberg, Columbia Law School, New York, NY.

For National Center for Transgender Equality, FORGE, Inc., Gender Spectrum, National LGBTQ Task Force, Southern Arizona Gender Alliance, Trans People of Color Coalition, Transcend Legal, Transgender Allies Group, Transgender Legal Defense & Education Fund, Transgender Resource Center of New Mexico, Amicus Curiae for Appellees: Tara Borelli, Lambda Legal Defense and Education Fund, Atlanta, GA; Diana Katherine Flynn, Lambda Legal, Washington, DC; Peter Renn, Lambda Legal Defense and Education Fund, Inc., Los Angeles, CA.

For Organization of American Historians, Jennifer Mittelstadt, Ronit Y. Stahl, Terry H. Anderson, Christian G. Appy, Beth Bailey, Wayne Bodle, Dirk Bonker, Mark Philip Bradley, D'Ann Campbell, Margot **[**9]** Canaday, John Whiteclay Chambers II, Gregory Daddis, Robert D. Dean, Mary L. Dudziak, Steve Estes, Eugene R. Fidell, Susan R. Grayzel, Elizabeth L. Hillman, William I. Hitchcock, Andrew J. Huebner, Richard H. Immerman, Benjamin H. Irvin, Mark R. Jacobson, David K. Johnson, Donald F. Johnson, Jeffrey P. Kimball, Richard H. Kohn, Scott Laderman, Meredith H. Lair, Mark Atwood Lawrence, Wayne E. Lee, Anne C. Loveland, Catherine Lutz, Holly Mayer, Melani McAlister, Laura McEnaney, Stephen R. Ortiz, G. Kurt Piehler, Khary O. Polk, Mary Louise Roberts, Daniel J. Sargent, Michael Sherry, Jennifer Siegel, Jeremi Suri, Charissa J. Threat, Kara Dixon Vuic, Vanessa Walker, Amicus Curiae for Appellee: Irina A. Finkel, Ropes & Gray LLP, New York, NY; Douglas Hallward-Driemeier, Ropes & Gray LLP, Washington, DC.

For Asian American Legal Defense and Education Fund, LatinoJustice PRLDEF, Amicus Curiae for Appellees: John Taylor Hebden, Sidley Austin LLP, Washington, DC; Eamon Paul Joyce, Esquire, Sidley Austin LLP, New York, NY.

For Fred T. Korematsu Center for Law and Equality, LatinoJustice PRLDEF, Amicus Curiae for Appellees: Robert Seungchul Chang, Ronald A. Peterson Law Clinic, Seattle, WA; John Taylor Hebden, Sidley Austin LLP, Washington, DC; Eamon Paul Joyce, Esquire, Sidley Austin LLP, New York, NY.

**Judges:** Before: GRIFFITH and WILKINS, Circuit Judges, and WILLIAMS[*], Senior Circuit Judge.

## Opinion

[*] Senior Circuit Judge Williams concurs in the result. Separate opinions will be filed at a later date.

**[*22] JUDGMENT**

This appeal was considered on the record from the District Court and on the briefs of the parties and oral arguments of counsel. The court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons stated below, it is

**ORDERED** and **ADJUDGED** that the District Court's denial of the government's motion to dissolve the preliminary injunction is **REVERSED**, the preliminary injunction is **VACATED** without prejudice, and the government's motion to stay is **DENIED** as moot.

**I**

We reverse the District Court's denial of the government's motion to dissolve the preliminary injunction and vacate the preliminary injunction without prejudice.

We are reviewing the District Court's denial of the government's motion to dissolve the preliminary injunction. A party seeking to dissolve an injunction has the burden of showing "a significant change either in factual conditions or in law" such that continued enforcement of the injunction would be "detrimental **[**10]** to the public interest." *Horne v. Flores, 557 U.S. 433, 447, 129 S. Ct. 2579, 174 L. Ed. 2d 406 (2009)* (latter quoting *Rufo v. Inmates of Suffolk Cty. Jail, 502 U.S. 367, 384, 112 S. Ct. 748, 116 L. Ed. 2d 867 (1992))*; *Petties ex rel. Martin v. District of Columbia, 662 F.3d 564, 571, 398 U.S. App. D.C. 257 (D.C. Cir. 2011)* (applying same standard in context of motion to dissolve preliminary injunction); *Sharp v. Weston, 233 F.3d 1166, 1170 (9th Cir. 2000)* ("A party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction."); 16 CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3924.2 (3d ed. 2015) ("Refusal to dissolve or modify an injunction that was not appealed, or was affirmed on appeal, should be disturbed only on a compelling showing of changed circumstances not adequately considered by the trial court."). We review the denial of such a motion under an abuse of discretion standard. *See* *Jones v. D.C. Redevelopment Land Agency, 499 F.2d 502, 507, 162 U.S. App. D.C. 366 (D.C. Cir. 1974)*; *see also* *Am. Council of the Blind v. Mnuchin, 878 F.3d 360, 366 (D.C. Cir. 2017)*. The District Court's factual findings are subject to clear error review and its legal **[*23]** conclusions are reviewed *de novo.* *Gordon v. Holder, 721 F.3d 638, 644, 406 U.S. App. D.C. 6 (D.C. Cir. 2013)*. The merits of the preliminary injunction entered in October 2017 are not properly before us.[1] *See* *Sharp, 233 F.3d at 1169-70* ("In reviewing denials of motions to dissolve injunctions, we do not consider the propriety of the underlying order, but limit our review to the new material presented with respect to the motion to dissolve."); *Franklin Twp. Sewerage Auth. v. Middlesex Cty. Utilities Auth., 787 F.2d 117, 120 (3d Cir. 1986)* ("The prevailing law is that appellate **[**11]** review of an order denying a motion to dissolve an injunction is confined to the propriety of the denial of the motion; it does not extend to the propriety of the entry of the underlying injunction."); *Winterland Concessions Co. v. Trela, 735 F.2d 257, 260 (7th Cir. 1984)* (holding that the "review of the denial of [a] motion to vacate or modify [a preliminary injunction] does not extend to the propriety of the entry of the injunction itself," but rather is "limited to inquiring whether [the movant] has demonstrated that changed circumstances make the continuation of the injunction inequitable"); WRIGHT & MILLER § 3924.2 ("The most important limit on appeal from refusal of an explicit motion to modify or dissolve an injunction is that the motion cannot be used simply to revisit the initial injunction decision or resurrect an expired time for appeal.").

---

[1] To the extent that the District Court granted preliminary relief to Plaintiffs apart from its refusal to dissolve the existing injunction, *Doe 2 v. Trump, 315 F. Supp. 3d 474, 497-98 (D.D.C. 2018)*, we conclude that the District Court abused its discretion and reverse. "The propriety of preliminary relief and resolution of the merits are of course 'significantly different' issues," *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1, 551 U.S. 701, 721 n.10, 127 S. Ct. 2738, 168 L. Ed. 2d 508 (2007)* (quoting *Univ. of Tex. v. Camenisch, 451 U.S. 390, 393, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981))*, because "[t]he purpose of such interim equitable relief is not to conclusively determine the rights of the parties, but to balance the equities as the litigation moves forward," *Trump v. Int'l Refugee Assistance Project, 137 S. Ct. 2080, 2087, 198 L. Ed. 2d 643 (2017)* (citation omitted).

**II**

It was clear error to say there was no significant change with respect to at least two aspects of the policy recommended by Secretary of Defense James Mattis in February 2018 and approved by the President in March 2018 ("the Mattis Plan"). First, the District Court made an erroneous finding that the Mattis Plan was not a new policy but rather an implementation of the policy directives enjoined in October **[**12]** 2017. The government took substantial steps to cure the procedural deficiencies the court identified in the enjoined 2017 Presidential Memorandum. These included the creation of a panel of military and medical experts, the consideration of new evidence gleaned from the implementation of the policy on the service of transgender individuals instituted by then-Secretary of Defense Ash Carter ("the Carter Policy"), and a reassessment of the priorities of the group that produced the Carter Policy. Although the parties dispute whether these efforts were independent of the policy announced in the 2017 Presidential Memorandum, the record indicates that it was error for the district court to conclude that the Mattis Plan was foreordained.

Second, the District Court made an erroneous finding that the Mattis Plan was the equivalent of a blanket ban on transgender service. *Doe 2 v. Trump, 315 F. Supp. 3d 474, 495 (D.D.C. 2018)*. Although the Mattis Plan continues to bar many transgender persons from joining or serving in the military, the record indicates that the Plan allows some transgender persons barred under the military's **[*24]** standards prior to the Carter Policy to join and serve in the military. The Mattis Plan, for example, contains a reliance **[**13]** exemption that will allow at least some transgender service members to continue to serve and receive gender transition-related medical care. Also, Plaintiffs contended that the Mattis Plan's exclusion of transgender persons who have gender dysphoria or who are unwilling to serve in their biological sex constitutes a blanket ban, arguing this case as if all transgender individuals either (1) have gender dysphoria or (2) transition to their preferred gender. They characterized these as "essential" and "defining" aspects of being transgender, Appellees Br. 20, 21, 22 n.5, and the District Court agreed, *Doe 2, 315 F. Supp. 3d at 495*. Other than perhaps one passing statement by one of Plaintiffs' experts, J.A. 839, we can find nothing in the record to support this definition of being transgender, as all of the reports supporting both the Carter Policy and the Mattis Plan defined transgender persons as "identifying" with a gender other than their biological sex. Indeed, those reports repeatedly state that not all transgender persons seek to transition to their preferred gender or have gender dysphoria, J.A. 520, 606, 622-23, 636, 752, and the panel of experts convened by Secretary Mattis observed that there are transgender **[**14]** persons who "have served, and are serving, with distinction under the standards for their biological sex," J.A. 274. Thus, the District Court erred in finding that the Mattis Plan was a blanket transgender ban.

**III**

"[M]ilitary interests do not always trump other considerations, and [the Supreme Court has] not held that they do." *Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 26, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008)*. Nonetheless, the "Constitution vests '[t]he complex, subtle, and professional decisions as to the composition, training, equipping, and control of a military force' exclusively in the legislative and executive branches," *Kreis v. Sec'y of Air Force, 866 F.2d 1508, 1511, 275 U.S. App. D.C. 390 (D.C. Cir. 1989)* (quoting *Gilligan v. Morgan, 413 U.S. 1, 10, 93 S. Ct. 2440, 37 L. Ed. 2d 407 (1973))*, and it is "difficult to think of a clearer example of the type of governmental action that was intended by the Constitution to be left to the political branches directly responsible—as the Judicial Branch is not—to the electoral process," *Gilligan, 413 U.S. at 10*. In *Rostker v. Goldberg, 453 U.S. 57, 101 S. Ct. 2646, 69 L. Ed. 2d 478 (1981)*, and *Goldman v. Weinberger, 475 U.S. 503, 106 S. Ct. 1310, 89 L. Ed. 2d 478 (1986)*, when addressing constitutional challenges to decisions by the executive and legislative branches regarding the composition and internal administration of combat-ready military forces, the Court explained that while the executive and legislative branches remain "subject to the limitations" of the Constitution, "the tests and limitations to be applied may differ because of the military **[**15]** context," *Rostker, 453 U.S. at 67*, and "courts must give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest," *Goldman, 475 U.S. at 507*. Courts "must be particularly careful not to substitute our judgment of what is desirable for that of [the executive and legislative branches], or our own evaluation of evidence for [their]

reasonable evaluation" because "[i]t is difficult to conceive of an area of governmental activity in which the courts have less competence." *Rostker, 453 U.S. at 65, 68* (latter quoting *Gilligan, 413 U.S. at 10*); *accord* *Trump v. Hawaii, 138 S. Ct. 2392, 2421-22, 201 L. Ed. 2d 775 (2018)* (upholding an executive order in **[*25]** part because it "reflect[ed] the results of a worldwide review process undertaken by multiple Cabinet officials and their agencies," and explaining that "we of course do not defer to the Government's reading of the" Constitution, but "the Executive's evaluation of the underlying facts is entitled to appropriate weight, particularly in the context of litigation involving sensitive and weighty interests of national security and foreign affairs" (internal quotation marks omitted)); *Goldman, 475 U.S. at 507-08*.

Applying this standard in *Rostker*, the Supreme Court concluded that a facially discriminatory, sex-based draft-registration statute was "not invidious, **[**16]** but rather realistically reflect[ed] the fact that the sexes [were] not similarly situated." *Rostker, 453 U.S. at 79* (internal quotation marks omitted). The Court explained that the sex-based classification was within constitutional bounds because Congress determined that the statute minimized "added burdens" and "administrative problems" and promoted "the important goal of military flexibility," and "[i]t is not for this Court to dismiss such problems as insignificant in the context of military preparedness and the exigencies of a future mobilization." *Id. at 81-82* (internal quotation marks omitted). Instead of an "independent evaluation" of the evidence, the Court adopted "an appropriately deferential examination of *Congress*' evaluation of that evidence." *Id. at 83*. In *Goldman*, the Court rejected a *First Amendment* challenge to an Air Force uniform regulation that restricted the wearing of a yarmulke, deferring to the "considered professional judgment" of "appropriate military officials" after finding that the regulation "reasonably and evenhandedly regulate[d] dress in the interest of the military's perceived need for uniformity." *Goldman, 475 U.S. at 509-10*. "None of this is to say that" the executive or legislative branch "is free to disregard the Constitution when **[**17]** it acts in the area of military affairs." *Rostker, 453 U.S. at 67*. But, as in *Rostker* and *Goldman*, any review must be "appropriately deferential" in recognition of the fact that the Mattis Plan concerned the composition and internal administration of the military. *Id. at 83*.

We acknowledge that the military has substantial arguments for why the Mattis Plan complies with the equal protection principles of the *Fifth Amendment*. Although today's decision is not a final determination on the merits, we must recognize that the Mattis Plan plausibly relies upon the "considered professional judgment" of "appropriate military officials," *Goldman, 475 U.S. at 509*, and appears to permit some transgender individuals to serve in the military consistent with established military mental health, physical health, and sex-based standards. In light of the substantial constitutional arguments and the apparent showing that the policy accommodates at least some of Plaintiffs' interests, we think that the public interest weighs in favor of dissolving the injunction.

Pursuant to *D.C. Circuit Rule 36*, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing en banc. **[**18]** *See* *Fed. R. App. P. 41(b)*; *D.C. Cir. R. 41*.

**Per Curiam**

---

End of Document